## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | §<br>§<br>§ | |
| VS. | §<br>§ | CRIMINAL NO. 4:00-CR-0260-Y |
| JULIUS OMAR ROBINSON (02),<br>also known as Face, also know as Scar,<br>also known, as Scarface,<br>Defendant | §<br>§<br>§<br>§<br>§ | |

## MOTION TO MODIFY SUBPOENA

TO THE HONORABLE TERRY R. MEANS, UNITED STATES DISTRICT JUDGE:

1.  On or about February 7, 2005, MIKE CHARLTON, court-appointed post-conviction writ counsel for Petitioner in the above-styled and numbered cause, filed a motion to compel production of the file maintained by Petitioner's trial counsel, JACK V. STRICKLAND. This Court granted CHARLTON leave to subpoena that file, which he did on March 4, 2005. That subpoena was served on STRICKLAND on March 8, 2005.

2.  STRICKLAND seeks to modify the subpoena in the following manner:

    a.  Rather than simply turn over all materials in the file, it would better serve the interests of all concerned, including the Court, that there be a complete and accurate record of all materials taken from the possession of STRICKLAND. This is easily accomplished by lawyers on each side of this issue sitting down together and going over the materials which CHARLTON wishes to have. Copies can then be made. By employing this procedure, there is no question as to what is in the file in STRICKLAND's possession and no question as to what materials are being provided. Documents cannot be removed and documents cannot be added.

    b.  This reasonable discovery procedure is routinely used in the normal course of both civil and criminal practice. It imposes no undue burden on the attorneys for either side and prevents future disagreements or confusion. It also

prevents unfounded accusations of misconduct by attorneys for either side.

3.      STRICKLAND urges the modification of the subpoena in the manner set out above for the following reasons:

a.      CHARLTON has made material misrepresentations to the Court in his motion to compel, including false assertions that "Strickland's position (is) that the files belong to him", "Strickland....insists that he retain the documents and allow only visual inspection", and that "Strickland has refused to make any of his files available except by personal examination... in Strickland's office." Those unfounded assertions wrongly imply that STRICKLAND is attempting to censor the file in some manner. Such an implication is misleading to the Court;

b.      CHARLTON wholly failed to provide counsel with a copy of his motion prior to its filing, or the issuance of the subpoena. When asked why he had failed to do so, CHARLTON responded on March 8, 2005, that he had not done so because STRICKLAND doesn't "represent a party to this action any longer." Professional courtesy aside, that argument is without merit. STRICKLAND is the person responsible for organizing and maintaining the file, which is voluminous. The file is in STRICKLAND's possession. STRICKLAND certainly has an interest in maintaining the integrity of the file; and

c.      Regrettably, CHARLTON has demonstrated by his past behavior that he is not trustworthy. In previous dealings with the Tarrant County District Attorney's Office, it has been alleged that CHARLTON failed to abide by representations he made to the Tarrant County District Attorney's Office and a State district judge. (Ex. A). That history, along with his lack of candor regarding this issue, does not inspire confidence in CHARLTON's self-serving declarations of honesty and trustworthiness.

4.      STRICKLAND therefore requests that the subpoena issued in this cause on March 4, 2005, be modified to allow counsel for both sides in this issue to determine what materials, WITHOUT LIMITATION, are to be provided to CHARLTON, and to then take appropriate steps to immediately copy such materials. STRICKLAND could care less whether CHARLTON takes the originals of documents or copies, so long as it is undisputed what he has taken. STRICKLAND does not hereby seek to limit either the availability or the scope of CHARLTON's discovery. In the alternative, STRICKLAND requests that the Court stay the production ordered by the subpoena and

set this matter for hearing, in order that attorneys for both sides may fully and fairly propound their

arguments.

