# IN THE UNITED STATES COURT OF APPEALS
## FOR THE
## FIFTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff - Appellee | §<br>§<br>§ |  |
| vs. | §<br>§ | No. 02-10717 |
| JULIUS OMAR ROBINSON, also<br>known as Face, also known as Scar, also<br>known as Scarface,<br>Defendant - Appellant | §<br>§<br>§<br>§ |  |

## APPELLANT'S ORIGINAL BRIEF

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEATH PENALTY CASE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

JACK V. STRICKLAND
The Bryce Building
909 Throckmorton Street
Fort Worth, Texas 76102
Telephone: 817-338-1000
Telecopier: 817-338-1020
State Bar No. 19397000

WES BALL
4025 Woodland Park Blvd.
Suite 100
Arlington, Texas  76013
Telephone: 817-860-5000
Telecopier: 817-860-6645
State Bar No. 01643100



GOVERNMENT
EXHIBIT
E

## CERTIFICATE OF INTERESTED PERSONS
(5th Cir. R. 28.2.1)

JULIUS OMAR ROBINSON, Appellant
vs.
UNITED STATES OF AMERICA
No. 02-10717

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

1.  Mr. Julius O. Robinson, appellant
    26190-177
    Post Office Box 33
    Terre Haute, Indiana 47808;

2.  The Honorable Terry R. Means, judge presiding
    United States District Judge
    Northern District of Texas
    Fort Worth Division
    501 West 10th Street
    Fort Worth, Texas 76102;

3.  Frederick M. Schattman, trial attorney
    Assistant United States Attorney
    801 Cherry Street, Suite 1700
    Fort Worth, Texas 76102;

4.  Reed C. O'Connor, trial attorney
    Assistant United States Attorney
    (formerly of the Northern District of Texas)
    c/o 801 Cherry Street, Suite 1700
    Fort Worth, Texas 76102;

i

5.    Wes Ball, defense attorney, trial and appeal
      Ball & Hase
      4025 Woodland Park Boulevard, Suite 100
      Arlington, Texas 76013;

6.    Jack V. Strickland. defense attorney, trial and appeal
      909 Throckmorton Street
      Fort Worth, Texas 76102; and

7.    Ms. Susan Cowger
      Assistant United States Attorney
      801 Cherry Street
      Fort Worth, Texas 76102.


                              _____
                              JACK V. STRICKLAND
                              Attorney of record for Appellant

ii

## STATEMENT REGARDING ORAL ARGUMENT
(5th Cir. R. 28.24)
(Fed.R.App. P. 34(a)(1))

Appellant respectfully requests oral argument in this case.

This is a federal death penalty case, one of only a handful of such cases tried since the Federal Death Penalty Act was enacted in 1994. The principal issue on appeal is whether the government, in lieu of an indictment which alleged none of the intent or statutory aggravating factors, may nonetheless charge a capital offense and obtain a sentence of death.

This question presents significant and far-reaching constitutional issues. In addition, the finality of the punishment to which appellant is sentenced makes this a case worthy of oral argument. Appellant respectfully contends that oral argument would prove helpful as the Court struggles to resolve the serious issues raised by this case.

iii

## TABLE OF CONTENTS
(Fed.R.App.P. 28(a)(3))

Page

Certificate of Interested Persons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

Issues Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xii

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiv

Facts Relevant to the Issues Submitted for Review . . . . . . . . . . . . . . . . . . . . . xvi

Issue Number One . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

THE INDICTMENT DID NOT INCLUDE
AGGRAVATING FACTORS AND THUS THE DEATH
PENALTY WAS NOT AUTHORIZED UNDER THE
INDICTMENT CLAUSE OF THE FIFTH AMENDMENT.

Issue Number Two . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

THE FEDERAL DEATH PENALTY ACT VIOLATES
THE INDICTMENT AND DUE PROCESS CLAUSES OF
THE FIFTH AMENDMENT INASMUCH AS THE ACT
REQUIRES THAT PROSECUTORS RATHER THAN
GRAND JURORS CHARGE THE AGGRAVATING
FACTOR ELEMENTS OF A CAPITAL OFFENSE.

iv

Issue Number Three . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

> THE TRIAL COURT ERRED BY ADMITTING
> HEARSAY STATEMENTS OF A WITNESS UNDER
> THE ERRONEOUS BELIEF THAT SUCH
> STATEMENTS WERE ADMISSIBLE AS CO-
> CONSPIRATORS STATEMENTS.

Issue Number Four . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

> THE FEDERAL DEATH PENALTY ACT VIOLATES
> THE FIFTH AND EIGHTH AMENDMENTS TO THE
> UNITED STATES CONSTITUTION.

Issue Number Five . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

> THE TRIAL COURT ERRED IN DENYING
> APPELLANT'S COMPLAINT THAT THE
> GOVERNMENT'S NOTICE OF AGGRAVATING
> FACTORS WAS DUPLICITOUS, AND THE
> SUBMISSION OF DUPLICITOUS AGGRAVATING
> FACTORS RESULTED IN IMPROPER DOUBLE
> COUNTING.

Issue Number Six . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

> THE TRIAL COURT ERRED IN DENIAL OF
> APPELLANT'S MOTION TO DISMISS NON-
> STATUTORY AGGRAVATING FACTORS AS
> UNAUTHORIZED BY STATUTE.

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

## TABLE OF AUTHORITIES
(Fed.R.App.P. 28(a)(3))

Page

### CASES

*Apprendi v. New Jersey,* 530 U.S. 277 (1998) . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 6, 7

*Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242 (2002) . . . . . . . . . . . . . . . . . 23

*Blount v. Rizzi,* 400 U.S. 410, 419 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Department of Housing and Urban Development v. Rucker,*
    122 S.Ct. 1230, 1235-36 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Duncan v. Louisiana,* 391 U.S. 145, 151 (1968) . . . . . . . . . . . . . . . . . . . . . . 4

*Enmund v. Florida,* 458 U.S. 782, 797 ((1982) . . . . . . . . . . . . . . . . . . . . . . . 9

*Furman v. Georgia,* 408 U.S. 238 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Garcia v. United States,* 469 U.S. 70, 75 (1984) . . . . . . . . . . . . . . . . . . . . . . 15

*Gregg v. Georgia,* 428 U.S. 153, 189 (1976) . . . . . . . . . . . . . . . . . . . . . . 24, 30

*Gregg v. Georgia,* 452 U.S. 153 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hamilton v. Schirro,* 74 F.3d 1545, 1552 (8th Cir. 1996) . . . . . . . . . . . . . . . . 11

*Harris v. United States,* 122 S.Ct. 2406, 2418 (2002) . . . . . . . . . . . . . . . . . 4, 6

*Heckler v. Mathews,* 465 U.S. 728, 741-42 (1984) . . . . . . . . . . . . . . . . . . . . 15

*Herrera v. Collins,* 506 U.S. 390 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Jones v. United States,* 526 U.S. 227 (1999) . . . . . . . . . . . . . . . . . . . . . . 1, 4, 7

*McCleskey v. Kemp*, 481 U.S. 279, 296-97 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Park 'N' Fly v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985) . . . . . . . . . 15

*Parsons v. Barnes*, 871 P.2d 516, 519 (Utah) . . . . . . . . . . . . . . . . . . . . 28

*Ring v. Arizona*, 122 S.Ct. 2428 (2002) . . . . . . . . 1, 2, 3, 5, 6, 7, 8, 11, 14, 17, 18

*Smith v. United States*, 360 U.S. 1, 9 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Stirone v. United States*, 3u1 U.S. 212, 217 (1960) . . . . . . . . . . . . . . . . . . . . . 3

*Stringer v. Black*, 503 222, 232 (1992) . . . . . . . . . . . . . . . . . . . . . . . 27, 29, 31

*Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) . . . . . . . . . . . . . . . . . . . . . . 20

