# THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

## FORT WORTH DIVISION

| | | |
|---|---|---|
| **JULIUS OMAR ROBINSON,** | **:** | **CAUSE NO. 4:00-CR-00260-2** |
| **aka Face, aka Scar, aka Scarface,** | **:** | **(Civil No. 4:05-CV-756-Y)** |
| **Defendant/Petitioner,** | **:** | |
| | **:** | **DEATH PENALTY CASE** |
| **vs.** | **:** | |
| | **:** | **Honorable Terry Means** |
| **UNITED STATES OF AMERICA,** | **:** | **United States District Judge** |
| | **:** | |
| **Plaintiff/Respondent.** | **:** | |

---

## EXHIBIT NO. 60

## SUBMITTED IN SUPPORT OF DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO VACATE CONVICTION AND SENTENCE AND FOR NEW TRIAL PURSUANT TO 28 U.S.C. § 2255

(Filed Electronically Under the Electronic Filing System Requirements)

---

STATE OF TEXAS                          )
                                        )
COUNTY OF TRAVIS                        )
                                        )
                                        )

AFFIDAVIT OF JOHN P. NILAND

I, John P. Niland, being first duly sworn, state and depose as follows:

1. I am an attorney, licensed to practice law in the State of Texas. I am the director of the Capital Trial Project of Texas Defender Service, a private, non-profit law firm. Texas Defender Service represents inmates on death row, and provides training and no cost consulting services to trial lawyers who are defending those charged with capital crimes. My office address is 510 S. Congress, Suite 304, Austin, Texas, 78704. I have been a licensed attorney for over 34 years and have been involved in the defense of those charged with capital crimes since 1993.

2.      I provide this affidavit at the request of Mr. Mike Charlton, attorney for Julius Robinson in Case # 2001 4:00-CR-260-Y (Civil No. 4:05-CV-756). Mr. Charlton has requested my opinion on the following question: What was the prevailing standard of practice among Tarrant County, Texas lawyers who were providing effective assistance of counsel in developing and presenting mitigating evidence in death penalty cases in March of 2002?

3.      Defense attorneys cannot provide effective assistance of counsel in most felony cases generally, and death penalty cases specifically, without the assistance of a mitigation specialist. The mitigation specialist is most critical in a death penalty case.

THE NATIONAL NORMS

4. It is important to first determine what the national norms are with respect to developing and presenting mitigation evidence in capital cases. The *American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases* (February ,1989) (hereafter1989 Guidelines) establish such norms. The 1989 Guidelines also address eligibility, training, support services, trial preparation and the sentencing phase and appeals for counsel in death penalty cases. The word "should" is used throughout the 1989 and the later 2003 Guidelines as a mandatory term. The practices described in both editions of the Guidelines are minimum requirements of lawyers who are defending in death penalty cases . Courts have for years looked to guidelines to evaluate counsel's performance in death penalty cases. *Wiggins v. Smith*, 123 S.Ct. 2527 (2003).

The standards contained in the 1989 GUIDELINES did not represent the first efforts by the ABA, and others, to provide guides and standards to those defending people charged with

1

**Exhibit 60 - 1**

capital murder and other serious crimes.  The other national standards cited by the 1989 GUIDELINES included ABA Standards, "Providing Defense Services", 5-1.4; National Advisory Commission, Courts, 13.14; NLADA, National Study Commission on Defense Services, Guidelines for Legal Defense Systems, 3.1, 3.4; NLADA, Standards for Defender Services 4.3.

The ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) "The Defense Function"  was cited in  in 1984 as a "prevailing norm of practice to...determine what is reasonable." *Strickland v. Washington*, 466 U.S. 668 (1984).

The 1989 Guidelines speak to the need for trial counsel in a death penalty case to fully develop and present mitigating evidence during the punishment phase of a capital trial.   The Guidelines provide:

> Counsel should present to the sentencing entity or entities all reasonably available evidence in mitigation unless there are strong strategic reasons to forego some portion of such evidence.

It should be noted that counsel cannot make that strategic decision unless and until a thorough mitigation investigation has been completed and the evidence produced is properly analyzed.

Among the topics counsel should consider presenting are:

a.  Medical history (including mental and physical illness or injury, alcohol and drug use, birth trauma and developmental delays);

 b.  Educational history (including achievement, performance and behavior, special educational needs including cognitive limitations and learning disabilities) and opportunity or lack thereof;

c.  Military service, (including length and type of service, conduct and special training)

d.  Employment and training history (including skills and performance, and barriers to employability);

e.  Family and social history (including physical, sexual or emotional abuse, neighborhood surroundings and peer influence; and other cultural or religion influence, professional intervention (by medical personnel, social workers, law enforcement personnel, clerks or others) or lack thereof; prior correctional experience (including conduct on supervision and in institutions, education or training and clinical services);

2

**Exhibit 60 - 2**

f. Rehabilitative potential of the client;

g. Record of prior offenses (adult and juvenile), especially where there is no record, a short record, or a record of non-violent offenses.

h. Expert testimony concerning any of the above and the resulting impact on the client relating to the offense and to the client's potential at the time of sentencing.

