**THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF TEXAS**

**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JULIUS OMAR ROBINSON,** | : | **CAUSE NO. 4:00-CR-00260-2** |
| **aka Face, aka Scar, aka Scarface,** | : | **(Civil No. 4:05-CV-756-Y)** |
| **Defendant/Petitioner,** | : | |
| | : | **DEATH PENALTY CASE** |
| **vs.** | : | |
| | : | **Honorable Terry Means** |
| **UNITED STATES OF AMERICA,** | : | **United States District Judge** |
| | : | |
| **Plaintiff/Respondent.** | : | |

---

**PETITIONER'S MOTION SEEKING PERMISSION
TO INTERVIEW JURORS**

(Filed Electronically Under the Electronic Filing System Requirements)

---

MICHAEL B. CHARLTON, No. 04144800
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, NV  89101
Telephone:  (702) 388-5106
Facsimile:   (702) 388 5103
E-Mail:  mike_charlton@fd.org

Attorney for Petitioner
JULIUS ROBINSON

1

## THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

## FORT WORTH DIVISION

| | | |
|---|---|---|
| JULIUS OMAR ROBINSON, | : | CAUSE NO. 4:00-CR-00260-2 |
|     aka Face, aka Scar, aka Scarface, | : |   (Civil No. 4:05-CV-756-Y) |
|     Defendant/Petitioner, | : | |
| | : | **DEATH PENALTY CASE** |
| vs. | : | |
| | : | **Honorable Terry Means** |
| UNITED STATES OF AMERICA, | : | **United States District Judge** |
| | : | |
|     Plaintiff/Respondent. | : | |

---

### PETITIONER'S MOTION SEEKING PERMISSION
### TO INTERVIEW JURORS

---

Mr. Robinson, a death-sentenced inmate, has filed a motion to vacate his sentence of

death under 28 U.S.C. § 2255; the United States has responded.  Mr. Robinson seeks this Court's

permission to interview the jurors at his trial.  This motion is based upon the record and

pleadings in this case, as well as the attached brief.

Respectfully submitted,


 s/  Michael B. Charlton
Michael B. Charlton, Texas Bar #04144800
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, NV 89101
Telephone:  (702) 388-5106
Facsimile:  (702) 388 5103
E-Mail:  mike_charlton@fd.org
ATTORNEY FOR PETITIONER

2

**CERTIFICATE OF CONFERENCE**

This is to certify that Mr. Robinson's counsel has conferred with opposing counsel, Susan

Cowger of the United States Attorney's Office; she is opposed to the relief sought by this motion.

For the foregoing reasons, Petitioner is entitled to interview all jurors that sat in judgment

on his case.  Alternatively, Petitioner must be granted access to Venireperson Dorothy Debose.

Respectfully submitted,


 s/  Michael B. Charlton
Michael B. Charlton
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, NV 89101
Telephone:  (702) 388-5106
Facsimile:   (702) 388 5103
E-Mail:  mike_charlton@fd.org
State Bar of Texas # 04144800
ATTORNEY FOR PETITIONER

## THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

## FORT WORTH DIVISION

| | | |
|---|---|---|
| **JULIUS OMAR ROBINSON,** | **:** | **CAUSE NO. 4:00-CR-00260-2** |
| **aka Face, aka Scar, aka Scarface,** | **:** | **(Civil No. 4:05-CV-756-Y)** |
| **Defendant/Petitioner,** | **:** | |
| | **:** | **DEATH PENALTY CASE** |
| **vs.** | **:** | |
| | **:** | **Honorable Terry Means** |
| **UNITED STATES OF AMERICA,** | **:** | **United States District Judge** |
| | **:** | |
| **Plaintiff/Respondent.** | **:** | |

---

### BRIEF IN SUPPORT OF PETITIONER'S MOTION
### SEEKING PERMISSION TO INTERVIEW JURORS

---

## I.    PETITIONER MUST BE GRANTED LIMITED ACCESS TO THE JURORS IN ORDER TO VINDICATE HIS SIXTH AMENDMENT RIGHT TO AN IMPARTIAL JURY

Rule 24.1 of the Local Criminal Rules for the Northern District of Texas states, in pertinent part: "[a]n attorney . . . shall not, before or after trial, contact any juror. . . unless explicitly permitted to do so by the presiding judge."  L. Cr. R. 24.1 (N.D. Tex).  Based upon the plain reading of the text, the primary purpose of the rule is to ensure judicial oversight.  *See United States v. Yeatts*, 639 F.2d 1186, 1189 (5th Cir. 1981) ("A basic canon of statutory construction is that words should be interpreted as taking their ordinary and plain meaning.").

