## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

JULIUS OMAR ROBINSON,                §
   aka Face, aka Scar, aka Scarface    §
     Defendant-Petitioner,         §
                        §
                        §
v.                                   §    NO.  4:00-CR-260-Y
                        §        (Civil No. 4:05-CV-756-Y)
                        §    DEATH PENALTY CASE
UNITED STATES OF AMERICA,             §        FILED BY ECF
     Plaintiff-Respondent.          §

## RESPONSE OF THE UNITED STATES TO MOTION
## SEEKING PERMISSION TO INTERVIEW JURORS

The United States of America opposes this motion.  Robinson has not even come close to a showing that would entitle him to interview all the trial jurors or venireperson DeBose, as he has requested.

In this Court, "A party, attorney, or representative of a party or attorney, shall not, before or after trial, contact any juror, prospective juror, or the relatives, friends, or associates of a juror or prospective juror, unless explicitly permitted to do so by the presiding judge."  Northern District of Texas, Local Rule 24.1.  Contrary to Robinson's suggestion, the local rule is not meant only as a means of securing judicial oversight of liberally-allowed juror contact.  Instead, it complements other principles that strongly discourage the kind of contact with jurors that Robinson now seeks.

**Interviews of trial jurors**

The starting point is Rule 606(b) of the Federal Rules of Evidence.  It severely limits juror testimony going to the deliberative process:

> Upon an inquiry into the validity of a verdict . . . , a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict . . . or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.  Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

FED. R. EVID. 606(b).  The rule "bars juror testimony regarding at least four topics: (1) the method or arguments of the jury's deliberations; (2) the effect of any particular thing upon an outcome in the deliberations; (3) the mindset or emotions of any juror during deliberations; and (4) the testifying juror's own mental process during deliberations." *United States v. Ruggiero*, 56 F.3d 647, 652 (5th Cir. 1995).[1]

Federal courts disfavor post-verdict interviewing of jurors except where there is some "colorable" showing of illegal or prejudicial intrusion into the jury process.  *United States v. Jobe*, 101 F.3d 1046, 1058 (5th Cir. 1996).  *See also United States v. Riley*, 544

---

[1]   Despite Robinson's urging to the contrary, Rule 606(b)'s prohibition is not diminished in death penalty cases.  *See, e.g.*, *Dobbs v. Zant*, 963 F.2d 1403, 1411-1412 (11th Cir. 1991) *rev'd on other gr'ds*, 506 U.S. 357 (1993); *Silagy v. Peters*, 905 F.2d 986, 1008-1009 (7th Cir. 1990); *McDowell v. Calderon*, 107 F.3d 1351, 1367-1368 (9th Cir. 1997).  (Note that *McDowell*  has a long subsequent history, including more than one reversal, but all are on other grounds.)  The policy reasons against post-verdict juror interviews are no less compelling in a capital case, nor should there be any lightening of a capital defendant's burden to justify such interviews.

F.2d 237, 242 (5th Cir. 1976) (no allegation of impropriety; no investigation warranted); *United States v. Varela-Andujo*, 746 F.2d 1046, 1049 (5th Cir. 1984) (allegation only of remorse over verdict, not extrinsic influence; no relief warranted); *United States v. Moon*, 718 F.2d 1210, 1234 (2nd Cir. 1983) (hearing granted where specific allegations made and some proof offered; no relief ultimately warranted); *United States v. Smith*, 2000 WL 257459, *3 (E.D. La. 2000) ("The Fifth Circuit has made it clear that interrogations of jurors have not been favored by federal courts except where there is some showing of" impropriety). The courts in this Circuit have repeatedly refused to "denigrate jury trials by afterwards ransacking the jurors in search of some new ground, not previously supported by evidence, for a new trial." *Riley*, 544 F.2d at 242.

There are several strong policy reasons for the prohibition against post-verdict interviews of jurors, and all of them apply with force here: "The jurors themselves ought not be subjected to harassment; the courts ought not be burdened with large numbers of applications mostly without real merit; the chances and temptations for tampering ought not be increased; verdicts ought not be made so uncertain." *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1310 n. 4 (5th Cir. 1977), quoting *United States v. Crosby*, 294 F.2d 928, 950 (2nd Cir. 1961); see also *United States v. McDougal*, 47 F.Supp.2d 1103, 1104 (E.D. Arkansas 1999) ("Permitting the unbridled interviewing of jurors could easily lead to their harassment, to the exploitation of their thought processes in conflict with Rule 606, and to diminished confidence in jury verdicts as well as unbalanced trial results depending unduly on the relative resources of the party").

Furthermore, a defendant must do more than speculate to justify a post-trial hearing involving the trial's jurors; he must show clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred. *United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989). "Mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue" in a collateral challenge. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993), quoting *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989). If a petitioner fails properly to raise a claim, setting forth sufficient factual allegations or proof, a district court's denial of a hearing, and of the petition, are proper. *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980); *Iacovetti v. United States*, 534 F.2d 1189, 1190 (5th Cir. 1976).[2]

Robinson does not speculate that any impropriety occurred with the trial jurors; he admits he cannot even make such an allegation, much less prove it. (Brief at 5.)[3] Instead, he turns the governing law on its head and seeks to interview the jurors – all of them – for the purpose of finding out *ab initio* merely if any such improper contact occurred. String-citing cases that stand for the proposition that improprieties in juror conduct should be fully investigated does not advance his cause, where he knows of no such improprieties. *Cf. Williams v. Taylor*, 529 U.S. 420, 440-44 (2000)(where defense knew, by time of federal habeas proceeding, of juror's omission during voir dire, evidentiary hearing

---

[2] Note that this Court's handling of complaints of outside influence on the jury and its decision to deny post-trial interviews are reviewed for abuse of discretion by the appellate court. *See United States v. Sotelo*, 97 F.3d 782, 794 (5th Cir. 1996).

