THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

| | | |
|---|---|---|
| **JULIUS OMAR ROBINSON,** | : | **CAUSE NO. 4:00-CR-00260-2** |
| **aka Face, aka Scar, aka Scarface,** | : | **(Civil No. 4:05-CV-756-Y)** |
| **Defendant/Petitioner,** | : | |
| | : | **DEATH PENALTY CASE** |
| **vs.** | : | |
| | : | **Honorable Terry Means** |
| **UNITED STATES OF AMERICA,** | : | **United States District Judge** |
| | : | |
| **Plaintiff/Respondent.** | : | |

_____

**PETITIONER'S MOTION FOR LEAVE TO AMEND
MOTION TO VACATE CONVICTION AND SENTENCE
AND FOR NEW TRIAL PURSUANT TO 28 U.S.C. § 2255
AND RULE 33 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE**

(Filed Electronically Under the Electronic Filing System Requirements)

_____

MICHAEL B. CHARLTON, No. 04144800
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, NV  89101
Telephone:  (702) 388-5106
Facsimile:  (702) 388 5103
E-Mail:  mike_charlton@fd.org

Attorney for Petitioner
JULIUS OMAR ROBINSON

SEAN K. KENNEDY, No. 145632
Federal Public Defender
CRAIG A. HARBAUGH, No. 194309
Deputy Federal Public Defender
Federal Public Defender's Office
321 E. 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-7865
Facsimile:  (213) 894-7566
E-Mail sean_kennedy@fd.org
E-Mail craig_harbaugh@fd.org

Attorney for Petitioner
JULIUS OMAR ROBINSON

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

| | | |
|---|---|---|
| **JULIUS OMAR ROBINSON,** | : | **CAUSE NO. 4:00-CR-00260-2** |
| **aka Face, aka Scar, aka Scarface,** | : | **(Civil No. 4:05-CV-756-Y)** |
| **Defendant/Petitioner,** | : | |
| | : | **DEATH PENALTY CASE** |
| **vs.** | : | |
| | : | **Honorable Terry Means** |
| **UNITED STATES OF AMERICA,** | : | **United States District Judge** |
| | : | |
| **Plaintiff/Respondent.** | : | |

_____

**PETITIONER'S MOTION FOR LEAVE TO AMEND
MOTION TO VACATE CONVICTION AND SENTENCE
AND FOR NEW TRIAL PURSUANT TO 28 U.S.C. § 2255
AND RULE 33 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE**

_____

Mr. Robinson, a death-sentenced inmate, has filed a motion to vacate his sentence

of death under 28 U.S.C. § 2255; the United States has responded.  Mr. Robinson files this

motion for leave to amend the original motion and contemporaneously lodges the amended

1

motion.  This motion is based upon the record and pleadings in this case, as well as the attached

brief.

       Dated:  June 15, 2007                 Respectfully submitted,

                                      s/ Sean K. Kennedy
                                   SEAN K. KENNEDY
                                   Federal Public Defender
                                   CRAIG A. HARBAUGH
                                   Deputy Federal Public Defender
                                   Federal Public Defender's Office
                                   321 E. 2nd Street
                                   Los Angeles, California 90012-4202
                                   Telephone: (213) 894-7865
                                   Facsimile:  (213) 894-7566
                                   E-Mail sean_kennedy@fd.org
                                   E-Mail craig_harbaugh@fd.org

                                   ATTORNEY FOR PETITIONER
                                   JULIUS OMAR ROBINSON

2

## CERTIFICATE OF CONFERENCE

This is to certify that Mr. Robinson's counsel has conferred with opposing counsel,

Susan Cowger of the United States Attorney's Office; she is opposed to the relief sought by this

motion.  For the following reasons, Petitioner is entitled to amend the original motion.

