# THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF TEXAS

# FORT WORTH DIVISION

| | | |
|---|---|---|
| **JULIUS OMAR ROBINSON,** | **:** | **CAUSE NO. 4:00-CR-00260-2** |
| **aka Face, aka Scar, aka Scarface,** | **:** | **(Civil No. 4:05-CV-756-Y)** |
| **Defendant/Petitioner,** | **:** | |
| | **:** | **DEATH PENALTY CASE** |
| **vs.** | **:** | |
| | **:** | **Honorable Terry Means** |
| **UNITED STATES OF AMERICA,** | **:** | **United States District Judge** |
| | **:** | |
| **Plaintiff/Respondent.** | **:** | |

_____

## EXHIBIT NO. 73

## SUBMITTED IN SUPPORT OF IN SUPPORT OF DEFENDANT'S AMENDED MOTION TO VACATE CONVICTION AND SENTENCE AND FOR NEW TRIAL PURSUANT TO 28 U.S.C. § 2255

(Filed Electronically Under the Electronic Filing System Requirements)

_____

## DECLARATION OF MARGARET O'DONNELL

Margaret O' Donnell hereby declares under penalty of perjury, 28 U.S.C. § 1746, that the following is true and correct:

1. I serve as Federal Death Penalty Resource Counsel. This Project assists court-appointed and defender attorneys charged with the defense of capital cases in the federal courts. I have assisted formally with the Project since 2003 and have served as Resource Counsel since October 2006. The Project is funded and administered under the Criminal Justice Act by the Defender Services Division of the Administrative Office of the United States Courts.

2. The Federal Death Penalty Resource Counsel Project's responsibilities include the monitoring of all federal capital prosecutions throughout the Unites States in order to assist in the delivery of adequate defense services to indigent capital defendants in such cases.[1] In the course of our duties, the Project collects information regarding all federal death penalty prosecutions pursuant to 21 U.S.C. § 848(e) *et seq.* and 18 U.S.C. §3591, *et seq.*

3. I have been asked by counsel for Julius Robinson to provide information regarding data the Project has collected. I am prepared to testify as a witness as well. The areas about which I was asked to provide data concern the race of defendants and victims in federal capital cases reviewed during the tenure of former United States Attorney General John Ashcroft.

---

[1]The work of the Federal Death Penalty Resource Counsel Project is described in the report prepared by the Subcommittee of the Federal Death Penalty Cases, Committee on Defender Services, Judicial Conference of the United States, FEDERAL DEATH PENALTY CASES: RECOMMENDATIONS CONCERNING THE COST AND QUALITY OF DEFENSE REPRESENTATION (May, 1998), at 28-30. www.uscourts.gov/dpenalty/1COVER.htm. The Subcommittee report "urges the judiciary and counsel to maximize the benefits of the Federal Death Penalty Resource Counsel Project . . ., which has become essential to the delivery of high quality, cost-effective representation in death penalty cases . . . ." *Id.* at 50.

Page 1 of 3

Exhibit 73 - 000001

4. The Project has gathered data about the race of defendants and victims in all cases reviewed during former Attorney General Ashcroft's tenure, from February 2001 to February 2005. During this period, the United States Department of Justice reviewed 626 "death-eligible" cases (i.e., charges included one or more offenses with death as a potential penalty). Of those 626 cases reviewed during former Attorney General Ashcroft's tenure, 113 cases involved White defendants, 192 cases involved Hispanic defendants, 275 cases involved Black defendants and 46 cases involved defendants from other minorities, consisting of Native Americans, Pacific Islanders, and Asians. Of the 626 cases reviewed 44% of the defendants were Black, while only 18% were White.

5. Of the 626 cases reviewed, former Attorney General Ashcroft authorized 144 cases for capital prosecution. Of those 144 cases authorized, 34 cases involved White defendants, 26 cases involved Hispanic defendants and 74 cases involved Black defendants, with the remaining 5 defendants belonging to other minority groups.

6. Of the 626 cases reviewed, White defendants were alleged to have committed 12 murders against non-White victims, Black defendants were alleged to have committed 51 murders against White victims, and Hispanic defendants were alleged to have committed 8 murders against White victims. Among the 144 cases authorized for capital prosecutions, 4 White defendants killed non-White victims, 22 Black defendants killed White victims, and 1 Hispanic defendant killed a White victim. Only 12% of the 626 cases reviewed involved a White defendant alleged to have killed a non-White victim. In contrast, 19% of the 626 cases reviewed involved a Black defendant alleged to have killed a White victim. While the authorization rate for White defendants charged with killing non-White victims remained constant (between potential and authorized cases) at 12%, the authorization rate rose to 30% for Black defendants charged with killing non-Whites.

Page 2 of 3

Exhibit 73 - 000002

7.  Of the 12 White defendants alleged to have killed non-White victims and who were considered for capital prosecution by former Attorney General Ashcroft, only 4 or 33% were authorized for the death penalty.  On the other hand, of the 51 Black defendants alleged to have killed White victims and who were considered for capital prosecution by former Attorney General Ashcroft, 22 or 43%  were authorized for the death penalty.

8.  This information was compiled in the ordinary course of business of the Federal Death Penalty Resource Counsel Project and is accurate to the best of my knowledge.

I declare, under penalty of perjury, that the foregoing is true and correct.  Executed on June 15, 2007.

MARGARET O'DONNELL

Page 3 of 3

Exhibit 73 - 000003