# THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF TEXAS

# FORT WORTH DIVISION

| | | |
|---|---|---|
| **JULIUS OMAR ROBINSON,** | **:** | **CAUSE NO. 4:00-CR-00260-2** |
| **aka Face, aka Scar, aka Scarface,** | **:** | **(Civil No. 4:05-CV-756-Y)** |
| **Defendant/Petitioner,** | **:** | |
| | **:** | **DEATH PENALTY CASE** |
| **vs.** | **:** | |
| | **:** | **Honorable Terry Means** |
| **UNITED STATES OF AMERICA,** | **:** | **United States District Judge** |
| | **:** | |
| **Plaintiff/Respondent.** | **:** | |

---

## EXHIBIT NO. 76

**SUBMITTED IN SUPPORT OF IN SUPPORT OF DEFENDANT'S AMENDED MOTION TO VACATE CONVICTION AND SENTENCE AND FOR NEW TRIAL PURSUANT TO 28 U.S.C. § 2255**

(Filed Electronically Under the Electronic Filing System Requirements)

---

DECLARATION

I, Mandy Welch, under penalty of perjury, declare the following to be true:

1. I am an attorney, licensed to practice law in the State of Texas. For over 20 years, I have represented death sentenced prisoners in habeas corpus proceedings. From 1991 to 1995, I was the Litigation Director and Executive Director of the Texas Resource Center, one of 18 federally funded, non-profit defender organizations that provided training, consultation and assistance for attorneys representing death sentenced prisoners in habeas corpus proceedings. When federal funding for the Texas Resource Center was withdrawn in 1995, I founded and served as the director of the Texas Defender Service, a non-profit law firm that was formed in 1995 to provide training and consultation as well as representation in capital cases. I served as appointed counsel in one federal capital prosecution for Timothy James McVeigh. *United States v. McVeigh*, 153 F.3d 1166 (10th Cir. 1998).

2. I provide this affidavit at the request of Mr. Craig Harbaugh, attorney for Julius Robinson in Case # 2001 4:00-CR-260-Y (Civil No. 4:05-CV-756). I have been asked to offer my opinion on the following question: What impact did the prior Texas capital sentencing scheme, which precluded consideration of broad categories of mitigating evidence, have on the decision of some criminal defense attorneys to conduct a proper mitigation investigation in death penalty cases?

3. Before addressing the specific issue, I feel it is important to articulate my view regarding the standard of care for defense counsel in all capital cases. I have read John Niland's declaration and concur with the opinion espoused therein. It is clear that professional norms dictate a complete and thorough mitigation investigation in order to provide constitutionally adequate representation in a death-penalty case. This duty has been in effect since at least 1989, when the American Bar Association published its Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases. It applies to all attorneys engaged in the representation of capital clients, including those practicing in Texas courts, both state and federal. Given this well-accepted norm, there is simply no justification for failing to conduct a proper investigation of all available mitigating evidence. The failure to do so is *per se* unreasonable.

4. While certainly not an excuse for such a glaring dereliction, the general failing of trial counsel to conduct a proper mitigation investigation may be a direct result of the now-defunct jury instructions in Texas state capital prosecutions. Pursuant to the previous Texas death penalty scheme, the jury were directed to answer three "special issues" at the conclusion of the penalty phase. Tex. Code Crim. Proc. Ann., Art. 37.071(b) (Vernon 1981 and Supp. 1989)).

Exhibit 76 - 000001

These issues were extremely narrow, addressing only the circumstances of the crime, the future dangerousness of the defendant, and the reasonableness of the defendant's reaction to provocation by the victim. Tex. Code Crim. Proc. Ann., Art. 37.071(b) (Vernon 1981 and Supp. 1989)). If the jury answered affirmatively to all three issues, the judge was required to sentence the defendant to death. Arts. 37.071(c)-(e). In *Penry v. Lynaugh*, 492 U.S. 302 (1989) ("*Penry I*"), the Supreme Court held that the Texas special issues were inadequate to allow proper consideration of some types of mitigating evidence. In 1991, the Texas Legislature amended the special issues in response to *Penry I*, by inserting language instructing the jury to decide "whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed." Tex. Code Crim. Proc. Ann., Art. 37.071, § 2(e)(1) (Vernon 2006).

5. Until the Texas death penalty statute was amended, many capital defense attorneys chose not to pursue mitigation evidence about a defendant's background and character that did not directly support a negative answer to the "future dangerousness" special issues. Despite the powerful mitigating potential of evidence that could explain why a defendant committed the capital crime, such evidence often supported an affirmative answer to the "future dangerousness" issue, and under the old statute, the jury was not permitted to consider the mitigating value of the evidence. Predictably, some defense attorneys came to view that type of evidence as aggravating only and not mitigating.

6. Unfortunately, even after the Texas statute was revised in 1991, skepticism regarding the value of mitigation evidence persisted within the capital defense community. Many practitioners, having been deprived of an appropriate vehicle to present mitigation evidence for so long, resigned themselves to the belief that a jury would never find the evidence persuasive, making an investigation futile. This misconception and flawed practice was reinforced by the fact that many attorneys who practiced under the old statute never developed an understanding and appreciation of the relevance such evidence has to a defendant's moral culpability. Nor did they develop the requisite knowledge regarding a proper penalty phase investigation. Because many attorneys appointed in federal capital prosecutions obtained their qualifications through their experience in state death-penalty cases under the old statute, this flawed approach has occasionally found its way into the defense of federal capital prosecutions in Texas.

7. The fact that Texas had a flawed sentencing scheme before 1991 did not absolve trial counsel of their constitutionally required duty of conducting a proper mitigation investigation as outlined in John Niland's affidavit. This is true for state cases after 1991 and certainly for federal

2

Exhibit 76 - 000002

cases which always allowed the jury to give meaning and effect to all defense mitigation evidence. That said, the defeatist attitude that developed in the face of the Texas sentencing scheme had lasting effects and plagued both the state and federal capital defense community in Texas long after the statute was revised. While not an excuse, this mentality can help explain why otherwise competent attorneys may have failed to satisfy such a fundamental obligation in a capital prosecution.

This declaration is made under penalty of perjury on this 11th day of June, 2007.

_____
Mandy Welch

3

Exhibit 76 - 000003