Respectfully submitted,

LAW OFFICES OF JACK V. STRICKLAND
The Bryce Building
909 Throckmorton Street
Fort Worth, Texas 76102
Telephone:  817-338-1000
Telecopier:  817-338-1020

JACK V. STRICKLAND
State Bar No. 19397000

<u>CERTIFICATE OF SERVICE</u>

On March 10, 2005, I hereby certify that a true and correct copy of the foregoing motion to

modify subpoena was forwarded to the following by placing same in the United States Mail, proper

postage affixed:

1.      Mr. Michael B. Charlton
        Attorney at Law
        Post Office Box 1964
        El Prado, New Mexico 87529;

2.      Mr. Gary Taylor
        Attorney at Law
        Post Office Box 90212
        Austin, Texas 78709
        Facsimile No. 512-743-7584;

3.      Mr. Julius O. Robinson
        26190-177
        Post Office Box 33
        Terre Haute, Indiana 47808;

4.      Mr. Wes Ball
        Attorney at Law
        4025 Woodland Park Boulevard, Suite 100
        Arlington, Texas 76013; and

5.      Ms. Angie Henson
        Assistant United States Attorney
        801 Cherry Street
        Fort Worth, Texas 76102.

NO. C-297-006492-0631559-C

| | | |
|---|---|---|
| EX PARTE | § | IN THE 297TH JUDICIAL |
| | § | |
| | § | DISTRICT COURT OF |
| | § | |
| CURTIS MOORE | § | TARRANT COUNTY, TEXAS |

## STATE'S MOTION TO STRIKE

COMES NOW, the State of Texas, by and through the Criminal District Attorney of Tarrant County, Texas, and hereby moves this Court to strike all evidence resulting from or pertaining to the administration of the Wechsler Adult Intelligence Scale-III (WAIS-III) by Susana Rosin, Ph.D. In support of this motion, the State would show the following:

I.

Applicant stands convicted of capital murder and sentenced to death by lethal injection. On July 15, 2003, the Court of Criminal Appeals stayed Applicant's execution and remanded the case to this Court for a determination of whether Applicant is mentally retarded.

II.

Applicant is represented in this cause by Michael B. Charlton and Alexander Calhoun. At Mr. Charlton's request, Assistant Criminal District Attorney Helena F. Faulkner met with Mr. Charlton and Judge Everett Young in the judge's chambers on July 23, 2003, to discuss how to proceed in this case. *See* Exhibit A, Affidavit of Helena F. Faulkner, attached hereto and incorporated herein.

**FILED**
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

OCT 8 2003

Time _____
By _____ Deputy

1


EXHIBIT A

III.

In discussing the State's motion to allow J. Randall Price, Ph.D., to evaluate Applicant, Mr. Charlton informed Ms. Faulkner that he had not yet decided whether to have his expert conduct an IQ test on Applicant, although his inclination at the time was not to conduct further IQ testing. *See* Exhibit A. Mr. Charlton and Ms. Faulkner discussed that it would be impossible for both the defense and the State's psychologists to administer separate IQ tests due to the "practice effect." *See id.* Mr. Charlton stated to Ms. Faulkner, in the trial judge's presence, that he would have no problem allowing Dr. Price to be present to observe any IQ test conducted at the request of Applicant's attorneys and that he would provide all necessary raw or underlying data for review by the State's expert. *See id.* Mr. Charlton further agreed that, in the event he found further IQ testing unnecessary, he had no objection to Dr. Price conducting an IQ test as part of his evaluation. *See id.*

IV.

On October 6, 2003, the State received a copy of Applicant's "Amended Successor Application for Writ of Habeas Corpus." At that time, Ms. Faulkner learned for the first time that Dr. Rosin had administered the WAIS-III to Applicant on September 29, 2003, at the Polunski Unit. *See id.* Despite the parties' previous agreement in the trial judge's presence, Mr. Charlton never informed the District Attorney's Office that Applicant would be given an IQ test. *See id.* As a result, the State had no opportunity to arrange for Dr. Price to observe the test. *See id.*

2

## V.

On October 6, 2003, Ms. Faulkner contacted Dr. Price to determine how this turn of events would affect his ability to evaluate Applicant. *See id.* Dr. Price stated that he is unfamiliar with Dr. Rosin and, therefore, would have elected to be present to observe the WAIS-III she administered. *See id.* Merely reviewing Dr. Rosin's underlying data would not allow Dr. Price to fully and effectively evaluate the validity and accuracy of the testing procedures and results because there can exist certain influences that he would be unable to discern from written material. *See id.* Dr. Price further informed Ms. Faulkner that, due to the "practice effect," six months must elapse before Applicant can be given another WAIS-III test. *See id.*

## VI.

Because Mr. Charlton failed to abide by his previous agreement with Ms. Faulkner regarding the administration of an IQ test in this matter by failing to allow the State to have Dr. Price present when Dr. Rosin administered the WAIS-III to Applicant. Accordingly, the State requests that this Court order a hearing on the State's motion and then strike all evidence resulting from or pertaining to the administration of the WAIS-III test by Dr. Rosin. The State requests that the Court, after the passage of at least six months to avoid "practice effect," allow Dr. Price to evaluate and test Applicant using IQ tests and/or any other test or procedure deemed necessary by Dr. Price to evaluate whether Applicant is mentally retarded. Finally, the State requests that the Court impose any other appropriate sanctions.