*Trop v. Dulles*, 356 U.S. 86, 101 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Albertini*, 472 U.S. 675, 679 (1985) . . . . . . . . . . . . . . . . . . . 15

*United States v. Allen*, 247 F.3d. 741, (8th Cir. 2001) . . . . . . . . . . . . . . . . . 8, 9

*United States v. Cotton*, 122 S.Ct. 1781 (2002) . . . . . . . . . . . . . . . . . . . . . 4, 6, 7

*United States v. Davis*, 912 F.Supp. 938 (E.D. La. 1996) . . . . . . . . . . . . . . 31, 32

*United States v. Dionisio*, 410 U.S. 19 (1973) . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Evans*, 333 U.S. 483, 495 (1948) . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Gayton*, 74 F.3d 545,551 (5th Cir. 1996) . . . . . . . . . . . . . . . . . 2

*United States v. Hudson*, 11 U.S. 32 (1812) . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Jackson*, 390 U.S. 570 (1968) . . . . . . . . . . . . . . . . . . . . 16, 17

*United States v. Jones*, 132 F.3d 232, 252 (5th Cir. 1998) . . . . . . . . . . . . . . . . 29

*United States v. Locke*, 471 U.S. 84, 95-96 (1985) . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. McCullah*, 76 F.3d 1087 (10th Cir. 1996) . . . . . . . . . . . 27, 28, 29

*United States v. Moussaoui*, No. 01-455 (E.D. Va.) . . . . . . . . . . . . . . . . . 8

*United States v. Nguyen*, 928 F. Supp. 1525, 1535 (D. Kans. 1996) . . . . . . . . . 33

*United States v. Quinones*, 196 F.Supp.2d 416 (S.D.N.Y. 2002) . . . . . . . . . . . . 22

*United States v. Quinones*, 205 F. Supp. 2d 256 (S.D.N.Y. 2002) . . . . . . . . . 23, 24

*United States v. Quinones* 313 F.3d 49 (2nd Cir. 2002) . . . . . . . . . . . . . . . 24, 25

*United States vs. Phillips*, 664 F.2d 971, 1027 (5th Cir. 1980) . . . . . . . . . . . . . 20

*United States v. Tercet*, 452 U.S. 576, 580 (1981) . . . . . . . . . . . . . . . . . . . . 15

*United States v. White*, 241 F.3d 1015, 1020 (8th Cir. 2001) . . . . . . . . . . . . . . .2

*Walton v. Arizona*, 497 U.S. 639 (1990) . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

## 5TH CIRCUIT RULES

Rule 28.2.1, 5th Circuit Rules   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Rule 28.24, 5th Circuit Rules   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

## FEDERAL RULES OF APPELLATE PROCEDURE

Rule 28(a)(3), Federal Rules of Appellate Procedure . . . . . . . . . . . . . . . . . . . . iv, vi

Rule 28(a)(4)(A)-(D), Federal Rules of Appellate Procedure . . . . . . . . . . . . . . . xi

Rule 28(a)(5), Federal Rules of Appellate Procedure . . . . . . . . . . . . . . . . . . . . xii

Rule 28(a)(6), Federal Rules of Appellate Procedure . . . . . . . . . . . . . . . . . . . . xiv

Rule 28(a)(7), Federal Rules of Appellate Procedure . . . . . . . . . . . . . . . . . . . . xvi

Rule 28(a)(10), Federal Rules of Appellate Procedure . . . . . . . . . . . . . . . . . . . . 35

Rule 34(a)(1), Federal Rules of Appellate Procedure . . . . . . . . . . . . . . . . . . . . iii

## FEDERAL RULES OF EVIDENCE

Rule 403, Federal Rules of Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Rule  404(b), Federal Rules of Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Rule 801(d) 2(E), Federal Rules of Evidence . . . . . . . . . . . . . . . . . . . . . . . . 20

## FEDERAL RULES OF CRIMINAL PROCEDURE

R.52, Federal Rules of Criminal Procedure  . . . . . . . . . . . . . . . . . . . . . . . . 20

## UNITED STATES CODE

18 *U.S.C.* § 924 (c)(1)(A)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi, xiv

18 *U.S.C.* § 924 (c)(1)(C)(iii)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi, xiv

18 *U.S.C.* § 924 (j)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi, xiv

18 *U.S.C.* §§ 3591-3593  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 24, 28

18 *U.S.C.* §§ 3591(a)(2)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

18 U.S.C. § 3592 (c)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

18 U.S.C. § 3592(c)(16) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

18 U.S.C. § 3593(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

19 *U.S.C.* § 934 (c)(1)(A)(i) & (c)(1)(C)(i) . . . . . . . . . . . . . . . . . . . . . . . . xi, xiv

21 *U.S.C.* §§ 841 (a)(1) & 841 (b)(1)(A) & 848 (e) . . . . . . . . . . . . . . . . . . . xi, xv

21 *U.S.C.* §§846 & 841 (b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . xi, xiv

21 *U.S.C.* §§846 & 841 (b)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . xi, xiv

21 *U.S.C.* § 3581 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

## UNITED STATES CONSTITUTION

Fifth Amendment, United States Constitution . . . . . . 1, 3, 7, 11, 12, 16, 18, 22, 24

Sixth Amendment, United States Constitution . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 16

Eighth  Amendment, United States Constitution . . . . . . . . . . . . . . . . . . . . . . 22, 24

## OTHER AUTHORITIES

Archbold, PLEADING AND EVIDENCE IN CRIMINAL CASES . . . . . . . . . . . . . . . . . . . . 6

## JURISDICTIONAL STATEMENT
(Fed.R.App.P. 28(a)(4)(A)-(D))

This case was prosecuted in federal court under the authority of the following:

*21 U.S.C. §§846 & 841 (b)(1)(B)*
Conspiracy to Distribute More than 100 kilograms of Marijuana

*21 U.S.C. §§846 & 841 (b)(1)(A)*
Conspiracy to Distribute More than 5 kilograms of Cocaine

*21 U.S.C. § 848 (e)*
Murder while Engaging in a Continuing Criminal Enterprise

*19 U.S.C. § 934 (c)(1)(A)(i) & (c)(1)(C)(i)*
Possession Firearm in Furtherance of Drug Trafficking Crime

*18 U.S.C. § 924 (c)(1)(A)(ii)*
Carry/Use Firearm in Furtherance of Drug Trafficking Crime

*18 U.S.C. § 924 (c)(1)(C)(iii)*
Carry/Use/Discharge Firearm During Drug Trafficking Crime

*18 U.S.C. § 924 (j)*
Murder in Court of Carrying/Using Firearm during a Drug Trafficking Crime

*21 U.S.C. §§ 841 (a)(1) & 841 (b)(1)(A) & 848 (e)*
Murder while Engaged in Possession of More than 5 kilograms of Cocaine with Intent to Distribute

*21 U.S.C. § 3581 et seq*
Federal Death Penalty Act

xi

## ISSUES PRESENTED FOR REVIEW
(Fed.R.App.P. 28(a)(5))

### ISSUE NUMBER ONE

THE INDICTMENT DID NOT INCLUDE AGGRAVATING FACTORS AND THUS THE DEATH PENALTY WAS NOT AUTHORIZED UNDER THE INDICTMENT CLAUSE OF THE FIFTH AMENDMENT.

### ISSUE NUMBER TWO

THE FEDERAL DEATH PENALTY ACT VIOLATES THE INDICTMENT AND DUE PROCESS CLAUSES OF THE FIFTH AMENDMENT INASMUCH AS THE ACT REQUIRES THAT PROSECUTORS RATHER THAN GRAND JURORS CHARGE THE AGGRAVATING FACTOR ELEMENTS OF A CAPITAL OFFENSE.

### ISSUE NUMBER THREE

THE TRIAL COURT ERRED BY ADMITTING HEARSAY STATEMENTS OF A WITNESS UNDER THE ERRONEOUS BELIEF THAT SUCH STATEMENTS WERE ADMISSIBLE AS CO-CONSPIRATORS STATEMENTS.