5.     The American Bar Association revised the 1989 Guidelines in February of 2003.  While the latest version of the Guidelines were not adopted until after the 2002 trial of Robinson, the text and Commentary of the 2003 Guidelines carry forward the concepts embodied in the 1989 Guidelines.  The policy of both the 1989 and the 2003 Guidelines is the same: counsel must perform a thorough social history as a part of a mitigation investigation in order to hope to provide effective assistance of counsel.

6.     The United States Supreme Court, in April of 2000, found trial counsel ineffective for failing to conduct a thorough mitigation investigation in a case tried in 1986 in the Commonwealth of Virginia, *Williams v. Taylor,* 529 U.S. 362 (2000).  This need for a mitigation specialist to perform a mitigation investigation, beginning with a thorough social history, has been reaffirmed recently by the United States Supreme Court in the case of *Wiggins v. Smith,* 123 S.Ct. 2527 (2003)..   In the *Wiggins* state habeas corpus proceeding, held in April of 1994, the state judge was quoted as saying "not to do a social history (of the defendant) at least to see what you have got, to me is absolute error.  I just -I would be flabbergasted if the Court of Appeals said anything else."   The Supreme Court in *Wiggins* ruled that the *American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases* (February, 2003) establish reasonable norms for the defense of one charged with a capital crime.  Capital murder convictions across the country are now being set aside because the Guidelines were not followed with respect to the development of mitigating evidence.  Both the 1989 and 2003 versions of the Guidelines can be accessed at the ABA's web site, www.aba net.org/death penalty.

Following *Wiggins,*  United States Circuit Courts of Appeal, including the 5th Circuit in two Texas cases, have granted relief where the mitigation investigation in a capital case was not adequate. *Lewis v. Dretke,* 355 F.3d 364 (5th Cir. 2003) and *Roberts* v. Dretke, 381 F.3d 491 (5th Cir. 2005).  These cases were followed up with the important decision by the United States Supreme Court which held that counsel's failure to conduct a complete social history investigation was deficient representation "even when a capital defendant's family members and the defendant himself have suggested that no mitigating evidence is available". *Rompilla v. Beard,* 545 U.S. 374 (2005).

It is important to note that (1)  the various guidelines are not adopting new standards, but are recognizing reasonable practices that are already in place and (2) the recent cases are evaluating attorney representation in cases that preceded the trial of Mr. Robinson.

3

**Exhibit 60 - 3**

7. The 2003 Guidelines discuss the role of the mitigation specialist as a critical  member of the capital defense team.

> A mitigation specialist is also an indispensable member of
> the defense team throughout all capital proceedings.  Mitigation
> specialists possess clinical and information-gathering skills and
> training that most lawyers simply do not have.  They have the
> time and the ability to elicit sensitive, embarrassing and often
> humiliating evidence (e.g. family sexual abuse) that the defendant
> may have never disclosed.  They have the clinical skills to recognize
> such things as congenital, mental or neurological conditions,
> to understand how these conditions may have affected the defendant's
> development and behavior, and to identify the most appropriate
> experts to examine the defendant or testify on his behalf.

8. Training in the field of mitigation was made available to lawyers in the Tarrant County area in April of 2001.  Specifically, affiant as Capital Trial Project Director for Texas Defender Service planned and presented a training program held at the Southern Methodist School of Law in Dallas, Texas, a short distance from Tarrant.  The program was attended by lawyers across the state, including at least one from Tarrant County.  The presentations made at the seminar included:

> "Why Do We Care About Mitigation?  What Happens if We Don't?".
>
> "The Relationship with the Client and Family, "Alpha Personality", Time Lines and Genograms"
>
> Records: Public/Private and in Between: What They Are, Whey They Are aand How to Get Them".
>
> "Brainstorming Mitigation Theories–Using the Client History, Records, Time Lines, Genograms and Interviews to Humanize the Client."
>
> "Dysfunctional Families and Substance Abuse"
>
> "Social and Cultural Factors in Mitigation"
>
> "Anti-Social Personality Disorder and Psychopathy"
>
> "Good Person Evidence and Adaptability to Prison"

**Exhibit 60 - 4**

"Psychological and Neurological Impairment"

"Mitigation Law in Texas"

"Using Mental Health and Other Experts in Mitigation"

"The Team Approach and Theories to a Capital Defense Strategy"

"Developing Themes from Voir Dire Through Closing"

"Litigating Motions for Funding"

"Penalty Phase Closing Argument Demonstration"

The registration records on file do not indicate that neither counsel for Mr. Robinson attended this program.

## 9. THE STANDARD OF PRACTICE IN TARRANT, COUNTY, TEXAS

The standard of practice in Tarrant County, Texas in 2001-2002, among those lawyers who were providing effective assistance of counsel to their capital clients, included:

(a) the hiring of a mitigation specialist;

(b) the mitigation specialist conducting a thorough social history;

(c) the mitigation specialist conducting interviews of those significant people suggested by the social history;

(d) the mitigation specialist gathering those records that were suggested by the social history investigation;

(e) helping the trial lawyers to develop, and present, a cohesive and persuasive mitigation case.

Further, affiant saith naught.

Sworn to and signed this 21st day of August, 2006.

5

**Exhibit 60 - 5**

John P. Niland

Notary Public No.

My Commission Expires ___01/21/2009___.

6

**Exhibit 60 - 6**