4

This interpretation is bolstered by the fact that the rule requires no threshold showing before juror access may be granted. This stands in contrast to similar rules governing access to evidence or witnesses. *See e.g.,* Rule 6(a) of the Rules Governing § 2255 Cases (setting forth a "good cause" standard before discovery may be granted). In mandating judicial notification only, the rule simply provides a mechanism for the Court to control the manner in which juror interviews will be conducted rather than impose any blanket prohibition.

A trial court's decision to deny an attorney's request for post-trial interviews of the jury is reviewed for an abuse of discretion. *United States v. Sotelo*, 97 F.3d 782, 794 (5th Cir. 1996). Ordinarily, a district does not abuse its discretion unless there has been "a showing of illegal or prejudicial intrusion into the jury process." *United States v. Riley*, 544 F.2d 237, 241 (5th Cir. 1976); *accord United States v. Booker*, 334 F.3d 406, 416 (5th Cir. 2003).

Admittedly, Petitioner cannot make the requisite showing at this time. Without any opportunity to communicate with the jurors, it would be impossible for Petitioner to identify, much less prove, that an individual juror was biased or that the deliberations were compromised. Nevertheless, given the importance of the constitutional right at stake, the posture of this case, and the grave sentence that Petitioner faces, this Court should exercise its discretion in granting Petitioner a limited opportunity to interview jurors.

"Our criminal justice system rests firmly on the proposition that before a person's liberty can be deprived, guilt must be found, beyond a reasonable doubt, by an impartial decisionmaker." *Virgil v. Dretke*, 446 F.3d 598, 605 (5th Cir. 2006); U.S. CONST. amend. VI (guaranteeing the right to be tried by an impartial jury). Due to the inherent limitations of criminal proceedings, juror bias is not always exposed during trial. Voir dire, the primary

mechanism for uncovering juror prejudices, is utterly ineffective at exposing dishonesty or deliberate concealment. *McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 554, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984) ("the necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious"); *Williams (Michael) v. Taylor*, 529 U.S. 420, 440-44, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000) (mandating hearing to address deliberate omission by juror). Even when the court succeeds in empaneling a jury free from bias, the impartiality of the jury may later be subverted by unknown forces. *Remmer v. United States*, 350 U.S. 377, 381, 76 S. Ct. 425, 100 L. Ed. 435 (1956) ("the integrity of jury proceedings must not be jeopardized by unauthorized invasions"); *Parker v. Gladden*, 385 U.S. 363, 87 S. Ct. 468, 17 L. Ed. 2d 420 (1966) (comments by bailiff to jury about the defendant being "wicked" and "guilty"); *Sheppard v. Maxwell*, 384 U.S. 333, 362, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966) (holding extensive media coverage deprived defendant of a fair trial "by an impartial jury free from outside influences"). Because jury impartiality is critical to the defendant's ability to receive a fair trial, the defendant must be afforded a meaningful opportunity to explore issues of juror misconduct. *See Irvin v. Dowd*, 366 U.S. 717, 721, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961) (recognizing the right to trial by jury as "the most priceless" among constitutional safeguards); *see also Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999).

The right to investigate juror claims is commensurate with the Supreme Court's recognition of the defendant's right to an evidentiary hearing to address such claims. In cases of juror bias, the Supreme Court has consistently held that "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips*, 455 U.S. 209, 215, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). The High Court has

6

afforded the defendant a similar opportunity to prove allegations that extraneous influences affected the jury. *Tanner v. United States*, 483 U.S. 107, 121, 107 S. Ct. 2739, 97 L. Ed. 2d 90 (1987); *Mattox v. United States*, 146 U.S. 140, 148-49, 13 S. Ct. 50, 36 L. Ed. 917 (1892). These decisions guaranteeing the defendant a right to an evidentiary hearing would be largely hollow if a defendant could be denied any and all avenues for investigating the underlying claim in the first instance.

In addition to contravening well-established Supreme Court precedent, a complete deprivation of the opportunity to investigate juror claims would violate the spirit, if not the letter, of the federal evidentiary rules. *See Carlisle v. United States*, 517 U.S. 416, 426, 116 S. Ct. 1460, 134 L. Ed. 2d 613 (1996) (holding that the district courts may not pass rules that "circumvent or conflict" with the Federal Rules of Criminal Procedure). Rule 606(b), which is entitled, "Inquiry into validity of verdict or indictment," expressly permits inquiry of jurors into "extraneous prejudicial information" or "outside influences" affecting the deliberative process. FED. R. EVID. 606(b). Though circumscribing the type of information that may be elicited from jurors, the rule clearly contemplates questioning of the jurors.