[3] Indeed, Robinson cites facts that weigh against any notion that his jury was somehow tainted: his trial was unremarkable, there was not much media coverage, the jurors never expressed fear for their safety, and the jury was neither sequestered nor anonymous. (Brief at 9.)

**Government's opposition to defendant's motion seeking permission to interview jurors** – Page 4

should have been allowed to develop claim; noting in passing that only vague allegations had been made in the state habeas proceeding, and thus expressing understanding why the state court did not grant relief).  If Robinson were to be permitted to interview jurors under these circumstances, then every defendant should be afforded the same right.  That is simply not the state of the law.

Robinson also relies in part on the unsupported notion that his case is different from all the cases adverse to him on this subject merely because it is a capital habeas case, and states that none of that case law arose in such circumstances.  In that particular, he is wrong.  This Court itself has denied the kind of fishing expedition Robinson seeks in *United States v. Hall,* 2004 WL 1908242 *28 n.9 (N.D.Tex, 2004), *aff'd* 455 F.3d 508 (5th Cir. 2006).  There, Hall had asked for permission to interview all the trial jurors, although he made allegations about only one or two of them.  The Court's decision to deny that broad relief was affirmed on appeal, because Hall "merely offered speculative and conclusory allegations that 'are insufficient to raise a constitutional issue.'" *Id.* at 522 (citations omitted).

Because Robinson fails to meet his burden of offering factual allegations of some specific impropriety that could have affected the jury's work, he should not be afforded the relief sought.  No further discovery should be permitted.

### Interview of Venireperson DeBose

Robinson seeks to interview Dorothy DeBose, who was rejected from the venire and whose rejection now forms part of the basis for Robinson's claim of improper racial discrimination in jury selection (*Batson* claim).

First, Local Rule 24.1, cited above, does cover contact with rejected venirepersons, such as Ms. DeBose, in that the rule applies both before and after trial. Plainly, there are no "prospective jurors" after trial, but there were prospective jurors at the time of voir dire, and it is rejected venirepersons who make up this class in the post-trial period. Read sensibly, the Rule includes a post-trial proscription against contacting those who once were prospective jurors.

Robinson's reason for wanting to interview Ms. DeBose is to "probe . . . further" into her claim that her husband was prosecuted for drug "possession" rather than "trafficking," as AUSA Fred Schattman characterized it. (Brief at 11.) He claims that the discrepancy bears on AUSA Schattman's credibility. This argument is seriously flawed, both factually and logically.

First, sealed Exhibit K to the government's response to the 28 U.S.C. § 2255 motion establishes that Luster DeBose was convicted of distributing heroin, not merely possessing drugs. Thus, Schattman's recollection was correct and not subject to impeachment on the ground that he was exaggerating the facts in order to strike the juror. This dispenses with Robinson's argument that "if" the prosecutor's stated rationale for the strike was false, then he, Robinson, might win the point.

Second, even if the facts did not establish a trafficking offense, the mere fact that Ms. DeBose's husband was involved with illegal drugs in any way was a good reason for getting her off the jury in a case about drugs.  Possession or trafficking: either way, the prosecutor's reason was utterly race-neutral, and inquiring with Ms. DeBose about the issue would not advance the specious *Batson* claim.

In any event, if the Court deems it proper that Ms. DeBose speak on this subject, she may be subpoenaed to appear at an evidentiary hearing and give her testimony in open court before both parties, with opportunity for cross-examination and examination by the Court.  This was the course the Court followed in the Orlando Hall case, with juror Jacqueline Holmes, and it was entirely appropriate.  There is no justification for an ex parte, pre-hearing interview.

### **Conclusion**

The motion should be denied, and any request for a COA on the matter should likewise be denied.

Respectfully submitted,
RICHARD B. ROPER
United States Attorney

/s/ *Susan Cowger*
SUSAN COWGER
Assistant United States Attorney
Texas State Bar No. 08390150
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone:    214.659.8622
Facsimile:    214.767.2846
E-mail:        susan.cowger@usdoj.gov
Attorneys for Respondent

## CERTIFICATE OF SERVICE

I certify that I filed this response electronically on November 9, 2006 using the

court's electronic case filing (ECF) system.  The ECF system sent a "Notice of Electronic

Filing" to the following attorney of record who has consented in writing to accept this

Notice as service of this document by electronic means:

Michael B. Charlton
Assistant Federal Public Defender
411 E. Bonneville, Suite 250
Las Vegas, Nevada  89101


A copy was sent by mail on November 9, 2006 to:

Sean Kennedy
Federal Public Defender
321 E. 2nd Street
Los Angeles, California, 90012

/s/ *Susan Cowger*
SUSAN COWGER
Assistant United States Attorney