Dated:  June 15, 2007                    Respectfully submitted,


                                          s/ Sean K. Kennedy
                                         SEAN K. KENNEDY
                                         Federal Public Defender
                                         CRAIG A. HARBAUGH
                                         Deputy Federal Public Defender
                                         Federal Public Defender's Office
                                         321 E. 2nd Street
                                         Los Angeles, California 90012-4202
                                         Telephone: (213) 894-7865
                                         Facsimile:  (213) 894-7566
                                         E-Mail sean_kennedy@fd.org
                                         E-Mail craig_harbaugh@fd.org

                                         ATTORNEY FOR PETITIONER
                                         JULIUS OMAR ROBINSON

**CERTIFICATE OF SERVICE**

I, Jesse Wallis, hereby certify that on June 15, 2007, I electronically filed the foregoing

document with the clerk of the court for the U.S. District Court, Northern District of Texas, using

the electronic case filing system of the court.  The electronic case filing system sent a "Notice of

Electronic filing" to the following attorneys of record who have consented in writing to accept

this Notice as service of this document by electronic means:

SUSAN COWGER
Assistant United States Attorney
U.S. Attorney's Office
1100 Commerce Street, 3rd Fl.
Dallas, Texas  75242


 s/ Jesse Wallis
JESSE WALLIS

4

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

| | | |
|---|---|---|
| **JULIUS OMAR ROBINSON,** | : | **CAUSE NO. 4:00-CR-00260-2** |
| **aka Face, aka Scar, aka Scarface,** | : | **(Civil No. 4:05-CV-756-Y)** |
| **Defendant/Petitioner,** | : | |
| | : | <u>**DEATH PENALTY CASE**</u> |
| **vs.** | : | |
| | : | **Honorable Terry Means** |
| **UNITED STATES OF AMERICA,** | : | **United States District Judge** |
| | : | |
| **Plaintiff/Respondent.** | : | |

---

**BRIEF IN SUPPORT OF PETITIONER'S MOTION FOR LEAVE TO AMEND
MOTION TO VACATE CONVICTION AND SENTENCE
AND FOR NEW TRIAL PURSUANT TO 28 U.S.C. § 2255
AND RULE 33 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE**

---

<u>**PROCEDURAL HISTORY**</u>

On November 29, 2004, the one-year statute of limitations period to file Mr. Robinson's habeas petition began to run. One month later, Robinson's trial and appellate counsel, Wessley Ball and Jack Strickland, requested to withdraw from post-conviction proceedings. On January 10, 2005, the court granted the motion and substituted Mike Charlton and Gary Taylor as habeas counsel.

Although Mr. Ball agreed to turn over his trial files, Mr. Strickland refused. Even after the Court authorized the issuance of a subpoena for the records, Mr. Strickland refused for another month. The matter was not resolved until March 11, 2005.

On July 14, 2007, Mr. Taylor sought to withdraw as habeas counsel.  On July 20, 2007, the request was granted and the Federal Public Defender Office in the Central District of California was appointed.  At that point, habeas counsel had just four months to investigate the case, obtain all documentary evidence, and prepare the habeas petition before the limitations period would expire.  On November , 2005, Mr. Robinson's filed a timely petition with more than 43 exhibits attached.

In his amended petition, lodged contemporaneously herewith, Mr. Robinson seeks to add eleven additional documentary exhibits and raise one additional claim based upon an intervening change in Supreme Court precedent.[1]

### AMENDMENT STANDARD

A petition for writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."  28 U.S.C. § 2242.  Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires."  FED. R. CIV. P. 15(a).  The Fifth Circuit has repeatedly recognized that Rule 15(a) "evinces a bias in favor of granting leave to amend." *Carroll v. Fort James Corp*, 470 F.3d 1171, 1175 (5th Cir. 2006);  *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997) ("Rule 15(a) expresses a strong presumption in favor of liberal pleading"); *Nance v. Gulf Oil Corp.*, 817 F.2d 1176, 1180 (5th Cir. 1987) ("Federal Rule 15(a) counsels a liberal amendment policy").

---

[1]The amended petition also includes stylistic and structural changes.