Respectfully submitted,

TIM CURRY
Criminal District Attorney
Tarrant County, Texas


_____

CHARLES M. MALLIN
Assistant Criminal District Attorney
Chief of the Appellate Section
State Bar No. 12867400
401 W. Belknap
Fort Worth, Texas  76196-0201
(817) 884-1685
FAX (817) 884-1672

## CERTIFICATE OF SERVICE

A true copy of the State's Motion to Strike has been mailed to Applicant's attorneys,

Michael B. Charlton, 1744 Norfolk, Houston, Texas, 77098; and Alexander L. Calhoun, 11391

Long Branch, Austin, Texas, 78736, on October 8, 2003.


_____

CHARLES M. MALLIN

4

NO. C-297-006492-0631559-C

| | | |
|---|---|---|
| EX PARTE | § | IN THE 297TH JUDICIAL |
| | § | |
| | § | DISTRICT COURT OF |
| | § | |
| CURTIS MOORE | § | TARRANT COUNTY, TEXAS |

## AFFIDAVIT OF HELENA F. FAULKNER

BEFORE ME, the undersigned authority, personally appeared Helena F. Faulkner, who, after being duly sworn, deposes and says:

"My name is Helena F. Faulkner. I am over eighteen years of age, have never been convicted of a felony, and am competent to testify as to the matters contained in this Affidavit. The matters contained herein are within my personal knowledge and are true and correct.

Curtis Moore was convicted of capital murder and sentenced to death. I am the prosecutor assigned to handle Mr. Moore's application for writ of habeas corpus filed pursuant to article 11.071 of the Texas Code of Criminal Procedure. On July 15, 2003, the Court of Criminal Appeals stayed Mr. Moore's execution and remanded the case to this Court for a determination of whether Mr. Moore is mentally retarded.

Mr. Moore's attorney, Michael B. Charlton, called to determine whether I would be available to meet with him in Judge Everett Young's chambers to discuss how to proceed following the Court of Criminal Appeals' remand. I agreed. Mr. Charlton arranged a meeting for July 23, 2003.

1



EXHIBIT

A

On July 23, 2003, Mr. Charlton and I met with Judge Young in his chambers. When I inquired about putting matters on the record, Judge Young stated a preference to keep the meeting informal.

During the meeting, we discussed the State's motion to allow J. Randall Price, Ph.D., to interview, evaluate, and test Mr. Moore. I informed Mr. Charlton that the State would want to have Dr. Price administer an IQ test to Mr. Moore as part of Dr. Price's evaluation. Mr. Charlton stated that he had yet to decide whether to have his own expert administer an IQ test, although at the time he was leaning toward not conducting a new test and relying on the results of tests given to Mr. Moore before he turned eighteen. Mr. Charlton and I discussed the fact that only one test could be given within a certain period of time due to the "practice effect." Mr. Charlton offered to allow Dr. Price the opportunity to be present to observe any IQ test given by his expert and to provide all underlying data and raw materials for Dr. Price's review. I agreed to this procedure. Mr. Charlton further agreed that, if he did not request his expert to administer an IQ test, he would have no problem allowing the State's expert to administer the test during his own evaluation of Mr. Moore.

Near the conclusion of the meeting, I asked Judge Young whether I could type the agreements into an order for his signature. Judge Young said that he did not believe that an order was necessary since we had amicably reached the necessary agreements and asked the parties to attempt to continue to work out any further agreements without the need for such formality.