### ISSUE NUMBER FOUR

THE FEDERAL DEATH PENALTY ACT VIOLATES THE FIFTH AND EIGHTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

xii

## ISSUE NUMBER FIVE

THE TRIAL COURT ERRED IN DENYING APPELLANT'S COMPLAINT THAT THE GOVERNMENT'S NOTICE OF AGGRAVATING FACTORS WAS DUPLICITOUS, AND THE SUBMISSION OF DUPLICITOUS AGGRAVATING FACTORS RESULTED IN IMPROPER DOUBLE COUNTING.

## ISSUE NUMBER SIX

THE TRIAL COURT ERRED IN DENIAL OF APPELLANT'S MOTION TO DISMISS NON-STATUTORY AGGRAVATING FACTORS AS UNAUTHORIZED BY STATUTE.

## STATEMENT OF THE CASE
(Fed.R.App.P. 28(a)(6))

This is an appeal from a judgment of conviction and sentence of death, life imprisonment, and imprisonment for 300 months imposed in a federal prosecution. A jury found Robinson guilty of having violated multiple statutes in several counts of a superseding indictment as follows:

Count 1:        21 U.S.C. §§846 & 841 (b)(1)(B)
                Conspiracy to Distribute More than 100 kilograms of Marijuana

Count 2:        21 U.S.C. §§846 & 841 (b)(1)(A)
                Conspiracy to Distribute More than 5 kilograms of Cocaine

Count 3:        21 U.S.C. § 848 (e)
                Murder while Engaging in a Continuing Criminal Enterprise

Counts 4, 8 & 17:  19 U.S.C. § 934 (c)(1)(A)(i) & (c)(1)(C)(i)
                Possession Firearm in Furtherance of Drug Trafficking Crime

Counts 5, 9, & 13:  18 U.S.C. § 924 (c)(1)(A)(ii)
                Carry/Use Firearm in Furtherance of Drug Trafficking Crime

Counts 6, 10 & 14:      18 U.S.C. § 924 (c)(1)(C)(iii)
                Carry/Use/Discharge Firearm During Drug Trafficking Crime

Counts 7, 11, & 15      18 U.S.C. § 924 (j)
                Murder in Court of Carrying/Using Firearm during a Drug Trafficking Crime

Count 12:       21 U.S.C. §§ 841 (a)(1) & 841 (b)(1)(A) & 848 (e)

xiv

Murder while Engaged in Possession of More than 5 kilograms of Cocaine with Intent to Distribute

Pursuant to the jury's recommendations, the district court sentenced Robinson to death on Counts 3, 7 and 11, and life imprisonment on Counts 12 and 15. Robinson was also sentenced to 300 months confinement on Count 17, to run consecutively with his sentences on Counts 12 and 15. Though adjudged guilty of the remaining counts, Robinson was not sentenced on those counts, the court concluding that they were lesser included offenses of other counts of conviction. Robinson appeals his judgment of conviction and the various sentences rendered in his case to the United States Court of Appeals for the Fifth Circuit.

## FACTS RELEVANT TO THE ISSUES
## SUBMITTED FOR REVIEW
(Fed.R.App.P. 28(a)(7))

Appellant JULIUS OMAR ROBINSON is a young African-American man, with only a minor criminal history prior to the events which form the basis of this indictment. In 1998 ROBINSON became associated with a number of persons in a drug trafficking scheme. Those persons included among others, L.J. BRITT, who was likewise indicted for various drug offenses and murders.

In early 1999 the DEA became aware of the drug operation after the interception of a shipment of marijuana going from Arkansas to Arlington, Texas. Ultimately the DEA applied for and was granted authority to conduct wiretaps on the phone of ROBINSON. As a result of those wiretaps, surveillance, and information developed from various other persons, the DEA was able to intercept the drug shipments with which ROBINSON was associated.

During the course of this investigation, evidence was also developed which linked ROBINSON with three murders committed in 1998 and 1999. Based on these murders, ROBINSON, L.J. BRITT, and numerous other confederates were indicted for various drug trafficking offenses. In addition, ROBINSON and BRITT were each indicted for the three murders previously mentioned. The men were tried separately and the government sought the death penalty against each. In his 2002 trial,

xvi

ROBINSON received death for two of the murders alleged against him; although at least equally culpable, BRITT received life.

## ISSUE NUMBER ONE

THE INDICTMENT DID NOT INCLUDE AGGRAVATING FACTORS AND THUS THE DEATH PENALTY WAS NOT AUTHORIZED UNDER THE INDICTMENT CLAUSE OF THE FIFTH AMENDMENT.

### Summary of the Argument

On June 5, 2002, the District Court sentenced appellant Robinson to death under the FDPA for his alleged role in two homicides. Over objection, the prosecution sought the death penalty without having submitted *any* of the statutory aggravating factors to the grand jury. Relying on *Jones v. United States*, 526 U.S. 227 (1999), the trial court denied Appellant's objections concerning the indictment deficiencies, holding that under *Jones* the aggravated factors are not elements of a death penalty offense, but merely "...sentencing factors, rather than facts that would enhance his punishment beyond that contemplated by the grand jury." (*Order Denying Motion Regarding Intent to Seek the Death Penalty*, CR, Vol. 5, 1217). It is now apparent that under *Ring,* this reliance on *Jones* is no longer on sound footing. Appellant's motion and the court's order denying that motion preserve this error for review.

Following Appellant's conviction and sentence, and during the pendency of his appeal, the Supreme Court announced its decision in *Ring v. Arizona,* 122 S.Ct. 2428 (2002). Applying its intervening decision in *Apprendi v. New Jersey*, 530 U.S. 277

1

(1998) the court held that statutory aggravating factors in a scheme that is in pertinent part analogous to that of the Federal Death Penalty Act of 1994 (FDPA) are "elements" of an aggravated capital offense, and that under the Sixth Amendment's guaranty of trial by jury, that element must be submitted to the trial jury.

The United States Constitution contains a guaranty of grand jury indictment. All elements of a federal felony must be contained in the indictment and submitted to a grand jury. In light of *Ring*, the indictment in this case was fatally insufficient to charge a federal capital offense. The FDPA required the prosecution alone to give notice of the statutory aggravating factor or factors. Robinson's death sentence is unauthorized under *Ring* and therefore null and void.

### <u>Argument</u>

I. The district court erred in sentencing Mr. Robinson to death, inasmuch as the indictment contained none of the intent or statutory aggravating factor allegations that are required to charge a federal capital offense.[1]

> **A.   IN A FEDERAL PROSECUTION FOR A CAPITAL OFFENSE, THE INDICTMENT MUST BE SUBMITTED TO AND APPROVED BY A GRAND JURY.**

---

[1]     A challenge to the sufficiency of an indictment is reviewed de novo. *United States v. White*, 241 F.3d 1015, 1020 (8th Cir. 2001) *United States v. Gayton*, 74 F.3d 545,551 (5th Cir. 1996).

2

The Fifth Amendment guarantees that no individual shall be held to account for a capital offense "unless on a presentment or indictment of a Grand Jury." *U.S. CONST., amend. V.* The common law mandated the use of indictments in all cases warranting serious punishment, and "[t}he Fifth Amendment made the rule mandatory in federal prosecutions in recognition of the fact that the intervention of the grand jury was a substantial safeguard against oppressive and arbitrary proceedings." *Smith v. United States*, 360 U.S. 1, 9 (1959). The Supreme Court has made it clear that a defendant may not be tried "on charges that are not made in the indictment against him." *Stirone v. United States*, 361 U.S. 212, 217 (1960).

In *United States v. Dionisio*, 410 U.S. 19 (1973), the Court explained that the "most celebrated" purpose of the grand jury "is to stand between the government and the citizen" and protect individuals from the abuse of arbitrary prosecution:

> Properly functioning, the grand jury is to be the servant of neither the Government nor the courts, but of the people ... As such, we assume that it comes to its task without bias or self-interest. Unlike the prosecutor or policeman, it has no election to win or executive appointment to keep.