Even if juror access may be withheld in the typical case, the unique circumstances of this case warrant an exception. None of the prior cases dealing with post-verdict juror interviews involve a request by a habeas corpus petitioner. *See Booker*, 334 F.3d at 416 (motion raised at trial and addressed on appeal); *Sotelo*, 97 F.3d at 794 (same); *United States v. Varela-Andujo*, 746 F.2d 1046, 1049 (5th Cir. 1984) (same); *United States v. Davila*, 704 F.2d 749, 753-54 (5th

///

///

Cir. 1983) (same); *Riley*, 544 F.2d at 241 (same).  Not only are there greater rights at stake in habeas corpus proceedings, but any perceived threat to the jury's integrity is substantially diminished at the post-conviction stage.

Unlike an ordinary trial motion, the writ of habeas corpus is explicitly recognized in the Constitution.[1]  U.S. CONST. Art. I, § 9, cl. 2.("[t]he Privilege of the Writ of Habeas Corpus . . . unless when in Cases of Rebellion or Invasion the public Safety may require it").   Dubbed the "Great Writ," this procedural remedy "plays a vital role in protecting constitutional rights." *Hamdi v. Rumsfeld*, 542 U.S. 507, 536, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004); *Slack v. McDaniel*, 529 U.S. 473, 483, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000).  Due to the importance of the habeas corpus right, then, it is incumbent on federal habeas counsel to "conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief."  *McCleskey v. Zant,* 499 U.S. 467, 498, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).  This necessarily entails conducting an appropriate inquiry of the jurors to determine whether a constitutional violation has occurred.

None of the reasons for prohibiting juror interviews are implicated in this case.  The purpose behind the proscription against juror communication is "to avoid harassment of jurors, inhibition of deliberation in the jury room, a deluge of post-verdict applications mostly without real merit, and an increase in opportunities for jury tampering." *United States v. Davila*, 704 F.2d 749, 754 (5th Cir. 1983) (quoting *King v. United States*, 576 F.2d 432, 438 (2d Cir. 1978)).

---

[1]While federal habeas petitions are now brought under the statutory scheme adopted by Congress, the writ has been in no way diluted.  *See* 28 U.S.C. § 2255 (2006);  *Davis v. United States*, 417 U.S. 333, 343, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974) (section 2255 is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus"); *Hill v. United States*, 368 U.S. 424, 427, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962).

Because four years have transpired since the jury concluded its service in Robinson's case, there is no danger that deliberative process will be adversely affected.

Moreover, there was nothing remarkable about Petitioner's trial which would demand heightened protection for the jury at this late stage.  Though there was some media coverage in this case, it hardly qualified as a frenzy.  *Cf. United States v. Brown*, 250 F.3d 907, 918 (5th Cir. 2001) (discussing the need for juror protection in "sensational" cases); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 551, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976).  At no time did the jurors express fear for their safety.  *Cf. United States v. Edwards*, 303 F.3d 606, 613 (5th Cir. 2002). Neither was the district court concerned, as evidenced by the fact that the jury was never sequestered.  *United States v. Phillips*, 664 F.2d 971, 997 (5th Cir. 1981).  Nor was there ever any order that the jurors' names remain anonymous, either before or after trial.  *United States v. Salvatore*, 110 F.3d 1131, 1143-44 (5th Cir. 1997) (upholding anonymous jury in case involving organized crime defendants), *overruled on other grounds*, *Cleveland v. United States*, 531 U.S. 12, 121 S. Ct. 365, 148 L. Ed. 2d 221 (2000).

Any reservations the Court may have about permitting juror interviews can easily be assuaged through the issuance of a limiting order.  *Davila*, 704 F.2d at 754 n. 8 ("a valid argument may be made that any post-trial questioning of jurors . . . should be conducted under the strict supervision and control of the court, with inquiry restricted to those matters found by the court as both relevant and proper.").  For example, the Court may appropriately restrict the scope of the inquiry to matters pertaining to juror bias and extraneous influences on the deliberative process.  *McDonald v. Pless*, 238 U.S. 264, 268, 35 S. Ct. 783, 59 L. Ed. 1300 (1915) (discussing the need to protect the secrecy of the deliberative process).  Alternatively, the

Court may require consent of individual jurors before contact may be initiated. *See*, *e.g.*, *Brown*, 250 F.3d at 921 (upholding order requiring juror consent before release of juror information). In sum, there is a variety of measures the Court can take short of complete denial.