While the decision whether to grant leave to amend technically falls within the discretion of the court, the concept is "misleading" in that Rule 15(a) "severely restricts the judge's freedom." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597-98 (5th Cir. 1981). Unless there is a "substantial reason" justifying denial, a motion for leave to file amended pleadings must be granted. *Jacobsen v. Osborn,* 133 F.3d 315, 318 (5th Cir. 1998). Five considerations may qualify as a substantial reason: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party, and (5) futility of the amendment. *United States v. Zosimo Reyes Saenz*, 282 F.3d 354, 355-56 (5th Cir. 2002) (citing *Union Planters Nat'l Leasing, Inc. v. Woods*, 687 F.2d 117, 121 (5th Cir. 1982). "Absent any of these factors, the leave sought should be freely given." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (internal citation omitted); *Engstrom v. First Nat'l Bank*, 47 F.3d 1459, 1464 (5th Cir. 1995); *see also Lowrey,* 117 F.3d at 246 ("[T]he touchstone of the inquiry under rule 15(a) is whether the proposed amendment would unfairly prejudice the defense by denying the defendants notice of the nature of the complaint."). When in doubt, the district court "should err on the side of allowing amendment." *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982).

## ARGUMENT

**I.    DUE TO THE LACK OF ANY SUBSTANTIAL REASON, MR. ROBINSON MUST BE GRANTED LEAVE TO AMEND HIS ORIGINAL MOTION TO ADD FACTUAL ASSERTIONS THAT CLARIFY EXISTING CLAIMS**

In this case, none of the five factors pose a substantial reason for denying amendment. Accordingly, Mr. Robinson's motion for leave to amend his original post-conviction motion should be granted in its entirety.

### A.    Amendment Would Not Result in Undue Delay

Undue delay concerns the delay of the proceedings rather than delay in the amendment. Here, no undue delay would result from allowing the instant amendment. At most, the proceedings would be delayed thirty days to allow the Government to file its response to the petition.

Due to circumstances beyond Robinson's control, Robinson was severely hampered in his ability to file a comprehensive motion before the statute of limitations period expired. 28 U.S.C. § 2244(d) (2007) (imposing a one year statute of limitations from the date the conviction became final on direct review). First, Robinson's trial counsel waited a month after the period began to run to withdraw as habeas counsel and were replaced a month later. Second, associate counsel refused to turn over his files and even ignored a subpoena before delaying the matter for another two months. Third, Robinson's second habeas attorney, Gary Taylor, withdrew from the case early in the process. In reality, Robinson's current habeas counsel had just four months to file retrieve prior counsel's files, review the record, conduct an investigation, and draft and file the motion. Although Robinson included a wealth of documents to support his original petition - 43

4

exhibits totaling 634 pages - it would not have been possible to address every factual issue. Nevertheless, Robinson diligently pursued all outstanding issues and submitted the motion at the earliest opportunity.  Clearly, Mr. Robinson pursued the instant amendment in a reasonable and timely manner.

### B.    Absence of Bad Faith or Dilatory Motive

There is no bad faith or dilatory motive.  Mr. Robinson seeks the amendment to add substantive factual and legal support for his original motion.  All supporting documentation were obtained within the past six months.  Technically, it would have been possible for Mr. Robinson to file an amended petition as each new document was obtained.  However, better practice cautioned in favor of filing a single amendment rather than making a piecemeal presentation. Within three days of receiving the jail visitation logs from the Bureau of Prisons, Mr. Robinson submitted the instant motion.

### C.    Mr. Robinson Has Not Failing to Cure Defects Through Previous Amendments

This is the only amendment that Mr. Robinson has sought in this case.  Where, as here, the moving party seeks an initial amendment, the policy in favor of granting amendment is "strongest."  *Thompson v. New York Life Ins. Co.,* 644 F.2d 439, 444 (5th Cir. 1981).