In order to somehow memorialize my agreements with Mr. Charlton at the meeting with

2

Judge Young, I typed a letter shortly after the meeting. The letter is dated the following day, July 24, 2003, because that was the date the letter was sent to Mr. Charlton. The letter is attached as Attachment A to this Affidavit. Although to my knowledge Mr. Charlton did not return a signed copy of the letter for the State's files, he never informed me that he would not honor our agreement to have Dr. Price present during an IQ test. In fact, he has on at least two recent occasions impliedly acknowledged other portions of our agreement.

On October 6, 2003, I received a copy of the "Amended Successor Application for Writ of Habeas Corpus" filed by Mr. Charlton. It was then that I learned for the first time that Susana Rosin, Ph.D., had administered the WAIS-III to Mr. Moore on September 29, 2003, at the Polunski Unit. Despite our previous agreement in Judge Young's presence, Mr. Charlton never notified me of the test so that I could arrange to have Dr. Price present to observe the test.

On October 6, 2003, I called Dr. Price to determine how this turn of events would affect his ability to evaluate Mr. Moore. Dr. Price informed me that he is unfamiliar with Dr. Rosin and, therefore, would have elected to be present to observe the WAIS-III she administered. He explained that merely reviewing Dr. Rosin's underlying data would not allow him to fully and effectively evaluate the validity and accuracy of the testing procedures and results because there can exist certain influences that he would be unable to discern from written material.

Dr. Price further informed me that, due to the "practice effect," six months must elapse before Mr. Moore can be given another WAIS-III test. The most effective and accurate way

3

for Dr. Price to evaluate whether Mr. Moore is mentally retarded would be for Dr. Price to have the opportunity, after six months have elapsed, to be present when a new WAIS-III is administered or to administer his own test during his evaluation of Mr. Moore.

FURTHER AFFIANT SAYETH NOT."

SIGNED on this the 8th day of October 2003.

HELENA F. FAULKNER

SWORN TO AND SUBSCRIBED BEFORE ME, by the said Helena F. Faulkner, on this, the 8th day of October 2003, to certify which witness my hand and seal of office.


PATRICIA A. HATLEY
Notary Public
STATE OF TEXAS
My Comm Exp 07/27/2007

NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS

My commission expires:

July 27, 2007

4



# TARRANT COUNTY

OFFICE OF THE
CRIMINAL DISTRICT ATTORNEY
www.tarrantda.com

**TIM CURRY**
CRIMINAL DISTRICT ATTORNEY
817/884-1400

July 24, 2003

JUSTICE CENTER
401 W. BELKNAP
FORT WORTH, TX 76196-0201

Mr. Michael Charlton
1744 Norfolk
Houston, Texas 77098

      Re:    Ex parte Curtis Moore
              Trial Court No. C-297-006492-0631559-C
              CCA No. 42,801-03

Dear Mr. Charlton:

        I enjoyed meeting with you in Judge Young's chambers yesterday to discuss how we will proceed in this case. My understanding is that we have reached the following agreements so far:

- You currently intend to investigate Mr. Moore's mental retardation claim and to file an amended writ by the end of September 2003.

- The State will have a reasonable time after you file an amended writ, along with any affidavits or other evidence, to investigate Mr. Moore's claim and to file its reply.

- You agree to Judge Young granting at a later date the State's motion to have its expert assess Mr. Moore's mental retardation or lack thereof, which was filed on July 23, 2003. As a result, Dr. Price will be allowed to conduct his own full assessment of Mr. Moore.

- You will decide during your investigation whether to have someone of your choosing administer an IQ test to Mr. Moore. Dr. Price will be allowed to be present during any administration of an IQ test by someone of your choosing, and the person conducting such test will provide all necessary raw or underlying data for Dr. Price's review.

- If you decide not to have an IQ test administered by someone of your choosing, you have no objection to Dr. Price administering an IQ test to Mr. Moore.





*Ex parte Curtis Moore*
Parties' Agreements
July 24, 2003
Page 2

If you agree with the above rendition of our agreements to date, please sign in the space provided below and fax both pages to my attention at (817) 884-1672. If you have any questions, please call me at (817) 884-1685 or e-mail me at hfaulkner@tarrantcounty.com.

Sincerely,

HELENA F. FAULKNER
Assistant Criminal District Attorney
State Bar No. 06855600

The statements above accurately reflect the agreements reached between counsel for the State and Mr. Moore in this cause.

_____
MICHAEL B. CHARLTON
Attorney for Curtis Moore