*Id.* at 33, 35. In a decision addressing the definition of "elements" of a federal offense that was announced on the same day as *Ring v. Arizona*, 122 S.Ct. 2428 (2002) the Supreme Court reaffirmed the importance of the grand jury – a group of lay citizens rather than an elected or politically appointed prosecutor – in a gate-keeping role,

3

noting that "grand and petit juries ... form a 'strong and two-fold barrier ... between the liberties of the people and the prerogative of the [sovereign].'" *Harris v. United States,* 122 S.Ct. 2406, 2418 (2002) (quoting *Duncan v. Louisiana,* 391 U.S. 145, 151 (1968).

## B.   THE INDICTMENT MUST CHARGE EVERY ELEMENT OF THE OFFENSE.

The Court has made it clear that the grand jury's role extends to every element of an offense. *Jones v. United States,* 526 U.S. 227, 232 (1998).  As recently as *United States v. Cotton,* 122 S.Ct. 1781 (2002), a case involving the intersection of *Apprendi* and the plain error rule, the Court reaffirmed that any fact increasing the maximum punishment in a federal prosecution "must ... be charged in the indictment." *Id.* at 1783.

4

**C.    IN A CAPITAL CASE, THE STATUTORY AGGRAVATING FACTORS THAT RENDER A DEFENDANT ELIGIBLE FOR THE DEATH PENALTY ARE ELEMENTS OF THE OFFENSE.**

In *Ring* the Court held that "Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense.'" 122 S.Ct. at 2443 (quoting *Apprendi*, at 494, n. 19). *Ring* explained that "'the relevant inquiry is one not of form , but of effect,'" and that the effect of a finding of aggravating factors under the Arizona code was to expose a defendant "to a greater punishment than that authorized by the jury's guilty verdict." *Id.* at 2440 (quoting *Apprendi* at 494). The Court reasoned that "[i]f a [sovereign] makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact – no matter how the [sovereign] labels it – must be found by a jury beyond a reasonable doubt." *Id.* at 2439.

Although the context in which *Apprendi* gave the Supreme Court occasion to define "elements" for the purpose of constitutional analysis was the Sixth Amendment guarantee of trial by jury, the *ratio decidendi* of *Apprendi* indicates that the Court had the grand jury as well as the petit jury in mind:

> Just as the circumstances of the crime and the intent of the defendant at the time of the commission were so often essential elements to be alleged in the indictment, so too were the circumstances mandating a particular punishment. "Where a statute annexes a higher degree of punishment to a common-law felony, if committed under particular circumstances, an

> indictment of the offense, in order to bring the defendant within that higher degree of punishment, must expressly charge it to have been committed under those circumstances, and must state the circumstances with certainty and precision. [2 M. Hale, Pleas of the Crown 170]." Archbold, PLEADING AND EVIDENCE IN CRIMINAL CASES, at 51. If, then, "upon an indictment under the statute, the prosecutor proves the felony to have been committed, but fails in proving it to have been committed under the circumstances specified in the statute, the defendant shall be convicted of the common-law felony only." *Id.*, at 188.

*Apprendi* at 480-81. As *Ring* held with respect to submission to the trial jury therefore, facts beyond those defining the generic offense that are necessary to render a defendant liable to a higher degree of punishment are elements of an aggravated felony and must be charged by the grand jury. *Accordingly, Harris, supra,* at 2417 (holding that "[a] crime was not alleged, and a criminal prosecution was not complete, unless the indictment and the jury verdict included all the facts to which t}he legislature had attached the maximum punishment"); *Cotton, supra* at 1783 (recognizing that any fact increasing the maximum punishment to which the defendant may be subjected "must also be charged in the indictment").

In these recent instances of defining "element" for constitutional purposes, the Supreme Court has yoked indictment to verdict and grand jury to trial jury. *Apprendi* and *Ring* presented no occasion for the Court to hold that the elements of ethnic intimidation, on the one hand, and pecuniary gain and depravity of mind, on the other, had to be

6

included in the indictment: both cases arose from state-court prosecutions and the guarantee of grand jury indictment does not apply to the states. But the Fifth Amendment explicitly protects the right to grand jury review of federal charges. With the restraints of federalism removed – as they are in the present appeal – there is no reason to treat an element differently when it relates to the guarantee of grand jury indictment than when it relates to the guarantee of petit jury trial.

**D.    IN A FEDERAL CAPITAL CASE, THE PROSECUTION MUST SUBMIT AT LEAST ONE STATUTORY AGGRAVATING FACTOR ELEMENT TO THE GRAND JURY, AND IT IF FAILS TO DO SO THE INDICTMENT DOES NOT CHARGE A CAPITAL OFFENSE.**

The Constitution requires that the prosecution charge each element of a federal crime in an indictment. *Jones, supra,* at 232. Before *Ring* there was room to debate whether aggravating factors were elements of a capital offense. *Ring* ended the debate: aggravating factors operate as the "functional equivalent" of elements of a capital prosecution in any constitutional analysis. *Ring, supra* at 2443 quoting *Apprendi, supra* at 494.

*Cotton* recognized that the indictment clause of the Fifth Amendment requires that any fact increasing the maximum punishment to which a defendant may be subjected "must also be charged in the indictment." *Cotton, supra* at 1783. In *Ring* the

7

Supreme Court rejected the notion that statutory aggravating factors necessary to render a defendant eligible for the death penalty are not "elements" of a capital offense, even if the statute defining the predicate offense provides that death is a possible punishment. *Ring, supra* at 2439-40.

The Justice Department has all but conceded the necessity of alleging aggravating factors in a capital indictment. [2] In *United States v. Moussaoui*, No. 01-455 (E.D. Va.), the prosecution acknowledged "that the [Supreme] Court is likely to find that the indictment clause mandates submission of aggravating factors to the grand jury." Government's Opp'n to Mot. to Dismiss Notice of Intent to Seek a Sentence of Death, *United States v. Moussaoui*, http://notablecases.vaed.uscourts.gov/1:01-cr-00455/docs/66899/0.pdf. There the prosecution identified the panel majority's decision in *United States v. Allen*, 247 F.3d. 741, (8th Cir. 2001), *certiorari granted,* judgment vacated. 122 S.Ct. 2653 (2002) as the only opinion "to address the application of the indictment clause to the [Federal Death Penalty Act]" and conceded that the remand of the case "further indicat[es] that the Supreme Court regards the indictment clause as applicable to aggravating factors in the FDPA."

---

[2]Appellant's co-defendant, L.J. Britt was tried on a superseding capital indictment which contained grand jury findings on the aggravating factors applicable to him. See Record Excerpt Tab #6.

8

In the *Allen* case, the Court of Appeals on remand will be considering the same issue presented here. As of this writing a decision had not yet been rendered in that case. Undoubtedly, based on the Supreme Court's remand, the Supreme Court of the United States will ultimately decide this issue.

Both the *mens rea* required by §3591 (a)(2) and the statutory aggravating factors required by § 3592 (c) were essential elements of the federal capital murder offenses for which Robinson was sentenced to death. *See also, Enmund v. Florida,* 458 U.S. 782, 797 ((1982) (*mens rea* requirement); *Gregg v. Georgia,* 452 U.S. 153, 187, 196-98 (1976) (plurality opinion) (*mens rea* and aggravation requirements). Each of those averments – never made by the grand jury, only by prosecutors – was one of fact. Taken together, those averments subjected Robinson to a greater punishment than that authorized by the facts alleged in the indictment alone.

Neither this Court nor Robinson has any way of knowing whether the grand jury would have returned an indictment alleging the presence of aggravating factors sufficient to charge a crime punishable by death.