Perhaps the strongest reason for granting juror access is that this case involves a death sentence. The Supreme Court has consistently stressed the need for reliability in capital cases. *Lowenfield v. Phelps*, 484 U.S. 231, 238-239, 108 S. Ct. 546, 98 L. Ed. 2d 568 (1988) (the "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed"). This imperative is no more important than in the context of juror impartiality. As the Supreme Court stressed more than a century ago:

> It is vital in capital cases that the jury should pass upon the case free from external causes tending to disturb the exercise of deliberate and unbiased judgment.

*Mattox*, 146 U.S. at 149.[2]

In conclusion, granting Petitioner limited access to jurors strikes the appropriate balance between the vindication of his constitutional rights and the Court's desire to protect the integrity of the jury process.

///

///

///

///

///

---

[2]Congress has also acknowledged the importance of juror impartiality in capital cases by requiring that the defendant be provided a list of the venire persons three days prior to trial. 18 U.S.C. § 3432 (2006).

**II.   AT A MINIMUM, PETITIONER MUST BE ALLOWED TO INTERVIEW PROSPECTIVE JUROR DEBOSE**

To the extent that Local Criminal Rule 24.1 compels counsel to obtain permission before speaking to persons ultimately struck from the venire,[3] Petitioner must, at a minimum, be allowed to interview Venireperson Dorothy Jean Debose.

Access to Ms. Debose is necessary to resolve a critical factual dispute. In opposing Petitioner's *Batson* claim,[4] the Government provided a declaration from Assistant United States Attorney ("AUSA") Fred Schattman. (See Response of the United States to 28 U.S.C. § 2255 Motion, Exhibit D.) According to AUSA Schattman, he struck Ms. Debose because her husband was allegedly involved in drug trafficking. In contrast to his vague assertions at trial, AUSA Schattman now provides a detailed explanation of his familiarity with the criminal prosecution involving Luster DeBose, whom he claims to have been the husband of Ms. Debose. However, Ms. Debose claimed only that her husband was prosecuted for drug possession. Given the conflict between the two versions, it is important that Petitioner be given an opportunity to probe Ms. Debose further.

This discrepancy is critical because it bears directly on AUSA Schattman's credibility regarding his reasons for striking Ms. Debose. *Hernandez v. New York*, 500 U.S. 352, 367, 111

---

[3]Although Rule 24.1 pertains to "prospective jurors," it is unclear whether a struck venire person retains the status of prospective juror once he or she is excused. L. Cr. R. 24.1 (N.D. Tex). Nevertheless, Petitioner makes the instant request out of an abundance of caution.

[4]Motion to Vacate Conviction and Sentence and for New Trial Pursuant to 28 U.S.C. § 2255 and Rule 33 of the Federal Rules of Criminal Procedure ("2255 Motion"), Claim IIC. (relying on *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986)).

S. Ct. 1859, 114 L. Ed. 2d 395 (1991) ("the credibility of the prosecutor's explanation goes to the heart of the equal protection analysis").  If it is discovered that the AUSA has provided a false post hoc rationalization for the peremptory challenge, this would tend to impugn his denial of racial animus.  *Miller-El v. Dretke,* 545 U.S. 231, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005) (noting that *Batson* is violated when the stated reason is shown to be false in light of the record); *McClain v. Prunty*, 217 F.3d 1209, 1221 (9th Cir. 2000) ("The fact that one or more of a prosecutor's justifications do not hold up under judicial scrutiny militates against the sufficiency of a valid reason.").

Consequently, Petitioner who bears the burden of proof on this issue, must be granted a limited opportunity to investigate the discrepancy by speaking with Venireperson Debose.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court grant a limited opportunity to communicate with the jurors or at least grant access to Venireperson Debose.

Respectfully submitted,


 s/  Michael B. Charlton
Michael B. Charlton
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, NV 89101
Telephone:  (702) 388-5106
Facsimile:   (702) 388 5103
E-Mail:  mike_charlton@fd.org
State Bar of Texas # 04144800
ATTORNEY FOR PETITIONER

12

## <u>CERTIFICATE OF SERVICE</u>

I, Michael Charlton, hereby certify that on November 1, 2006, I electronically filed the

foregoing document with the clerk of the court for the U.S. District Court, Northern District of

Texas, using the electronic case filing system of the court.  The electronic case filing system sent

a "Notice of Electronic filing" to the following attorneys of record who have consented in writing

to accept this Notice as service of this document by electronic means:

SUSAN COWGER
Assistant United States Attorney
U.S. Attorney's Office
1100 Commerce Street, 3rd Fl.
Dallas, Texas  75242

 s/  Michael B. Charlton
MICHAEL B. CHARLTON
Attorney for Petitioner

13