### D.    The Government Will Not Suffer Undue Prejudice

The nonmoving party does not incur undue prejudice unless the amendment requires the parties to reopen discovery or alter their trial strategies.  *Little v. Liquid Air Corp.*, 952 F.2d 841, 845-46 (5th Cir. 1992), aff'd, 37 F.3d 1069 (1994) (en banc); *Dussouy*, 660 F.2d at 599 ("Of course, should the new theory necessitate reiteration of discovery proceedings, Gulf Coast would

be prejudiced."). Although the Court has addressed a few discovery matters, the parties have not pursued full-blown discovery. Accordingly, because the discovery period has not ended (much less begun), the Government cannot allege any harm from the amendment. Moreover, the evidentiary hearing in this case has not been set. Any impact that the instant amendment may have on the Government's strategy can be easily resolved in advance of the hearing, if not, immediately upon the filing of its responsive pleading to the Amended Motion.

### E.      <u>Amendment Would Not Be Futile</u>

Generally, amendment is futile only if the claims proffered are clearly frivolous or legally insufficient on their face. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) ("[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits") (emphasis added). Amendment can also be considered futile if the revised petition is untimely and does not relate back to the original petition. *See Jacobsen*, 133 F.3d at 319.

In *Mayle v. Felix*, 545 U.S. 644, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005), the United States Supreme Court analyzed the relationship between relation-back doctrine and the one-year statute of limitation. Rule 15(c)(2) states that an amended pleading relates back to the date of an earlier timely pleading if the amended and earlier pleading arises out of the same "conduct, transaction, or occurrence." Otherwise untimely new claims added to a petition by means of amendment will "relate back" to the timely original filing and accordingly be deemed timely themselves "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts." *Mayle*, 545 U.S. at 659. On the other hand, relation-back does

6

not apply where the amended petition asserts a new claim supported by facts that differ in "both time and type" from the original. *Id.*

Providing substance to its interpretation of Rule 15(c)(2), the Court in *Mayle* cited two lower court habeas corpus decisions as exemplifying the type of situation in which "relation back will be in order." For example, the Supreme Court endorsed the Eighth Circuit's decision in *Mandacina v. United States*, 328 F.3d 995, 1000-01 (8th Cir. 2003), which applied the relation back doctrine to an amended petition alleging the prosecution's failure to disclose a particular report because the the original petition alleged *Brady*[2] violations. *Mayle*, 545 U.S. at 2575 n.7. Similarly, the Supreme Court approved the use of the relation back in *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001), because "the original petition challenged the trial court's admission of recanted statements, while the amended petition challenged the court's refusal to allow the defendant to show that the statements had been recanted." *Mayle*, 545 U.S. at 2575 n.7.

In this case, amendment would not be futile because relation back is appropriate. Petitioner seeks to add documentary evidence and corresponding argument for the following exhibits:

72.	Declaration of Dr. Malcolm Klein, dated May 18, 2007

73.	Declaration of Margaret O'Donnell, dated June 15, 2007

74.	Declaration of Richard Smart, dated September 27, 2006

75.	Declaration of Russell Stetler, dated May 21, 2007

76.	Declaration of Mandy Welch, dated June 11, 2007

---

[2]*Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

77.    Report by Kate Allen, dated March 14, 2007

78.    Arlington Police Department reports re: Sarah Tucker incident (certified copies)

79.    Tarrant County Court records re: Sarah Tucker incident, State of Texas v. Julius

O. Robinson, Case No. 0574361D (certified copies)

80.    Bureau of Prisons Jail Logs re: Attorney Visits with Julius Robinson

81.    Invoice of Vince Gonzales dated December 8, 2000 submitted to Jack Strickland

in State of Texas v. Carlis Jovonite Russell, Case No. 0676421A

82.    Memo to file prepared by Wes Ball re: visit with Julius Robinson, dated

December 4, 2001

As set forth below, the additional documentary support merely provide factual support

that clarify or amplify existing claims.   Consequently, because all supplemental factual

assertions relate to a common core of operative facts set forth in the original pleadings, the

relation-back doctrine applies.