A sovereign may vest authority in elected or appointed prosecuting attorneys to decide whether to seek the death penalty. *See, McCleskey v. Kemp,* 481 U.S. 279, 296-97 (1987). But that discretion hardly overrides – in fact is an archetypical reason for – the constitutional

9

requirement of neutral review of prosecutorial intentions. The prosecution in this case should have been precluded from seeking Robinson's execution through allegations that the grand jury never charged, and, to the best of our knowledge, never considered.. Now the sentence of death the government achieved should be vacated.

## ISSUE NUMBER TWO

THE FEDERAL DEATH PENALTY ACT VIOLATES
THE INDICTMENT AND DUE PROCESS CLAUSES OF
THE FIFTH AMENDMENT INASMUCH AS THE ACT
REQUIRES THAT PROSECUTORS RATHER THAN
GRAND JURORS CHARGE THE AGGRAVATING
FACTOR ELEMENTS OF A CAPITAL OFFENSE.[3]

### Summary of the Argument

The Federal Death Penalty Act of 1994 (FDPA) is unconstitutional for its failure

to require that any aggravating factors to be relied upon by the government in seeking

a sentence of death, be presented to a grand jury and included in the indictment. The

FDPA improperly and unconstitutionally delegates what should be the action of a grand

jury in charging aggravating factors used to seek a death penalty. Additionally, only

an act of Congress can "fix" the constitutional deficiency of the FDPA on the issue of

inclusion of aggravating factors in the indictment.

### Argument

The FDPA and the Arizona sentencing scheme found unconstitutional in *Ring*

are the same for the purpose of applying the Supreme Court's definition of "element."

---

[3] A challenge to the constitutionality of a statute is reviewed *de novo. Hamilton v. Schirro*, 74 F.3d 1545, 1552 (8th Cir. 1996).

11

Each allows death as a theoretical sentence in the statute defining the offense, and in a separate statute each sets forth the aggravating factors and procedural steps necessary to render the accused eligible for capital punishment. Under neither scheme does the fact that a trial jury returns a guilty verdict on the underlying offense authorize the imposition of a death sentence, or even authorize the same jury or judge to consider such a sentence. Both the Arizona statute and the FDPA require additional proceedings and fact-finding with respect to the aggravating factor elements of a capital offense.

> **A. THE FEDERAL DEATH PENALTY ACT COMMITS THE CHARGING OF THE STATUTORY AGGRAVATING FACTOR ELEMENT OF A CAPITAL CRIME TO PROSECUTING ATTORNEYS RATHER THAN TO GRAND JURORS.**

The Federal Death Penalty Act of 1994 authorizes a sentence of death only after the prosecution has charged and proved aggravating factors, including at least one of sixteen listed in § 3592 (c) for homicide-related offenses. 18 *U.S.C.* §§ 3591-3593. The Act provides without ambiguity that the allegation of aggravating factors against a defendant will be made by prosecuting attorneys in a notice of intent to seek a sentence of death, rather than by a grand jury in its indictment. 18 *U.S.C.* § 3593 (a). The Fifth Amendment states that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury." *U.S.*

12

*CONST.* , amend. V. The FDPA bypasses grand juries in this integral aspect of the capital charging process. By committing the decision to charge one element of a capital offense to politically appointed prosecutors and their employees, rather than to a body of lay citizens, Congress created a death penalty scheme that is unconstitutional.

The FDPA does not contemplate a grand jury having any role at all in deciding who will or will not face a sentence of death. Instead Congress vested the sole authority to make and implement that decision in the executive branch:

> If ... the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice –
>
> > (1) stating that the government believes that the circumstances of the offense are such that ... a sentence of death is justified under this chapter and that the government will seek the sentence of death; and
> >
> > (2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

18 *U.S.C.* § 3593 (a). Subsection (b) of the same section provides for a death-sentencing hearing before the jury or before the judge in cases not tried to a jury. The context of subsection (a) allows no good-faith doubt that the actions it prescribes will occur *after* the accused has been indicted for an offense that, in the abstract, might

13

subject him to the death penalty.

### B. ONLY AN ACT OF CONGRESS CAN CURE THE CONSTITUTIONAL DEFICIENCY OF THE FDPA.

*Ring* holds that aggravating factors which must be charged and proved to make a defendant eligible for execution are elements of a capital offense. *Ring, supra* at 2443. *Ring* thus establishes as well that in enacting the FDPA Congress defined the new crime of federal capital murder. The FDPA needs repair if the federal government intends to continue to use it as the vehicle for sentencing people to death.

Neither prosecutors nor judges can ameliorate the constitutional infirmities of the FDPA by re-routing the process of charging aggravating factors through grand juries. That "fix" would be an unconstitutional exercise of the legislative power by the executive or judicial branch. Federal courts would be required to make numerous judgment calls of a legislative nature. For example, which aggravating factors must be included in the indictment? Must, or *may*, a defendant plead to those factors? Do the diminished evidentiary standards provided by the Act for the penalty trial apply to the proof of some or all aggravating factors? If they apply to the proof of aggravating factors, do those standards apply as well to the presentation of mitigating evidence?

Ever since 1812 it has been the law that only Congress has the power to define

14

federal crimes. *United States v. Hudson*, 11 U.S. 32 (1812). Prosecutors cannot circumvent the legislative process by re-inventing the charging process mandated by Congress in the FDPA. Neither should this Court accommodate any request by prosecutors for judicial reconstruction of the Act.

Congress has enacted a statute with unambiguous provisions that conflict with the Constitution. It is the duty of the federal courts to recognize that unconstitutionality rather than to engage in legislative efforts designed to "save" the Act:

> Courts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language. *Garcia v. United States*, 469 U.S. 70, 75 (1984); *United States v. Tercet*, 452 U.S. 576, 580 (1981). "[O]nly the most extraordinary showing of contrary intentions" in the legislative history will justify a departure from the language. *Garcia*, 469 U.S. at 75. This proposition is not altered simply because application of a statute is challenged on constitutional grounds. Statutes should be construed to avoid constitutional questions, but this interpretive canon is not a license for the judiciary to rewrite language enacted by the legislature. *Heckler v. Mathews*, 465 U.S. 728, 741-42 (1984). Any other conclusion, while purporting to be an exercise in judicial restraint, would trench upon the legislative powers vested in Congress by Art. I, § 1, of the Constitution. *United States v. Locke*, 471 U.S. 84, 95-96 (1985). Proper respect for those powers implies that "[s]tatutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N' Fly v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985).

*United States v. Albertini*, 472 U.S. 675, 679 (1985); *see also Department of Housing and Urban Development v. Rucker*, 122 S.Ct. 1230, 1235-36 (2002) (stating that the

15

canon of constitutional avoidance "has no application in the absence of statutory ambiguity").

The Supreme Court once before considered whether a federal death penalty provision that violated the Fifth and Sixth Amendments could be remedied by judicial reconstruction. In *United States v. Jackson,* 390 U.S. 570 (1968), the Court found a sentencing provision unconstitutional. *Id.* at 581-82. In an effort to salvage the provision, prosecutors proposed a number of interpretations of the statute and cited *ad hoc* procedures developed by district courts as "cures for the constitutional problems." *Jackson* rejected each approach, holding that the statute required legislative rather than judicial repair. *Id.* at 572-81.

In obvious reliance upon *Walton v. Arizona, supra,* Congress has created a scheme in which prosecuting attorneys alone have discretion to determine whether to charge a capital offense and if so, which aggravating factors to seek to prove. The overruling of *Walton* and the recognition that aggravating factors are elements of a federal capital crime have rendered that scheme constitutionally untenable. Allowing prosecutors to now seek the indictment of congressionally defined factors would give "to the [grand jury] the ultimate duty that Congress deliberately placed in other hands." *See Jackson* at 576; *see also Blount v. Rizzi,* 400 U.S. 410, 419 (1971) (refusing to transfer obscenity determination from Postmaster General to court in order to "save"

16

statute).