### 1.    Dr. Klein's Declaration Further Shows How Trial Counsel Failed to Challenge Any of the Aggravating Evidence, Including the Assertion that Robinson Was a Member of a Notorious Street Gang

As set forth generally in the original motion and in the reply brief, trial counsel failed to

investigate *any* of the aggravating evidence presented by the prosecution.  This included the

failure to address the prosecution's assertion that Robinson was a member of the "Crips" gang.

(20 RT 47-48.)  In support of this contention, Robinson provided factual accounts confirming

that the alleged gang was little more than a band of truants.  (Ex. 59, Decl. of Jerry Melton, at ¶ 4

(police explaining that "I looked at them as kids trying to imitate what they saw on television.

They were little wannabes.").)  Dr. Klein, a sociologist specializing in gang research, analyzes

the Dermott "Crips" based upon nationally recognized criteria and reached as a similar

conclusion.  In his expert opinion, "the Dermott Crip gang during Mr. Robinson's youth did not

qualify as a Traditional gang."  (Ex. 72, Decl. of Malcolm Klein, at ¶ 7.)  Consequently, because

Dr. Klein's opinion relates to the same core of operative facts, namely that trial counsel failed to

investigate the gang allegation, amendment is proper.

### 2. Margaret O'Donnell's Declaration Provides Additional Statistical Information Supporting the Original Claim that the Charging Decision Was Racially Motivated

Under Ground Three of the original motion, Robinson provided statistical data which

raises an inference of racial discrimination.  Ms. O'Donnell's declaration merely provides the

racial breakdown of cases addressed by the Department of Justice during the death penalty

authorization process.  Accordingly, because her declaration provides additional statistical

support for the original contention that the death penalty charging decision was racially

motivated, the relation back doctrine applies.

### 3. Richard Smart's Account of the Tucker Shooting Incident and the Police Reports Simply Provide Additional Support for the Original Allegations that Trial Counsel Failed to Investigate the Prosecution's Case in Aggravation

Under Ground One of the original motion, Mr. Robinson alleges that his trial counsel

provided "ineffective assistance of counsel for failure to investigate aggravating evidence."

(Original Motion, at pp. 16-24.)  As one example, Mr. Robinson cites trial counsel's failure to

investigate the "hit" Mr. Robinson allegedly orchestrated against "One Love" William, a

prosecution witness.  In the reply brief, Mr. Robinson points out two additional failings,

including the failure to investigate the gang allegation and the failure to investigate Mr. Robinson's prior conviction for shooting Sara Tucker's truck.  (Reply Brief, at pp. 19-23.)

Richard Smart's declaration merely adds corroboration to the contention that Mr. Robinson was unaware that Ms. Tucker was hiding inside the truck when the shots were fired. As set forth in his declaration, Mr. Smart was driving the truck the evening Mr. Robinson tried to collect a debt from Ms. Tucker.  The pair was unsuccessful in finding Ms. Tucker and Mr. Robinson fired in exasperation into what he believed to be her abandoned truck.  As Mr. Smart confirms, "[they] did not see anyone inside it.  [They] both believed the truck was empty." (Ex. 74, Decl. of Richard Smart.)  The police reports, which contain Ms. Tucker's original statement to the police, corroborate Mr. Smart's account.  (Ex. 78, Arlington Police Department reports re: Sarah Tucker incident (certified copies).)  The court records also support the notion that Robinson was not aware of Tucker's presence, given that he was never tried for attempted murder and the court imposed a deferred adjudication with no jail time whatsoever.  (Ex. 79, Tarrant County Court records re: Sarah Tucker incident, *State of Texas v. Julius O. Robinson*, Case No. 0574361D (certified copies).)  Consequently, because these documents only amplify the original allegations that trial counsel failed to investigate any of the prosecution's aggravating evidence, including the Tucker incident, the information necessarily relates back.