The capital sentencing scheme of the FDPA is unconstitutional. Congress created the problem. It is for Congress alone to select an alternative scheme that comports with the Constitution. Neither the executive nor the judicial branch has the power to adopt a constitutional procedure based on the defective FDPA. Congress may or may not choose that procedure. In light of *Ring*, Congress may elect to have a completely different death penalty act – or it may choose to have no death penalty act at all:

> This task is outside the bounds of judicial interpretation. It is better for Congress, and more in accord with its function, to revise the statute than it is for us to guess at the revision it would make. That task it can do with precision. We could do no more than make speculation law.

*United States v. Evans*, 333 U.S. 483, 495 (1948).

The FDPA provided a system to govern many different aspects of capital punishment in federal courts. Robinson has identified one aspect that clearly is unconstitutional in light of *Ring*. But many aspects may be subject to amendment in the wake of changes to the statute required by *Ring*. In *Jackson* the Court explained that judicial procedure-crafting in such situations is "fraught with the gravest difficulties" because it generates a proliferation of questions, leaving defendants "without the guidance that [they] ordinarily find in a body of procedural and evidentiary

17

rules spelled out in advance of trial." 390 U.S. at 579-80.

Congress enacted the FDPA before *Walton, supra*, had been overruled by *Ring*. Under *Walton* aggravating factors were not elements of a capital crime. Having ample reason to believe that aggravating factors were sentencing considerations rather than offense elements, Congress surely did not intend to create new offenses in the FDPA. In light of *Ring* it is clear that the Act did create a new federal crime. The substantive and procedural provisions of the FDPA now lie in disarray. A court should not do what Congress never intended by "construing" grand juries into the capital charging process and otherwise configuring the legislation.

A construction of the FDPA allowing for the charging of aggravating factors by grand juries would require turning a blind judicial eye to the ordinary meaning of the language chosen by Congress. *Ring* materially altered the constitutional environment in which Congress had enacted the FDPA. Until Congress corrects the constitutional infirmity in the sentencing scheme that it designed, the Act cannot be reconciled with the indictment clause of the Fifth Amendment. This Court should declare the FDPA unconstitutional and vacate the death sentence imposed upon Robinson.

18

## ISSUE NUMBER THREE

THE TRIAL COURT ERRED BY ADMITTING HEARSAY STATEMENTS OF A WITNESS UNDER THE ERRONEOUS BELIEF THAT SUCH STATEMENTS WERE ADMISSIBLE AS CO-CONSPIRATORS STATEMENTS.

### Summary of the Argument

At the punishment phase of Robinson's trial, the government introduced testimony from Michael Williams, who claimed to have been briefly restrained of his liberty, threatened, and superficially assaulted by unknown persons in Dermott, Arkansas. (RR. 20: 140-142) This offense occurred, if it did, while Robinson was confined awaiting trial. There was no evidence linking Robinson to this incident other than the testimony of Williams, who claimed that his assailants had made some vague hearsay statements during the course of events. (RR. 20: 142). Williams himself is a felon, and was awaiting sentencing at the time of his testimony. Williams admitted his desire to be seen as cooperating with the government. (RR. 20: 138-139). Robinson objected to the testimony.

### Argument

The testimony in issue should have been excluded on several grounds. First, the statements about which Williams testified were made by other persons, none of whom were present in court, and were offered for the truth of the matter asserted. The

19

statements were clearly hearsay, were not admissible under an exception to the evidentiary rule prohibiting the introduction of such uncorroborated hearsay testimony, and should have been excluded. R. 801(d) 2(E), FED.R.EVID. While this rule provides an exception for the introduction of some statements by co-conspirators, the rule also requires a showing that the declarant and Robinson both be members of the conspiracy. Robinson contends that there was no such showing. Accordingly, these hearsay statements should not have been admitted for the jury's consideration.

Secondly, this hearsay evidence should have been excluded as mere character conformity evidence, which is not relevant and therefore not admissible. R. 404(b), Fed.R.Evid. If the evidence is thought be have been relevant, the testimony should nonetheless have been excluded inasmuch as its probative value, if any, was substantially outweighed by the danger of unfair prejudice to Robinson. R. 403, Fed.R.Evid. The consequences of the court having improperly admitted this evidence are obvious and serious. Errors in evidentiary rulings are subject to a harm analysis. R.52, Fed.R.Crim.P.; *United States vs. Phillips*, 664 F.2d 971, 1027 (5th Cir. 1980). Under such an analysis the error will not require reversal if "beyond a reasonable doubt the error complained of did not contribute to the verdict obtained." *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993). The jury in this case was being asked to consider whether Robinson should live or die. One of the factors which bare on that

20

decision was Robinson's propensity for future violence, an aggravating element which the government was seeking to prove in its quest for death. The uncorroborated and highly suspect "evidence" that Robinson was capable of ordering criminal activity outside his place of confinement would necessarily affect a punishment verdict -- which in this case was death. The harm of the error is direct, obvious, and ultimately life-ending. The judgment and sentence should accordingly be reversed.

21

## ISSUE NUMBER FOUR

### THE FEDERAL DEATH PENALTY ACT VIOLATES THE FIFTH AND EIGHTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

### Summary of the Argument

Julius Robinson, who was prosecuted under the Federal Death Penalty Act, (FDPA), was sentenced to death. Prior to his sentencing, Robinson filed a motion questioning the constitutionality of that act.[4] In those motions urged, as he does now, that evolving standards of decency, as well as a growing awareness of wrongful convictions of those sentenced to death, render the death penalty constitutionally unacceptable.

The question before the Court is whether the government may constitutionally continue to employ the death penalty, in light of the fact that by doing so, it will execute innocent defendants on a regular basis. This issue has never been addressed by the Supreme Court. Under governing case law, it must be considered both under the Due Process Clause of the Fifth Amendment and under the Cruel and Unusual Punishments Clause of the Eighth Amendment, considering evolving standards of decency, as well as current knowledge about the operation of the death penalty in practice.

---

[4]During the pendency of Appellant's trial, a District Court in *United States v. Quinones*, 196 F.Supp.2d 416 (S.D.N.Y. 2002) announced its tentative conclusion that the FDPA was unconstitutional. This potential precedent was not available at the start of Appellant's trial.

22

<u>**Argument**</u>

The district court in *United States v. Quinones*, 205 F. Supp. 2d 256 (S.D.N.Y. 2002) on the basis of an extensive record, found that recent developments – in particular the advent of DNA identification technology, and the extraordinary number of death-row exonerations in the past decade – demonstrate that the number of innocent defendants executed is far greater than was generally suspected just several years ago. It also found, to no one's surprise, that Federal death penalty prosecutions are no less error-prone than state cases; indeed, the record suggests that they may be more so.

Our understanding of the magnitude of this unacceptable miscarriage of justice has changed utterly in a matter of years. Nine years ago, in *Herrera v. Collins*, 506 U.S. 390 (1993) a majority on the Supreme Court stated that the execution of an innocent individual would be "a constitutionally intolerable event," but the Court naively considered such an event "remote and unlikely". *Herrera, supra* at 419. The Supreme Court has never addressed the issue as presented here with this emerging evidence of wrongful convictions. Four months ago is perhaps the closest it has come. In *Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242 (2002) the Court noted that "in recent years a disturbing number of inmates on death row have been exonerated." 122 S. Ct. 2242 at 2252, n. 25 (2002). In this new context, the district court correctly held that to continue to execute, knowing as we now do that in the process we will kill a

23

substantial number of innocent citizens, is just as constitutionally intolerable as to knowingly execute an innocent person. Accordingly the *Quinones* district court held the Federal Death Penalty Act (FDPA) 18 U.S.C. §§ 3591-3598 unconstitutional due to its violation of substantive and procedural due process rights as guaranteed by the Fifth Amendment.