> **4.      Russell Stetler's Declaration Discussing the Role and Importance of Mitigation Specialists and the Mitigation Investigation During a Capital Trial**

In his declaration, Mr. Stetler merely expounds upon the discussion regarding mitigation specialists and investigations set forth in the original motion.  In painstaking detail, the original petition discusses the professional obligation (and ultimate failure) of trial counsel to retain a

mitigation specialist as part of the standard of care required in a capital case. (Original Motion, at pp. 3-4, 6, 10-11.) Relying extensively on the American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Capital Cases, the original motion also discusses the value of the mitigation specialist on the defense team. (*See* Original Motion, at p. 6). In addition, the original motion discusses the obligation of defense counsel to conduct an broad and thorough mitigation investigation. (Original Motion, at pp. 3, 5-7.)

Drawing upon his extensive experience in capital cases serving as a mitigation specialist, Mr. Stetler describes in greater detail the unique purpose of the mitigation specialist, the various functions they perform, and the professional responsibility of trial counsel to employ a mitigation specialist in a capital case. In addition, Mr. Stetler gives substance to the requirement of a complete and thorough mitigation investigation by elucidating the type of tasks that must be completed and the manner in which they should be carried out. For example, Mr. Stetler explains the cyclical nature of the social history interviewing process as well as the pitfalls of conducting an investigation over the telephone. (Ex. 75, Decl. of Russell Stetler, at ¶ 14.)

In sum, Mr. Stetler merely supports the original contention that trial counsel were ineffective for refusing to retain a mitigation specialist. Consequently, his declaration necessarily relates back.

> **5.     Mandy Welch Supplements the Original Motion Alleging Deficient Performance By Trial Counsel By Offering Possible Explanation for Trial Counsel's Omission**

Whereas the original motion explains in significant detail *what* trial counsel failed to do regarding the mitigation investigation, Ms. Welch's declaration explains *why* trial counsel may have been derelict. The original motion alleges trial counsel's failure to conduct a complete and

thorough mitigation investigation as well as the information that could have been uncovered but for trial counsel's deficiency. (Original Motion, at pp. 28-51). Ms. Welch, a seasoned capital habeas practitioner in Texas, offers her insight into one possible reason for such a glaring dereliction. (Ex. 76, Decl. of Mandy Welch.) Ms. Welch explains how, despite the existing standard of care requiring a thorough mitigation investigation, many capital habeas practitioners often continued to shirk their responsibility in this area. (*Id.*) In recounting the history of the previous Texas capital sentencing procedure, Ms. Welch describes the general malaise of trial counsel in failing to pursue critical mitigation evidence, long after the state death penalty statute had been revised. Instead of offering an excuse, Ms. Welch offers one possible reason "why otherwise competent attorneys may have failed to satisfy such a fundamental obligation in a capital prosecution." (Ex. 76, Decl. of Mandy Welch, at ¶ 7.)

Because Ms. Welch merely provides a possible explanation for deficiencies previously alleged in the original petition, her declaration is proper under the relation-back doctrine.

### 6.    Dr. Allen's Report Discussing the Impact of Alcohol Related Neurodevelopmental Disorder and Attachment Disorder

Dr. Kate Allen, is a licensed clinical social worker, who specializes in alcohol related neurodevelopmental disorder (ARND) and attachment disorder. Her report discusses the teratogenic effects of alcohol, nicotine, and marijuana on Mr. Robinson while in the womb. In addition, Dr. Allen explains the long-term impact of the neuropsychological deficits resulting from this exposure in *utero*. Her report also contains an explanation of this fetal injury made Mr. Robinson more to susceptible to other psychological and behavioral problems, including attachment disorder.