The government appealed the decision of the district court and its decision was reversed in *United States v. Quinones* 313 F.3d 49 (2nd Cir. 2002). (the Court quickly dispensed with the Eighth Amendment claims by citing *Gregg v. Georgia*, 428 U.S. 153 (1976). [5] In its opinion, the Second Court declined to overturn United States Supreme Court precedent that has rejected the claim that it is constitutionally infirm to deprive individuals of the opportunity for continued exoneration. Oddly, the Court said that the command of the Due Process Clause is violated "only if it offends some principle of justice 'so rooted in the traditions and conscience of our people as to be

---

[5] Like the Circuit Court, the Government will urge that: "[t]he constitutionality of the death penalty under the Cruel and Unusual Punishments Clause of the Eighth Amendment has been settled at least since *Gregg v. Georgia*, 428 U.S. 153 (1976)." In *Gregg* and its companion cases, the Supreme Court, of course, did hold that the death penalty is not intrinsically unconstitutional, and that three of the five death penalty statutes before the Court contained adequate procedural safeguards to avoid the arbitrary the imposition of death sentences that was condemned in *Furman v. Georgia*, 408 U.S. 238 (1972). But there is another holding in Gregg and Furman that is more important to the case at hand: That the constitutionality of the death penalty under the Cruel and Unusual Punishments Clause turns on "the evolving standards of decency that mark the progress of a maturing society." 428 U.S. at 173, quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1982). *Furman* and *Gregg* provide direct authority for the District Court's decision in *Quinones*.

ranked as fundamental'" *Quinones* Id. at 34. In the same breath, the court apparently arrives at the startling conclusion that executing the innocent is not so sufficiently rooted in our traditions and conscience as to be fundamental.

The facts that distinguish earlier precedent include the emerging and increasingly obvious realization that the number of individuals wrongly convicted is much higher than was previously believed. The development of the science of DNA has been the main catalyst to the emerging body of evidence on this point. It may well be that other new technologies will further illuminate the frequency of these wrongful convictions and sentences. Prior to these developments, it was mere speculation in most instances that second-guessed judgments of conviction. We should take no great comfort in the long history of the death penalty in our jurisprudence in light of these developments, nor in the inaction of our legislatures. The Constitution should not silently wait for legislative action. We should not align ourselves with the Second Court's deference when it stated: "...if the well-settled law on this issue is to change, that is a change that only the Supreme Court or Congress is authorized to make". *Quinones, supra* at _____. Appellant contends that all Federal courts possess the inherent power to enforce the provisions of our Constitution. Robinson has to start somewhere. He raised this issue in the Texas district court prior to his sentencing, and now re-urges his contention before this court.

25

## ISSUE NUMBER FIVE

THE TRIAL COURT ERRED IN DENYING APPELLANT'S COMPLAINT THAT THE GOVERNMENT'S NOTICE OF AGGRAVATING FACTORS WAS DUPLICITOUS, AND THE SUBMISSION OF DUPLICITOUS AGGRAVATING FACTORS RESULTED IN IMPROPER DOUBLE COUNTING

### Summary of the Argument

Appellant filed a pretrial motion which complained that the government's notice of its intent to seek the death penalty setting out aggravating factors it intended to prove was duplicitous. Appellant argued that the notice allowed the government to seek the death penalty by double counting the same acts or conduct in more than one aggravating factor, or to create as an aggravating factor based on conduct that was already included in the underlying conviction. (CR. 3: 570, 642) The trial court entered an order denying Appellant's motion. (CR. 5: 1216, 1218) The complained of aggravating factors were submitted to the trial jury at the punishment phase of Appellant's trial which resulted in the sentence of death. Appellant continues his complaint in his appeal.

### Argument

It is clear that the Federal Death Penalty Act is a weighing scheme for assessing a death penalty. Jurors determine whether aggravating factors exist and weigh them

26

against mitigation factors in reaching a punishment verdict. 18 U.S.C. § 3593 (e)(1).

Appellant sets out the offending factors pertaining to count 11 as follows:

> e. the defendant, Julius Omar Robinson, in the commission of the offense knowingly created a grave risk of death to one or more persons in addition to Juan Reyes, the victim of the offense. (18 U.S.C. § 3592 (c)(5);

> ...
> h. the defendant, Julius Omar Robinson, intentionally killed or attempted to kill more than one person in a single criminal episode. (18 U.S.C. § 3592(c)(16).

These two assertions are listed as statutory aggravating factors in the referenced statutory sections. These two assertions essentially allege the same conduct.

Aggravating factors – especially where utilized in a weighing jurisdiction – may not be alleged in duplicative fashion. This is to avoid the effect of having the same conduct or circumstance found repeatedly and weighed repeatedly. Duplicative aggravating factors – like invalid aggravating factors – have the undeniable tendency to undermine the integrity of the weighing process, since the same factor is weighed more than once by the jury. *United States v. McCullah*, 76 F.3d 1087 (10th Cir. 1996) (Reversing a sentence of death). The effect of duplicative factors – like invalid factors – is to place "the thumb [on] ... death's side of the scale." *Stringer v. Black*, 503 222, 232 (1992). In *McCullah*, the court stated:

> [D]ouble counting of aggravating factors, especially under a

27

weighing scheme, has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally. [citation omitted] As the Supreme Court of Utah pointed out, when the same aggravating factor is counted twice, the "defendant is essentially condemned 'twice for the same culpable act,'" which is inherently unfair. *Parsons v. Barnes*, 871 P.2d 516, 519 (Utah).

*McCullah*, 76 F.3d at 1111-12. The *McCullah* court also noted that "the mere finding of an aggravating factor cannot but imply a qualitative value to that factor." *Id.* at 1112. In essence, the more aggravating factors there are, and a scheme which allows prosecutors to allege non-statutory factors guarantees numerosity, the further the death-side of the balance will tip, even if the same conduct has been subtly, or not so subtly, recast and reborn as an ostensibly new and separate aggravating factor.

As summarized in the *McCullah* opinion, duplicative utilization of the same conduct to support more than one aggravating factor has a prejudicial tendency to produce arbitrary and capricious death verdicts. In this case, the government chose to utilize the same conduct in a repetitive manner by taking a single course of conduct to create three separate aggravating factors: (1) grave risk of death to others[6] that caused the death of Juan Reyes; (2) grave risk of death to persons other than Juan Reyes; (3) multiple killings or attempted killings.

---

[6]    This factor in the government's notice is in paragraph "d" for count 11 and is presumably alleged pursuant to 18 U.S.C. § 3591 (a)(2)(D). This provision is one of the predicates required before consideration of the § 3592 factors that concentrates on the culpable mental state of the actor.

28

The government's multiple use of overlapping and indistinguishable elements of the offense creates precisely the danger discussed in *McCullah* and *Stringer, supra*. The jury, passing on a single course of conduct would find three separate factors from that conduct and load them all in the death-side of the balance. This duplicity permitted by the trial court was error.

Once the court has determined that the aggravating factor or factors are invalid as duplicitous, the court must then apply some standard of harmless error review. This court in *United States v. Jones*, 132 F.3d 232, 252 (5th Cir. 1998) applied a "second" standard of harmless error review and inquired whether beyond a reasonable doubt, a death sentence would have been imposed absent the invalid aggravating factors. This court redacted the invalid aggravating factors and reconsidered the entire mix of aggravating and mitigating factors presented to the jury. Appellant urges that he was harmed by the duplicative aggravating factors and that it cannot be concluded "beyond a reasonable doubt" that his death sentence would have been imposed in any event.

29

## ISSUE NUMBER SIX

THE TRIAL COURT ERRED IN DENIAL
OF APPELLANT'S MOTION TO DISMISS
NON-STATUTORY    AGGRAVATING
FACTORS    AS    UNAUTHORIZED    BY
STATUTE.

### Summary of the Argument

Prior to the commencement of trial, Appellant filed his Motion and Brief

Regarding Government's Intent To Seek The Death Penalty. (CR. 3: 570, 645-50) This

motion raised eleven points challenging various aspects of the government's notice and

intent to seek the death penalty. Among those points raised was a complaint that the

Federal Death Penalty Act did not authorize the use of aggravating factors that were

not listed in the statute, otherwise referred to herein as non-statutory aggravating

factors. This motion was denied by the trial court. (CR. 5: 1216, 1218) Appellant urges

that this motion should have been granted on this issue and raises the same complaint

in his appeal.