12

Dr. Allen's report merely amplifies the factual assertions made in the original Claim One. Documentary support attached to and referenced throughout the original motion chronicles the pervasive drug and alcohol abuse by Mr. Robinson's mother during her pregnancy with Julius. (Original Motion, at pp. 40-41; Ex. 29, Decl. of Jimmie Lee Robinson, at ¶ 17.)  In addition, birth records, as well as expert analysis verify the physical and psychological impact of these severe fetal injuries. (Original Post-Conviction Motion, at pp. 58-59 (discussing the implications of prenatal drug and alcohol exposure); Ex. 1, Decl. of Dr. Cunningham, at pp. 11-12.) Specifically, Dr. Cunnigham discusses the neuropsychological deficits Mr. Robinson would have likely suffered including  learning disabilities, attention-related problems, and impairment of executive functioning.  (Ex. 1, Decl. of Mark Cunningham, at p. 18.).  Whereas Dr. Cunningham could only offer this information on a theoretical basis, Dr. Allen is able to provide a specific opinion directly tied to Mr. Robinson because she was able to conduct an in-depth interview of Mr. Robinson, as well as complete an independent review of the social history records.  Because Dr. Allen merely elucidates the factual assertions made under Ground One, amendment with her report would not be futile.

### 7.    The Jail Visitation Logs Support Robinson's Original Argument that Trial Counsel Failed to Adequately Interview Their Client

As with the other amendment material, the jail logs merely support Robinson's contention that trial counsel provided deficient performance.  Under Ground One of the original motion, Robinson contends that his attorneys failed to conduct an adequate investigation. Repeated interviews with the client is the necessary starting point.  Because the records demonstrate that trial counsel met with the client only two times before trial (the investigator

13

only once), this information clarifies Robinson's claim that trial counsel was deficient.

Accordingly, the information relates back.

> **8.      The Invoice Verifying Mr. Strickland Previously Hired a Mitigation Specialist in a Different Capital Case Relates to Robinson's Claim that Trial Counsel Was Deficient For Refusing to Hire One in His Case**

In setting forth a number of deficiencies of counsel, Robinson faults the trial attorneys for failing to hire a mitigation specialist.  (Original Motion, at pp. 27-28.)  In response, trial counsel, particularly Mr. Strickland, disparage mitigation specialists generally.  This invoice not only impugns Mr. Strickland's argument but underscores the claim that hiring a mitigation specialist in a capital case was part of the standard of practice at the time of Robinson's trial.  Accordingly, this invoice relates back to the original motion.

> **9.      Mr. Ball's File Memorandum Acknowledging That He Only Pursued Robinson's Good Behavior Evidence After He Was Approached By a Jail Guard Underscores Robinson's Contention that Trial Counsel Failed to Conduct An Adequate Mitigation Investigation**.

Under Ground One of the Original Motion, Robinson alleges that trial counsel failed to conduct a thorough investigation into his life history and background.  In this memorandum, Mr. Ball acknowledges that the decision to investigate Robinson's good behavior while in prison was precipitated by a chance encounter by one of the correctional officers guarding Robinson.  But for that fortuitous meeting, it is unlikely Mr. Ball would have ever pursued this matter.  This is yet another example of the lackadaisical and haphazard approach taken by trial counsel in approaching Mr. Robinson's mitigation case.  Consequently, because this specific conduct is

connect to the deficient performance prong of Ground One, this information relates back to the original motion.

**II.    ALTHOUGH GROUND SEVEN TECHNICALLY DOES NOT RELATE BACK TO THE ORIGINAL MOTION, AMENDMENT OF THIS CLAIM SHOULD BE PERMITTED BECAUSE IT IS BASED UPON RECENT SUPREME COURT PRECEDENT**

At both trial and on appeal, Robinson alleged that the failure to submit the capital charge to the grand jury violated the Indictment Clause of the Fifth Amendment. Even though the Fifth Circuit found the omission rose to constitutional error, the Court held the error was susceptible to harmless error review. *United States v. Robinson*, 367 F.3d 278 (5th Cir. 2004). Supreme Court precedent issued after the original habeas motion was filed cast serious doubt on the viability of the Fifth Circuit's decision.