### Argument

Aggravating factors serve a vital function in death-penalty jurisprudence. In

*Gregg v. Georgia*, 428 U.S. 153, 189 (1976), the Court stated that "where discretion

is afforded a sentencing body on a matter so grave as the determination of whether a

30

human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." In the case of the FDPA, it is obvious that the aggravating factors (statutory and non-statutory) are intended to perform the necessary narrowing function. The choice of schemes reflects a conscious legislative decision that not all murderers deserve the death penalty. Instead, the class of such murderers is to be narrowed by reference to particular facts and circumstances about the crime or the criminal. Moreover, in a weighing jurisdiction, the sheer number of aggravating factors becomes of particular concern leading prosecutors to believe they are permitted to make aggravating factors up as they go along. The combination of a weighing jurisdiction which permits non-statutory factors can yield, with deadly effect, the placement of a "thumb on death's side of the scale." *Stringer v. Black*, 503 U.S. 222, 230 (1992).

In *United States v. Davis*, 912 F.Supp. 938 (E.D. La. 1996), the trial court also had occasion to discuss utilization of non-statutory aggravating factors in a case brought pursuant to the FDPA, concluding as follows:

> The statute [FDPA] is a "weighing" statute. Once the evidence of all the aggravating and mitigation factors is in, the jury is to consider whether all of the former factors "outweigh" the latter. § 3593 (e). To carefully define the statutory aggravating factors, but then allow wholesale introduction of non-statutory aggravating information would defeat the goal of guided and measurable jury discretion and return us to an unconstitutional system where the death penalty is "wantonly" and

31

"freakishly" imposed. It cannot be presumed that Congress intended to create a statute that is so self-defeating, much less one that would be unconstitutional. Additionally, as noted in *Gregg*, juries have little, if any, experience with sentencing and "are unlikely to be skilled in dealing with the information they are given." 96 S.Ct. at 2934. Any guidance that can be provided – particularly in a decision so fundamental and profound as that made in a capital case – must be provided. All of the above mandates that judicial discretion be exercised and the non-statutory aggravating factors be carefully screened. In doing so, this court must seek to fulfill the intent of Congress and at the same time construe the statute in a manner that maintains its constitutionality. *Davis* at 943.

The government takes the position that the FDPA allows the government at virtual whim, to utilize non-statutory aggravating factors in pursuit of a death sentence. In this case, the government set forth non-statutory factors in its notice that were submitted to the jury in Appellant's case, specifically, the future dangerousness factor and the assertion that Appellant had engaged in a previous act of violence and received deferred adjudication for his crime. (CR. 2: 301; 5; 1335)

The FDPA statutory scheme requires the government, as part of its notice obligations, to file with the Court, and serve upon the defendant, a document that, *inter alia*, sets forth:

> [T]he aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.
>
> The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, victim impact statement that identifies the victim of the offense and the extent and scope of the

32

injury and loss suffered by the victim, and the victim's family, and any other relevant information.

18 U.S.C. § 3593 (a). The statute then goes on to list 16 separate aggravating factors as relevant to this kind of case. 18 U.S.C. § 3592 (c).[7]

The use of non-statutory aggravating factors – with the possible exception of victim-impact evidence[8] – is simply not authorized by the statute. This is because § 3592 (c) of the statute contradicts § 3591 (a) of the statute. The former provides that the jury "may consider whether any other aggravating factor for which notice has been given exists." 18 U.S.C. § 3592 (c). But § 3591 (a) provides that a defendant may be sentence to death only after a consideration by the jury of "the factors set forth in § 3592 ...." Section 3592 contains, as noted above, a listing of 16 factors and 16 factors only. Therefore, non-statutory factors may not be considered by a jury since they are not – and could not be – set out in § 3592.[9] This same infirmity is present between 18 U.S.C. § 3591 (b) and § 3592 (d) which sets out 8 aggravating factors rather than 16.

In *United States v. Nguyen*, 928 F. Supp. 1525, 1535 (D. Kans. 1996), the trial

---

[7]   See also list of statutory aggravating factors in 21 U.S.C. § 848 (n).

[8]   Section 3593 seems to allow for victim-impact evidence as a factor for which notice may be given. 18 U.S.C. 3593 (a)(2).

[9]   This view of the requirements of the FDPA is reinforced by the fact that the section of the Act concerning appellate review, § 3595, makes reference only to aggravating factors considered by the jury under § 3592.

33

judge described, and rejected, the above-stated statutory argument as "hyper-literal."

Yet, if Congress is going to go into the business of authorizing death sentences and executions, it has a concomitant responsibility to speak in a language which is clear and unambiguous. Whatever political capital there is to be made on pursuit of the death penalty must be earned by clear legislative direction. Because the statute does not authorize non-statutory aggravating factors – except in the case of victim -impact – the non-statutory aggravating factors in this case should have been dismissed and not submitted to Appellant's jury.

34

## CONCLUSION
(Fed.R.App.P. 28(a)(10))


Appellant Robinson prays that this Honorable Court reverse and remand his case for a new trial, or in the alternative for a new punishment hearing based on the errors raised in his brief. Appellant Robinson further prays that upon reversal and remand, that this Court find that due to the constitutional infirmities raised herein, that he is not subject to the death penalty under the Federal Death Penalty Act of 1994 for the conduct that is the subject of this cause. Appellant also prays for any other and further relief to which he may be entitled.

Respectfully submitted,

BALL & HASE
4025 Woodland Park Boulevard, Suite 100
Arlington, Texas 76013
Telephone: 817-860-5000
Telecopier: 817-860-6645


WES BALL
State Bar No. 01643100

35

LAW OFFICES OF JACK V. STRICKLAND
The Bryce Building
909 Throckmorton Street
Fort Worth, Texas 76102
Telephone:  817-338-1000
Telecopier:  817-338-1020


JACK V. STRICKLAND
State Bar No. 19397000

ATTORNEYS FOR APPELLANT

36

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2003, Appellant's Original Brief was forwarded to the Court and the persons listed below. On July 28, 2003, Counsel for Appellant received notice from the Court concerning revisions to the cover page of said brief.

On this the _31st_ day of ___July___, 2003, I hereby certify that a true and correct copy of the foregoing Appellant's Original Brief (with revised cover sheet) was forwarded to the following by placing same in the United States Mail, proper postage affixed:

1)    Frederick M. Schattman
      Assistant United States Attorney
      801 Cherry Street, Suite 1700
      Fort Worth, Texas 76102
      Facsimile No. 817-978-3094; and

2)    Ms. Susan Cowger
      Assistant United States Attorney
      801 Cherry Street
      Fort Worth, Texas 76102
      Facsimile No. 817-978-3094; and

3)    Mr. Julius O. Robinson
      26190-177
      Post Office Box 33
      Terre Haute, Indiana 47808.

38

## CERTIFICATE OF COMPLIANCE
(Fed.R.App.P. 32 (a)(7)(B))

Certificate of Compliance with Type-Volume Litigation,
Typeface Requirements, and Type Style Requirements

1.   This brief complies with the type-volume limitation of FED.R.APP.P.
     32(a)(7)(B) because:

   • this brief contains 10,154 words, excluding the parts of the brief
     exempted by FED.R.APP.P. 32(a)(7)(B)(iii), or

2.   This brief complies with the typeface requirements of FED.R.APP. P.
     32(a)(5) and the type style requirements of FED.R.APP.P. 32(a)(6)
     because:

   • this brief has been prepared in a proportionally spaced typeface
     using WordPerfect 6.0 in 14 pt. Times Roman.

_____
JACK V. STRICKLAND

Date: _7-29-03_____

37