In *United States v. Gonzalez-Lopez*, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006), the Supreme Court concluded that the erroneous deprivation of the defendant's counsel of choice constituted structural error. For the first time, *Gonzalez-Lopez* delineated two additional categories where structural error may be found: (1) "the difficulty of assessing the effect of the error" and (2) the "irrelevance of harmlessness" 126 S. Ct. at 2564 & n.4. Applying the rationale of *Gonzalez-Lopez*, it is clear that the failure to present the capital charge, including the aggravating circumstances to the jury, amounted to structural error. First, it is difficult - if not impossible - to assess the effect of failing to present the capital charge to the grand jury. Even assuming the grand jury would have found probable cause to support the aggravating

15

circumstances, there is no way of knowing whether the grand jury would have forwarded the capital charge for prosecution.  Second, speculation as to what a hypothetical grand jury might have done is irrelevant.  Because the grand jury did not sanction a capital charge against Robinson, a capital prosecution could not proceed.

The Supreme Court's more recent decision in *Resendiz-Ponce* provides further support that the omission of the aggravating circumstance is structural error.  *United States v. Resendiz-Ponce*, 127 S. Ct. 782, 787-88, 166 L. Ed. 2d 591 (2007).  There, the Supreme Court granted certiorari to consider whether the failure to allege an overt act in an indictment charging attempted illegal reentry was subject to harmless error analysis or constituted structural error.  Later, the high court sought supplemental pleading on whether this omission even rose to the level of constitutional error.  In the end, Supreme Court never broached the issue of the appropriate treatment of the error.  Reasoning that the word "attempt" carries with it an implied allegation of an overt act in furtherance of the charged attempt, the Court concluded that the indictments were proper and did not violate the Indictment Clause.  Writing in dissent, Justice Scalia addressed the certified question directly.  *Resendiz-Ponce*, 127 S. Ct. at 793.  In his view, the omission was not only error, but structural error.  *Id*.  If structural error arises where the jury has not been provided with an element of the offense, it follows *a fortiori* that structural error results when the defendant is deprived of an opportunity for the grand jury to consider the capital charge in the first instance.

Although Robinson did not raise the indictment claim in his original motion, relation-back should nevertheless be applied.  The rationale for the relation back doctrine is to avoid prejudice to the non-moving party by providing notice for the claim at the earliest opportunity.

16

Here, the Government has had ample notice of the claim since Robinson's trial. Regardless, Robinson had no way of raising this claim earlier. Until the Supreme Court issued its more recent pronouncements on structural error, there was no basis to set aside the Fifth Circuit's decision. To avoid piecemeal litigation and ensure prompt resolution of this case, Robinson should be entitled to amend this claim into his original motion.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court grant Petitioner's motion for leave to amend his original petition.

Dated:  June 15, 2007                    Respectfully submitted,


 s/ Sean K. Kennedy
SEAN K. KENNEDY
Federal Public Defender
CRAIG A. HARBAUGH
Deputy Federal Public Defender
Federal Public Defender's Office
321 E. 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-7865
Facsimile:  (213) 894-7566
E-Mail sean_kennedy@fd.org
E-Mail craig_harbaugh@fd.org

ATTORNEY FOR PETITIONER
JULIUS OMAR ROBINSON

17

## <u>CERTIFICATE OF SERVICE</u>

I, Jesse Wallis, hereby certify that on June 15, 2007, I electronically filed the foregoing

document with the clerk of the court for the U.S. District Court, Northern District of Texas, using

the electronic case filing system of the court.  The electronic case filing system sent a "Notice of

Electronic filing" to the following attorneys of record who have consented in writing to accept

this Notice as service of this document by electronic means:

SUSAN COWGER
Assistant United States Attorney
U.S. Attorney's Office
1100 Commerce Street, 3rd Fl.
Dallas, Texas  75242


 s/  Jesse Wallis
JESSE WALLIS