THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

| | | |
|---|---|---|
| JULIUS OMAR ROBINSON, aka Face, aka Scar, aka Scarface, | : : : | Civil No. 4:05-CV-756-Y (Criminal No. 4:00-CR-00260-2) |
| Defendant/Petitioner, | : : | |
| | : | **DEATH PENALTY CASE** |
| vs. | : : | Honorable Terry Means |
| UNITED STATES OF AMERICA, | : : | United States District Judge |
| Plaintiff/Respondent. | : | |

_____

**APPLICATION FOR A CERTIFICATE OF APPEALABILITY**

(Filed Electronically Under the Electronic Filing System Requirements)

_____

SEAN K. KENNEDY, No. 145632
Federal Public Defender
CRAIG A. HARBAUGH, No. 194309
Deputy Federal Public Defender
Federal Public Defender's Office
321 East 2nd Street
Los Angeles, CA 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-7566
E-Mail: Sean_Kennedy@fd.org
         Craig_Harbaugh@fd.org

Attorneys for Petitioner
JULIUS ROBINSON

MICHAEL CHARLTON, No. 04144800
Deputy Federal Public Defender
Federal Public Defender's Office
411 East Bonneville Avenue, Suite 250
Las Vegas, NV   89101-6632
Telephone: (702) 388-6577
Facsimile: (702) 388-6261
E-Mail: mike_charlton@fd.org

Attorneys for Petitioner
JULIUS ROBINSON

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . 3

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II    STANDARD OF REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.    Reasonable Jurists Might Reasonably Debate the Propriety of the
    Court's Denial of Habeas Relief Without An Evidentiary Hearing.. . 6

    B.    Reasonable Jurists Might Reasonably Debate Whether the Court
    Erred in Denying Robinson's Ineffective Assistance of Counsel
    Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        1.  The Court Misapplied the Standard for Evaluating Prejudice. . . 12

        2.    The Court Misapplied the Standard for Evaluating
        Deficient Performance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

## TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Anderson v. Johnson*,
    338 F.3d 382 (5th Cir. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40, 43

*Baldwin v. Maggio*,
    704 F.2d 1325 (5th Cir. 1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Barefoot v. Estelle*,
    463 U.S. 880, 77 L. Ed. 2d 1090, 103 S. Ct. 3383 (1983). . . . . . . . . . . . . . 5

*Bigby v. Dretke*,
    402 F.3d 551 (5th Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Blanton v. Quarterman*,
    287 Fed. Appx. 407 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bryant v. Scott*, ,
    28 F.3d 1411 (5th Cir. 1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*California v. Brown*,
    479 U.S. 538, 107 S. Ct. 837, 93 L. Ed. 2d 934 (1987). . . . . . . . . . . . . . . 34

*Cardenas v. Dretke*,
    405 F.3d 244 (5th Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Clark v. Blackburn*,
    619 F.2d 431 (5th Cir. 1980).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Correll v Ryan*,
    465 F.3d 1006 (9th Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . .  12, 16

*Deck v. Missouri*,
    544 U.S. 622, 125 S. Ct. 2007, 161 L. Ed. 2d 953 (2005). . . . . . . . . . . . . . 34

**Table of Authorities (cont'd)**                                          **Page**

*Dickerson v Bagley*,
  453 F.3d 690 (6th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Dobbs v. Turpin*,
  142 F.3d 1383 (11th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Eddings v. Oklahoma*,
  455 U.S. 104, 71 L. Ed. 2d 1, 102 S. Ct. 869 (1982). . . . . . . . . . . . . . 26, 33

*Friedman v. United States*,
  588 F.2d 1010 (5th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 11

*Gardner v Johnson*,
  247 F.3d 551 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Gray v Branker*,
  529 F.3d 220 (4th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Green v. Quarterman*,
  No. 08-70006, 2009 U.S. App. LEXIS 4612
  (5th Cir. Tex. Feb. 27, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Haliym v. Mitchell*,
  492 F.3d 680 (6th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Jackson v. Dretke*,
  450 F.3d 614 (5th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Jermyn v Horn*,
  266 F.3d 257 (3rd Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Johnson v. Quarterman*,
  No. 07-70043, 2008 U.S. App. LEXIS 19331
  (5th Cir. Sept. 9, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kitchens v Johnson*,
  190 F.3d 698 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

**Table of Authorities (cont'd)**                                    **Page**

*Koskela v. United States*,
    235 F.3d 1148 (8th Cir. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lewis v Dretke*,
    355 F.3d 364 (5th Cir. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 42

*Lockett v. Anderson*,
    230 F.3d 695 (5th Cir. 2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Lockyer v. Andrade*,
    538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). . . . . . . . . . . . . . . 27

*Marshall v Cathel*,
    428 F.3d 452 (3rd Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Matthews v. United States*,
    533 F.2d 900 (5th Cir. 1976).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*McKoy v. North Carolina*,
    494 U.S. 433, 108 L. Ed. 2d 369, 110 S. Ct. 1227 (1990). . . . . . . . . . . . . . 26

*Miller-El v. Cockrell*,
    537 U.S. 322, 154 L. Ed. 2d 931, 123 S. Ct. 1029 (2003). . . . . . . . . . . . . . 5

*Miller v. Dretke*,
    420 F.3d 356 (5th Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Morales v. Mitchell*,
    507 F.3d 916 (6th Cir. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Neal v. Puckett*,
    286 F.3d 230 (5th Cir. 2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Osagiede v. United States*,
    543 F.3d 399 (7th Cir. 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Table of Authorities (cont'd)**                                                           **Page**

*Outten v Kearney*,
    464 F.3d 401 (3rd Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 15, 39

*Owens v. United States*,
    551 F.2d 1053 (5th Cir. 1977).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Payne v. Tennessee*,
    501 U.S. 808, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991). . . . . . . . . . . . . 26

*Pike v. United States*,
    409 F.2d 499 (5th Cir. 1969).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Pointdexter v Mitchell*,
    454 F.3d 564 (6th Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16, 39

*Ramirez v. Dretke*,
    398 F.3d 691 (5th Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Rompilla v. Beard*,
    545 U.S. 374, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005). . . . . . .  26, 37, 43

*Roper v. Simmons*,
    543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005). . . . . . . . . . . . . . . 34

*Rosales v. Cockrell*,
    220 F. Supp. 2d 593 (N. D. Tex. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . 35

*Scheanette v. Quarterman*,
    482 F.3d 815 (5th Cir. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Shields v. Dretke*,
    122 Fed.  Appx. 133, 136 (5th Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . 35

*Skinner v. Quarterman*,
    528 F.3d 336 (5th Cir. 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Table of Authorities (cont'd)**                                              **Page**

*Slack v. McDaniel*,
    529 U.S. 473, 146 L. Ed. 2d 542, 120 S. Ct. 1595 (2000). . . . . . . . . . . . . . 5

*Smith v. Dretke*,
    422 F.3d 269 (5th Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Smith v. United States*,
    348 F.2d 545 (6th Cir. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Sonnier v. Quarterman*,
    476 F.3d 349 (5th Cir. 2007), *reh'g denied*,
    2007 U.S. App. LEXIS 5683 (5th Cir., Mar. 9, 2007). . . . . . . . . . . . . . . 37

*Stevens v McBride*,
    489 F.3d 883 (7th Cir. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17, 39

*Strickland v. Washington*,
    466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). . . . . . . . . . . *passim*

*Taylor v. Gibson*,
    529 F.2d 709 (5th Cir. 1976).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Tennard v. Dretke*,
    542 U.S. 274, 124 S. Ct. 2562, 159 L. Ed. 2d 384 (2004). . . . . . . . . .  26, 39

*United States v. Alanis*,
    88 Fed. Appx. 15 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12

*United States v. Arguellas*,
    78 Fed. Appx. 984, 986-87 (5th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Bartholomew*,
    974 F.2d 39 (5th Cir. 1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Hall*,
    455 F.3d 508 (5th Cir. 2006), *cert. denied*,
    2007 U.S. LEXIS 4024 (Apr. 16, 2007). . . . . . . . . . . . . . . . . . . . . . . . . 35

**Table of Authorities (cont'd)**                                                        **Page**

*United States v. Hughes*,
   635 F.2d 449 (5th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. McCoy*,
   215 F.3d 102 (D.C. Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. McCoy*,
   410 F.3d 124 (3d Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. McMillen*,
   96 Fed. Appx. 219 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*United States v. Moore*,
   204 Fed. Appx. 250, 251 (4th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Perez*,
   No. 04-21012, 227 Fed. Appx. 357,
   2007 U.S. App. LEXIS 10816 (May 4, 2007). . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Robinson*,
   367 F.3d 278 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Stokes*,
   112 Fed. Appx. 905, 906 (4th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Teague*,
   953 F.2d 1525 (11th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Webster*,
   392 F.3d 787 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Valentine v. United States*,
   488 F.3d 325 (6th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Woodford v. Visciotti*,
   537 U.S. 19, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002). . . . . . . . . . . . . . . . 27

**Table of Authorities (cont'd)**                                              **Page**

*Walbey v. Quarterman,*
    No. 08-70007, 2009 U.S. App. LEXIS 942
    (5th Cir. Tex. Jan. 19, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Wesbrook v. Quarterman,*
    No. 08-70024, 2009 U.S. App. LEXIS 2965 (5th Cir. Feb. 17, 2009).. . . . . 6

*Wiggins v. Smith,*
    539 U.S. 510, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003). . . . . . . . . . *passim*

*Williams v Allen,*
    542 F.3d 1326 (11th Cir. 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Williams v Anderson,*
    460 F.3d 789 (6th Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Williams v. Quarterman,*
    551 F.3d 352 (5th Cir. 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Williams v Taylor,*
    529 U.S. 362 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Yarborough v. Gentry,*
    540 U.S. 1, 5, 124 S. Ct. 1; 157 L. Ed. 2d 1 (2003). . . . . . . . . . . . . . . . . 27

**Docketed Cases**

*United States v. L.J. Britt,*
    Case No. 4:00-CR-00260-15. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**Federal Statutes**

18 U.S.C.
    Sections 3591 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    Section  3593. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30, 31

**Table of Authorities (cont'd)**                                                                  **Page**

28 U.S.C.

 Section 2253. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

 Section 2254 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

 Section 2255. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Miscellaneous**
 31 Hofstra L. Rev. 913, 959 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

| | | |
|---|---|---|
| JULIUS OMAR ROBINSON, | : | Civil No. 4:05-CV-756-Y |
|   aka Face, aka Scar, aka Scarface, | : |   (Criminal No. 4:00-CR-00260-2) |
| | : | |
| Defendant/Petitioner, | : | |
| | : | DEATH PENALTY CASE |
| vs. | : | |
| | : | Honorable Terry Means |
| UNITED STATES OF AMERICA, | : | United States District Judge |
| | : | |
| Plaintiff/Respondent. | : | |

_____

**APPLICATION FOR A CERTIFICATE OF APPEALABILITY**
_____

Julius Robinson (hereinafter "Robinson"), by and through his attorneys,

Mike Charlton, Sean Kennedy and Craig Harbaugh, requests that this Court issue a

Certificate of Appealability (COA) pursuant to 28 U.S.C. § 2253 as to all Grounds

presented in his Motion to Vacate Conviction and Sentence Pursuant to 28 U.S.C.

§ 2255 ("§ 2255 Motion") (Docket #2279) and his Supplemental Pleading (Dkt #

2432).  Robinson also requests that the Court issue a COA with respect to its

decision not to conduct an evidentiary hearing as to Ground One.

This application is based on the attached memorandum of points and authorities, exhibits, and all the files and records of this case.

Below, Robinson offers additional support and argument with respect to Ground One; by doing so, however, Robinson does not waive or modify his request for COA as set out fully above.

Respectfully submitted,

Dated: April 17, 2009

/s/ *Sean K. Kennedy*

SEAN K. KENNEDY
Federal Public Defender
MIKE CHARLTON
CRAIG A. HARBAUGH
Deputy Federal Public Defenders

2

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## <u>INTRODUCTION</u>

Notwithstanding the Court's decision to deny Robinson's petition without an evidentiary hearing, Robinson has presented a compelling case that trial counsel failed to discharge their constitutional obligation to provide effective assistance of counsel.  Robinson has introduced significant evidence undermining the prosecution's aggravation evidence which served as the basis for the jury's death verdict.  Trial counsel could have disproved the prosecution's allegations that Robinson directed the Williams robbery, that he attempted to kill Sara Tucker, and that he participated in a fearsome gang, thereby assuaging the jury's concern that Robinson posed a future danger.

Robinson also produced a wealth of mitigation evidence that eclipses the anemic, even harmful, presentation made by trial counsel.  Trial counsel could have shown how Robinson's cognitive impairments shaped his life choices and made him less morally culpable by offering psychological testimony regarding hiss brain damage and learning disabilities.  Trial counsel could have explained how his oppressive background warranted sympathy by providing an accurate depiction of Robinson's life history rather a false portrayal of a normal upbringing.  Trial counsel could have convinced the jury that Robinson was

3

capable of redemption notwithstanding his serious crimes by elucidating Robinson's positive character traits.

In sum, had trial counsel presented the jury with an accurate profile of Robinson's conduct and background, there is a reasonable probability that at least one juror would have voted for life. This conclusion is underscored by the fact that Robinson's equally culpable co-defendant obtained a life sentence based on a far less compelling presentation than the one made here. While the Court may not be convinced as to the persuasiveness of this evidence, reasonable jurists could certainly debate the matter. At a minimum, one could find that the case - which involves the ultimate sentence of death - warrants further development. Consequently, because the minimal threshold has been met, a COA should issue.

## II

## <u>STANDARD OF REVIEW</u>

A Certificate of Appealability (COA) should be denied only if the claims claims are "squarely foreclosed by statute, rule, or authoritative court decision, or [lack] any factual basis in the record." *Barefoot v. Estelle*, 463 U.S. 880, 894, 77 L. Ed. 2d 1090, 103 S. Ct. 3383 (1983) (explaining the purpose of the certificate of probable cause); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 146 L. Ed. 2d 542, 120 S. Ct. 1595 (2000) (noting that the AEDPA largely codified the standards set forth in *Barefoot*). At the COA stage, this Court must "limit its examination to a

threshold inquiry" which is comprised solely of "an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 327, 336, 154 L. Ed. 2d 931, 123 S. Ct. 1029 (2003) (citing *Slack*, 529 U.S. at 481). The Court may not "fully consider 'the factual or legal bases adduced in support of the claims,' and a petitioner need not show that an appeal will succeed in order to be entitled to a COA." *Cardenas v. Dretke*, 405 F.3d 244, 248 (5th Cir. 2005) (internal citation omitted). A COA must issue if "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotation marks and citation omitted). The Court "need not decide the ultimate merits of the underlying issue in the petitioner's favor." *Jackson v. Dretke*, 450 F.3d 614, 616 (5th Cir. 2006). Indeed, "[a] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.*; *see e.g.*, *Skinner v. Quarterman*, 528 F.3d 336, 340-341 (5th Cir. 2008) (granting a COA for ineffective-assistance-of-counsel claim despite recognition that "considerable speculation" would be required to find prejudice). In capital cases, the Court must resolve any doubt in favor of issuing the COA. *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005) ("in a death penalty case any doubts as to whether a COA

5

should issue must be resolved in the petitioner's favor").[1]

## III

## ARGUMENT

**A.    Reasonable Jurists Might Reasonably Debate the Propriety of the Court's Denial of Habeas Relief Without An Evidentiary Hearing**

Given the Government's concession that the Court should have conducted an evidentiary hearing, reasonable jurists could dispute whether the Court erred. In a 2255 proceeding, a district court must grant a hearing unless the record "conclusively shows" that no relief will be accorded.  28 U.S.C. § 2255(b) (2008); *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (noting a § 2255 motion "can be denied without a hearing only if the motion, files, and records of

---

[1] The use of unpublished opinions is permitted.  *See* Fed. R. App. Proc. 32.1 (prohibiting courts from restricting citation to unpublished cases issued after January 1, 2007).  *See e.g., Green v. Quarterman*, 2009 U.S. App. LEXIS 4612, No. 08-70006 (5th Cir. Tex. Feb. 27, 2009) (granting COA in death penalty case); *Wesbrook v. Quarterman,* No. 08-70024, 2009 U.S. App. LEXIS 2965 (5th Cir. Feb. 17, 2009) (granting COA in a capital case to address, inter alia, claim that trial counsel rendered ineffective assistance by failing to fully investigate his neurological impairments); *Blanton v. Quarterman*, 287 Fed. Appx. 407, 409, No. 07-70023 (5th Cir. 2008) ("[r]esolving doubt in favor of Blanton in this death penalty case, and based on our limited, threshold inquiry concerning the merit of Blanton's claim, we find this claim adequate to deserve encouragement to proceed further"); *Johnson v. Quarterman*, No. 07-70043, 2008 U.S. App. LEXIS 19331 (5th Cir. Sept. 9, 2008) (granting COA in death penalty case on claim that trial counsel rendered ineffective assistance by calling a particular witness at the guilt phase of trial).

the case conclusively show that the prisoner is entitled to no relief . . . .").  In deciding whether to grant an evidentiary hearing, a district court must assess (1) whether the record conclusively negates the petitioner's factual allegations and, if not, (2) whether the petitioner would be entitled to relief if his allegations were true.  *Friedman v. United States*, 588 F.2d 1010, 1015 (5th Cir. 1979).  The petitioner's burden to secure a hearing is "relatively light."  *Smith v. United States*, 348 F.2d 545, 551 (6th Cir. 2003); *Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007) ("The defendant's burden to show his right to a hearing is significantly lower than his burden to show he is entitled to § 2255 relief.").  "If he would be entitled to relief, then the district court must conduct a hearing to ascertain the validity of [his] factual assertions."  *United States v. Alanis*, 88 Fed. Appx. 15, 19 (5th Cir. 2004).

In this case, reasonable jurists could certainly debate whether the Court erred by failing to hold an evidentiary hearing on Robinson's ineffective assistance of counsel claim ("IAC claim").  Perhaps the strongest support for the need for a COA on this issue comes from none other than Robinson's adversary.  The Government twice acknowledged that the Court should hold an evidentiary hearing on his IAC claim.  *See* Response at p. 90 (Dkt. 2365); Supp. Resp. at p. 10 (Dkt. 2439).  The Government's concession is far from controversial but wholly consistent with the widely held view that an IAC claim cannot be properly

disposed of without a hearing.  As one court aptly explained:

> Ineffective assistance claims often require an evidentiary hearing because they frequently allege facts that the record does not fully disclose.  Further, they generally require an evidentiary hearing if the record contains insufficient facts to explain counsel's actions as tactical, or if further factual development might demonstrate prejudice.

*Osagiede v. United States*, 543 F.3d 399, 408 (7th Cir. 2008) (internal citations omitted); *Williams v. Quarterman*, 551 F.3d 352, 359 (5th Cir. 2008) (directing the district court to conduct a *de novo* hearing of Williams's ineffective assistance of counsel claims in capital case); *Friedman v. United States*, 588 F.2d 1010, 1017 (5th Cir. 1979) ("The point is that we do not know, nor does the District Court know, whether [petitioner] was unconstitutionally deprived of . . . effective assistance of counsel.  The hearing is the thing.").[2]

---

[2] *Taylor v. Gibson*, 529 F.2d 709, 716 (5th Cir. 1976) (noting that in a case involving IAC claim, "actual allegations may not be brushed aside as 'beyond belief' by examining a complaint, affidavits and factual responses.  [The petitioner] must have his day in court.");  *United States v. Teague*, 953 F.2d 1525, 1534 n.11 (11th Cir. 1992) (en banc) ("ineffective assistance of counsel . . . claims usually require factual findings best made in an evidentiary hearing"); *United States v. Moore*, 204 Fed. Appx. 250, 251 (4th Cir. 2006) ("When a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record and a credibility determination is necessary to resolve the issue, an evidentiary hearing in open court is required.")*; United States v. McCoy*, 215 F.3d

In addition to the Government's concession, the record creates contested factual issues mandating a hearing.  In support of his IAC claim, Robinson provided extensive evidence, including lay and expert witness declarations.  The Government filed its own declarations in opposition.  Given the numerous disputed issues of fact, reasonable jurists could debate whether the Court erred by denying an evidentiary hearing.  The Fifth Circuit has repeatedly stressed that factual issues in a § 2255 case may not be resolved through affidavits alone. *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981) (quoted in *United States v. McMillen*, 96 Fed. Appx. 219, 221 (5th Cir. 2004)); *Alanis*, 88 Fed. Appx. at 19-20 (where affidavit and trial testimony diverge, hearing is "required to determine who is telling the truth," because evidentiary conflicts on material issues cannot be resolved on affidavits) (quoting *Friedman*, 588 F.2d at 1015); *United States v. Stokes*, 112 Fed. Appx. 905, 906 (4th Cir. 2004) (hearing required because "conflicting statements in the affidavits create a factual dispute" which

---

102, 107 (D.C. Cir. 2000) ("Usually a claim of 'ineffective assistance of counsel … requires an evidentiary hearing'"); *United States v. McCoy*, 410 F.3d 124, 135 (3d Cir. 2005) (stating in a 28 U.S.C. § 2255 case, that "[w]ithout the opportunity to evaluate the rationale given by trial counsel, the issue of possible ineffectiveness cannot be conclusively determined."); *see, e.g., Clark v. Blackburn*, 619 F.2d 431, 432 (5th Cir. 1980) (remanding for an evidentiary hearing "because we cannot conclusively determine the accuracy of petitioner's allegations of failure of his trial counsel to confer with him or to prepare and investigate adequately possible defenses prior to trial").

"cannot be [resolved] on affidavits alone"); *United States v. Arguellas*, 78 Fed. Appx. 984, 986-87 (5th Cir. 2003)) ("where the record does not conclusively [preclude] relief, contested issues may not be decided on affidavits alone.") (citing *Owens v. United States*, 551 F.2d 1053, 1054 (5th Cir. 1977)); *Koskela v. United States*, 235 F.3d 1148, 1149 (8th Cir. 2001) ("sharply conflicting evidence" made hearing mandatory).

A district court abuses its discretion when denying a habeas petition summarily where the evidence is in conflict.  *Pike v. United States*, 409 F.2d 499, 501 (5th Cir. 1969) ("Where the allegations in a § 2255 motion would entitle the petitioner to relief and the files and records of the trial court are inconclusive, findings of controverted issues of material fact must be made on the basis of an evidentiary hearing, not on the basis of pleadings and affidavits.");  *Matthews v. United States*, 533 F.2d 900 (5th Cir. 1976) (reversing and remanding the denial of 2255 motion for an evidentiary hearing because the district court was faced with "conflicting affidavits"); *see, e.g., United States v. Perez*, No. 04-21012, 227 Fed. Appx. 357, 2007 U.S. App. LEXIS 10816, (May 4, 2007) (remanding denial of 2255 petition due to a "factual dispute sufficient to warrant a hearing"); *McMillen*, *supra*, 96 Fed. Appx. 219 (remanding for evidentiary hearing to address IAC claim); *Alanis, supra*, 88 Fed. Appx. 15 (same); *Arguellas*, No. 02-20867, 78 Fed. Appx. 984, 987 (5th Cir. Oct. 27, 2003) (same).

10

Therefore, because reasonable jurists could debate the Court's decision to deny the IAC claim without an evidentiary hearing, a COA should issue.

**B.     Reasonable Jurists Might Reasonably Debate Whether the Court Erred in Denying Robinson's Ineffective Assistance of Counsel Claims**

In order to establish ineffective assistance of counsel, a petitioner must satisfy the familiar two-prong test: (1) deficient performance and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  Under Ground One, Robinson urged the Court to vacate his sentence of death based on his claim of ineffective assistance of trial counsel during the penalty phase.  These allegations included the failure of the Northern District of Texas to adopt a plan for appointing competent counsel, the failure to hire a mitigation specialist, the failure of trial counsel to use an investigator sufficiently competent to develop a death penalty case, the failure of trial counsel to investigate and present evidence that would have rebutted the government's case for death, and the failure of trial counsel to investigate and present mitigating evidence.  Despite presenting a body of evidence during post-conviction proceedings exposing trial counsel's inadequate investigation on both the aggravating and mitigating circumstances, the Court denied Robinson's claim. Because reasonable jurists could surely debate the correctness of the Court's decision, a COA should issue.

11

### 1. The Court Misapplied the Standard for Evaluating Prejudice

Regarding the prejudice component, this Court used the wrong analytical construct. The Court appears to subscribe to the belief that so long as trial counsel presented some mitigating evidence - no matter how superficial or harmful - prejudice cannot be shown. Mem. & Order, p. 31 (finding no prejudice based upon the fact that trial counsel called "five prison officials who testified about Robinson's good behavior and positive adjustment to life in prison and presented "high-school football coaches and teachers as well as one of his teammates.").

But a number of circuits, including the Fifth Circuit, have resoundingly rejected such a notion. In *Outten v Kearney*, 464 F.3d 401 (3rd Cir. 2006), the Court concluded that Outten had satisfied the prejudice prong despite a state court finding of no prejudice based upon the presentation of some mitigating evidence:

> Simply because some mitigating evidence regarding Outten's abusive childhood was introduced to the jury. . . it does not follow that the jury was provided a comprehensive understanding of Outten's abusive relationship with his father or other aspects of his troubled childhood.

Id. at 421.[3] The *Outten* Court even granted relief despite the double-edged nature

---

[3] In reaching its conclusion, the Third Circuit relied upon the principles espoused in *Jermyn v Horn,* 266 F.3d 257 (3rd Cir. 2001):

We therefore do not agree with the Pennsylvania Supreme Court's

12

of the evidence:

> The State asserts and we acknowledge, that not all of the evidence in the records counsel failed to investigate his favorable to Outten. This is nearly always the case. . . . [T]he failure to introduce considerable evidence that could have been helpful to Outten was not justified by counsel's belief, without an adequate investigation, that the net result would have been negative. . . . The important point here, however, is that while it is true that trial counsel may not have introduced into evidence all of Outten's records at sentencing if they had procured them, the records most certainly would have informed counsel's preparation.

464 F.3d at 422.  Similarly, in *Williams v Anderson*, 460 F.3d 789,805 (6th Cir. 2006), the Sixth Circuit found sufficient prejudice even though trial counsel presented some information about the defendant's background.  The Court concluded that Williams had suffered sufficient prejudice from his counsel ineffective investigation, because the proffered mitigating evidence would "have humanized" him, such that there was a reasonable probability "one juror would have voted against death. . . ."); *see Pointdexter v Mitchell*, 454 F.3d 564, 580 (6th Cir. 2006) (finding prejudice because proffered mitigating evidence presented

_____

> characterization that the evidence that could have been presented would simply " have provided the jury with more detailed incidents of [the petitioner's] childhood trauma and mental illness."  Rather, the testimony would have provided the jury with an entirely different picture of [the petitioner's] life and childhood which would have both aided in understanding the seriousness and origin of his mental illness and provided an understanding of [the petitioner's] relationship with the deceased.

*Outten*, 464 F.3d 420-21.

13

"a fuller and more accurate description of Poindexter's troubled childhood and paranoid personality disorder" that established the reasonable probability " ' that at least one juror would have struck a different balance.'" 454 F.3d at 580 (quoting *Wiggins*, 539 U.S. at 537; *see also Dickerson v Bagley*, 453 F.3d 690, 699 (6th Cir. 2006) ("It is possible, of course, that a jury could have heard the evidence described above, and still have decided on the death penalty but. . . that is not the appropriate test . . . Instead we must ask whether 'the available mitigating evidence, taken as a whole, might well have influenced the jury's appraisal of [Harries's] culpability'"); *see also Correll v Ryan*, 465 F.3d 1006, 1018 (9th Cir. 2006).

In *Marshall v Cathel*, 428 F.3d 452, 474 (3rd Cir. 2005), prejudice was assessed in terms of the proffered evidence's power to humanize:

> Absent those witnesses, [defense counsel] had no choice but to argue only those relatively insignificant aspects . . . that are anything but "humanizing'" and its absence was enough to undermine the trial's fundamental fairness and to question whether 'the result of the particular proceeding is unreliable because of a breakdown in the adversarial process.

*Marshall*, 428 F.3d at 474.  The Court in *Stevens v McBride*, 489 F.3d 883 (7th Cir. 2007), found prejudice despite the existence of evidence that might have contradicted the asserted claims at the guilt phase: "the proffered evidence would have strengthened the general mitigation evidence presented by defense counsel

by focusing the jury's attention on the 'concrete' effect of a deprived childhood."
*Stevens*, 489 F.3d at 897-98.

Among the weight of authority supporting Robinson's IAC claim, three cases in particular dictate the issuance of a COA in this case:  *Gray v Branker*, 529 F.3d 220, 236-38 (4th Cir. 2008), *Williams v Allen*, 542 F.3d 1326 (11th Cir. 2008), and *Walbey v Quatermann*, No. 08-70007, 2009 U.S. App. LEXIS 942 (5th Cir. Jan. 19, 2009).

In *Gray v Branker*, 529 F.3d 220 (4th Cir. 2008), the Fourth Circuit concluded that the state courts had "improperly discounted the mitigation evidence that could have been introduced at sentencing," and "did not even attempt to evaluate the relative strength of the competing evidence."  *Id*.  The Court then found prejudice because the proffered evidence "would have provided the jury with an explanation for Gray's compulsive behavior and his inability to control his reactions."  As the Court explained:

> The mental health evidence would surely have provided a significant boost to Gray's mitigation case. . . . The [proffered evidence] would have given the jury the full picture of Gray and his crime. . . . There was a reasonable probability that at least one juror would have struck

15

a different balance." [4]

In *Williams v Allen*, 542 F.3d 1326 (11th Cir. 2008), trial counsel called Williams' mother at the penalty phase to provide the jury with a description of Williams' deprived childhood including instances of child abuse.  542 F.3d at 1329.  In post conviction proceedings, however, Williams' habeas counsel painted a far starker picture of Williams' childhood, including instances of extreme cruelty and mother's failure to shield her children from violence.  542 F.3d at 1331-32.  Finally, the post conviction evidence included the testimony of a psychiatrist who testified about the effects of the abuse and accompanying neglect and deprivation.  542 F.3d at 1333.

The state courts found trial counsel did not provide deficient performance because he retained a psychologist to evaluate Williams and made a strategic decision not to present the evidence, deeming it harmful.  The state courts also concluded that Williams suffered no prejudice, because nothing in the new evidence refuted Williams' responsibility for the offense, a holding similar to this Court's treatment of the claim on pesticide exposures, and thus, there was no reasonable probability that the additional evidence would have resulted in a

---

[4]  The mental health evidence was not a classic form of mental illness but, instead was a diagnosis of adjustment disorder with mixed disturbance of emotions and conduct.  529 F.3d at 225.

16

sentence less than death.  542 F.3d at 1335, 1343.

The Eleventh Circuit concluded that Williams had indeed established prejudice, even under the AEDPA's more deferential standard, a standard that does not apply here:  "[t]he mitigation evidence that Williams' trial counsel failed to discover paints a vastly different picture of his background than that created by [his mother's] abbreviated testimony." 542 F.3d at 1342 (quoting *Wiggins*, 539 U.S. at 535).  In contrast to the state court, the Eleventh Circuit considered the evidence relevant to an assessment of a defendant's moral culpability.  542 F.3d at 1342.  Further, the newly discovered evidence contradicted the grounds relied upon by the sentencing judge in assessing death.  542 F.3d at 1343-44.

The Eleventh Circuit, citing *Williams v Taylor*, 529 U.S. 362, 397-98 (2000), determined that prejudice has to be assessed by comparing the totality of all available mitigating evidence with the evidence offered in support of the death sentence.  542 F.3d at 1344.  Even if the evidence did not completely refute the prosecution's evidence supporting the petitioner's future dangerousness, "the [Supreme] Court emphasized that it still could have affected the sentence imposed." [5]  The Eleventh Circuit held that the state court, by not entertaining that

---

[5]  "Mitigating evidence unrelated to dangerousness may alter the jury's selection of penalty, even if it does not undermine or but the prosecution's death-eligibility case." *Williams*, 529 U.S. at 398.

17

possibility, "failed to accord appropriate weight to the body of mitigation evidence available to trial counsel."  542 F. 3d at 1344 (quoting *Williams*, 529 U.S. at 398). Therefore, penalty phase relief was justified.

Finally, in *Walbey v. Quaterman*, No. 08-70007, 2009 U.S. App. LEXIS 942 (5th Cir. Jan. 29, 2009), the Fifth Circuit, after determining that trial counsel's investigation was constitutionally inadequate, found that Walbey had been prejudiced by his counsel's failures:

> *Williams* [*v. Taylor supra*] thus stands for the proposition that counsel can be prejudicially ineffective even if some of the available mitigation evidence is presented and even if there is psychiatric testimony.  The fact that the presentation of some mitigation evidence does not necessarily defeat a prejudice showing is also clear from the test that *Williams* establishes.  There, the Court held that it is an unreasonable application of Supreme Court precedents for a state court not to "evaluate the totality of the available mitigation evidence - both that adduced at trial, and the evidence adduced in the habeas proceeding." This standard clearly contemplates that even when some mitigating evidence is presented at trial, prejudice is still possible if that evidence is substantially incomplete.

Slip opinion p. 14.  The Fifth Circuit also rejected the argument that the death sentence should be upheld based on the brutality of the offense:

> Finally, our decades of experience with scores of Section 2254 habeas cases from the death row of Texas teach an obvious lesson that is frequently overlooked:  Almost without exception, the cases  we see in which conviction of a capital crime has produced a death sentence arise from extremely egregious, heinous and shocking facts.  But, if that were all that is required to offset prejudicial legal error and convert it to harmless error, habeas relief. . . would virtually never be available, so testing for it would amount to a hollow judicial act.

18

Slip opinion p. 17 (quoting *Gardner v Johnson*, 247 F.3d 551, 563 (5th Cir. 2001).

Finally, the *Walbey* Court rejected the argument that because some of the newly available mitigating evidence "contains unhelpful and aggravating information," prejudice could not be established:[6]

> The stronger version of this reasoning, that any unhelpful information render otherwise potentially mitigating evidence useless, is foreclosed by *Williams*. The weaker version, that the aggravating features of some mitigating evidence could overwhelm any mitigating effect, is not controversial but neither is it the case here.

Slip opinion p. 28.

In this case, reasonable jurists could debate, if not agree, that prejudice was established in this case. Balancing all compelling mitigating evidence against the substantially diminished aggravating evidence, jurists of reason could certainly discuss whether there exists a reasonable probability that at least one juror would have voted for life. Reasonable trial counsel would have discovered and offered strong evidence of Robinson's troubled background and refrained from presenting a false portrayal of Robinson as someone who enjoyed a normal upbringing. Moreover, trial counsel would have shown that Robinson suffered brain damage as a result of his mother drinking alcohol throughout her pregnancy and from his constant exposure to toxic pesticides during his childhood. Trial counsel could

---

[6] This Court used a similar rationale.

19

have also shown Robinson's positive attributes as exemplified by many good deeds.

To counter the prosecution's evidence in aggravation, trial counsel could have provided direct testimony to rebut the claim that Robinson ordered a hit against "One Love" Williams.  Trial counsel would have also discounted the dubious claim that Robinson was affiliated with a notorious street gang.  Finally, trial counsel would have shown that Robinson fired shots at a parked truck in frustration, unaware that Tucker was crouched down inside.  Given the totality of the available evidence in mitigation and the available evidence to rebut the case in aggravation, there is a reasonable probability that competent counsel could have succeeded in tipping the balance in favor of life.  While the Court obviously disagrees with Mr. Robinson's contentions, the issue now is not whether the Court will change its mind but whether reasonable jurists would disagree with the Court's decision.

Not only could jurists debate the Court's ultimate decision, they could also take issue with some of the Court's reasoning.  First, the Court chose to evaluate each claim seriatim and analyze the prejudice of each individually.[7]  *See e.g.,*

---

[7]  The Court refused to consider the challenge to the absence of a plan of appointment holding, finding instead that the claim was defaulted because it had not been raised on appeal.  See Memorandum and Order of November 7, 2008, p. 14.

Memorandum and Order, p. 16. ("Moreover, Robinson has made no attempt to demonstrate that his counsel's choice of investigator prejudiced his case."); p. 20, (regarding rebuttal evidence against the alleged attempt on Michael William's life, noting "Robinson [has not] established that he was prejudiced by any deficiency on the part of his counsel."); p. 22 (regarding rebuttal that Robinson, attempted murder of Sarah Tucker, noting "Robinson [has not] established that he was prejudiced by any deficiency on the part of his counsel.").  But the Supreme Court has mandated the consideration of all penalty phase evidence collectively rather than piecemeal.  *Wiggins v. Smith,* 539 U.S. 510, 538, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003) (requiring for purposes of prejudice analysis to "reweigh the evidence in aggravation against the totality of available mitigating evidence." *Miller v. Dretke*, 420 F.3d 356, 364 (5th Cir. 2005).  A defendant satisfies the reasonable probability standard by proving that the "mitigating evidence, taken as a whole, 'might well have influenced the jury's appraisal' of [his] moral culpability." *Wiggins*, 539 U.S. at 538 (quoting *Williams (Terry) v. Taylor*, 529 U.S. 362, 398, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)).[8]

---

[8]    The Court did note at the end of this last discussion that *Wiggins* required a court to "'reweigh the evidence in aggravation against the totality of available mitigation evidence.' See 539 U.S. at 534. When the Court examines all of Robinson's mitigation evidence, including the evidence that was gathered post-conviction, the Court cannon conclude that it was reasonably likely a jury would have reached a different conclusion had the evidence that was discovered post-

Not only is the Court's overall prejudice analysis flawed based upon its failure to consider the cumulative impact of the mitigation and aggravation evidence, the Court applies the wrong standard in assessing prejudice resulting from the lack of mental health evidence.  The Court found no prejudice for the claim that trial counsel did not investigate the mental health effects of pesticide exposure based on the lack of connection to the charged offenses:  "[Dr. Stephen] Martin does not opine on the likelihood that these subtle cognitive defects would affect Robinson's ability to plan and implement the murder of three individuals." Memorandum and Order, p. 26.  Similarly, as for the effect of *in utero* alcohol exposure, the Court found no reasonable probability "that presentation of such an opinion from Allen or a similar expert would have persuaded the jury, in light of all the evidence to the contrary, that Robinson suffered so much and was so damaged by his mother's conduct that he is less culpable for the murder of three people." *Id*. at 26.

But the Court's analysis is nothing more than a variation of the long defunct "nexus" test.  "Virtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances." *Payne v.*

---

trial been admitted." Memorandum and Order p. 32 (sic).  Though the Court correctly cited and quoted from the applicable authority, its use by the Court is belied by the Court's own rationale.

*Tennessee*, 501 U.S. 808, 822, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991) (quoting

*Eddings v. Oklahoma*, 455 U.S. 104, 114, 71 L. Ed. 2d 1, 102 S. Ct. 869 (1982)).

The Supreme Court has defined relevant mitigating evidence "in the most

expansive terms," embracing any "evidence which tends logically to prove or

disprove some fact or circumstance which a fact-finder could reasonably deem

to have mitigating value. *Tennard v. Dretke*, 542 U.S. 274, 124 S. Ct. 2562, 2570,

159 L. Ed. 2d 384 (2004), (quoting *McKoy v. North Carolina*, 494 U.S. 433, 440,

108 L. Ed. 2d 369, 110 S. Ct. 1227 (1990) (relevant mitigating evidence defined

in the most expansive terms); *Bigby v. Dretke*, 402 F.3d 551, 566 (5th Cir. 2005).

By the same token, the Supreme Court has unequivocally rejected any "nexus"

between the mitigating evidence offered and the underlying crime. *Tennard*,

542 U.S. at 274.

The Court also found that Robinson was not prejudiced as a result of trial

counsel's deficient investigation because Robinson's life history is not equivalent

to the mitigating evidence present in the Supreme Court's recent trilogy

addressing ineffective of assistance of counsel claims. (Order at p. 13 (contrasting

Robinson's case with *Williams*, *Wiggins* and *Rompilla*, *supra*.).) But the Court

misconstrues the facts upon which these cases depend and  misapprehends the

principle upon which these cases stand.[9]  Similar to Robinson's life, all of these cases dealt with information regarding the defendant's sympathetic background and mental impairments.  And, just as in Robinson's case, trial counsel failed to investigate the client's life history.  The fact that the Supreme Court found the prejudice prong was satisfied in those cases in no way implies that these showings serve as the baseline for measuring prejudice for all IAC claims.

Moreover, all of these cases are distinguishable because none dealt with the failure to rebut powerful evidence in aggravation, which was a critical issue at Robinson's penalty phase.[10]  Although not directly at issue in *Rompilla*, the Court

---

[9]  It is not possible to extrapolate useful information from the factual underpinnings of each of these cases because the prejudice component of *Strickland* is intensively fact-specific.  Equally true is the axiom that while factually distinguishable, it isn't the result of the holding that is appropriate for the issue presented by this request, *i.e.* whether reasonable jurists could or would disagree with the Court's decision.  Rather, it is the method used by each of the courts cited that should control.

[10]  It is also important to note that the Supreme Court was forced to apply a much more stringent standard in those cases than in the instant one.  Because the Supreme Court was dealing with habeas petitions filed by state prisoners, relief could only be granted if the state courts engaged in an "unreasonable application" of "clearly established federal law."  *See* 28 U.S.C. § 2254(d)(1) (2006).  Under this deferential standard, it is not enough the state ruling is "incorrect or erroneous," the decision must be "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 75, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003); *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S. Ct. 1; 157 L. Ed. 2d 1 (2003).  Concerns for comity are not implicated when a federal prisoner seeks collateral relief, and AEDPA's onerous standards do not apply to this case.  *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (identifying the 2254 as a "highly deferential standard for evaluating state-court rulings . . . which demands that state

emphasized the strong prejudice resulting from trial counsel's failure to challenge uncharged offenses offered in aggravation:

> We may reasonably assume that the jury could give more relative weight to a prior violent felony aggravator where defense counsel missed an opportunity to argue that circumstances of the prior conviction were less damning than the prosecution's characterization of the conviction would suggest.

*Rompilla v. Beard*, 545 U.S. 374, 386 n. 5 (2005).

The Court also erroneously concludes that the jury did not rely on the future dangerous finding in reaching a death penalty verdict. This is contrary to the Fifth Circuit's opinion on appeal. *United States v. Robinson*, 367 F.3d 278, 292 (5th Cir. 2004) (The jury's sentencing recommendation was based in part on . . . Robinson's criminal history."). In any event, the Court's reasoning is also fundamentally flawed. The Court speculates that because "the facts supporting future dangerousness applied to all offenses for which Robinson was tried" and "the jury did not impose the death penalty for the Resendez murder," the jury "did not believe the future dangerousness factor was sufficient to justify a sentence of

---

court decisions be given the benefit of the doubt"). A federal prisoner need only establish "the sentence was imposed in violation of the Constitution or law of the United States." 28 U.S.C. § 2255 (2006).

25

death." Order. at p. 20. The Court's opinion takes no account of the fact that Robinson was never found to have personally participated in the Resendez murder. The more likely inference, indeed, the infinitely more reasonable one, is that the jury limited its consideration of the death penalty to only those murders where it was shown Robinson was personally involved.

The Court's conclusion also rests on the untenable presumption that the jury completely abdicated its responsibility at the penalty phase. As the Supreme Court has cautioned, "the assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Strickland*, 466 U.S. at 695. In this case, once the jury found Robinson was eligible for the death penalty, it still "had to decide whether he should receive a death sentence." *Jones v. United States*, 527 U.S. 373, 377, 119 S. Ct. 2090, 144 L. Ed. 2d 370 (1999). Before deciding on the death sentence, federal law "requires that the sentencing jury consider all of the aggravating and mitigating factors and determine whether the former outweigh the latter." (*Id.*) (citing 28 U.S.C. §§ 3591(a), 3592, 3593(e)).[11] Without more,

---

[11] Sentencing under the Federal Death Penalty Act consists of three distinct steps. 18 U.S.C. §§ 3591 et seq. First, the jury determines whether the defendant committed a death-eligible offense under 18 U.S.C. § 3591. Second, the jury determines whether at least one of the statutory aggravating factors set forth in section 3592 is present. Both of these determinations must be unanimous and must be made upon proof beyond a reasonable doubt. 18 U.S.C. § 3593(c), (d).

26

it is preposterous to assume that the jury would have decided to "shirk its constitutional duty to render a reasoned, moral decision." *Kansas v. Marsh*, 126 S. Ct. 2516, 2528, 165 L. Ed. 2d 429 (2006).

Even assuming the jury relied substantially on the underlying crimes in deciding to impose death, the record establishes that the verdict was also based on the penalty phase evidence.  As outlined in the special verdict form, the jury was to determine several statutory and nonstatutory mitigating and aggravating factors before conducting the weighing calculus.  (Ex. 45, Special Verdict Form.).  Although many of these issues dealt with the relative culpability and punishment of the co-defendants, two factors were concerned exclusively with Robinson.  In each instance, the jury found against him.

First, the jury unanimously concluded beyond a reasonable doubt that

---

Third, if the jury finds both a death-eligible offense and one or more of the statutory aggravating factors, the jury considers whether the statutory aggravating factor or factors found to exist, together with any non-statutory aggravating factors found to exist upon proof beyond a reasonable doubt, sufficiently outweigh the mitigating factor or factors found to exist, so as to justify a sentence of death.  Section 3593(e).  The defendant may present any information relevant to a mitigating factor and it is his burden of establishing the existence of any mitigating factor by a preponderance.  Section 3593(c). A finding with respect to a mitigating factor may be made by one or more jurors, while a finding with respect to any aggravating factor must be unanimous.  Section 3593(d).  The jury's overall sentencing verdict must be unanimous. Section 3593(e).  That is, in particular, a verdict of death is properly reached only if the jurors unanimously find that the aggravating factors sufficiently outweigh the mitigating factors. Section 3594.

27

Robinson "is a future danger to the lives and safety of other persons." (Ex. 45, Special Verdict Form, at p. 4.) While the instruction listed lack of remorse as a possible basis, the aggravating factor was concerned mainly with Robinson's conduct, such as "specific threats" and "acts of violence." (*Id.*) Given the intense focus that the prosecution placed on the Williams "hit", gang membership and the Tucker shooting during closing arguments, these incidents unquestionably factored heavily in the jury's finding of future dangerousness.

Second, none of the jurors found anything in Robinson's background that militated against the death penalty. The special verdict form asked the following question:

> Do any of you find by a preponderance of the evidence that Julius Omar Robinson was subjected to emotional abuse, abandonment, or neglect as a child and was deprived of parental guidance and protection that he needed, and that this mitigates against imposition of the death penalty?

(Ex. 45, Special Verdict Form, at p. 7.) Not one of the jurors concluded that Robinson's background justified a lesser sentence. (*Id.* (reflecting "0").) Based upon these predicate findings, the jury would have been hard pressed to conclude that the aggravating factors did not outweigh the mitigating factors.

Consequently, because the aggravating and mitigating findings were dictated by the inadequate presentation at the penalty phase, there is no question that trial counsel's performance directly affected the death verdict. At the very

28

least, reasonable jurists could debate whether Robinson was prejudiced.

The likelihood that trial counsel's deficient performance prejudiced Robinson's sentence is underscored by the result reached in the companion case of *United States v. L.J. Britt*, Case No. 4:00-CR-00260-15.  Though not identical, there are numerous similarities between their cases.  Both Robinson and Britt had been charged with personally killing two individuals and with participating extensively in an interstate drug trafficking operation.  Both had been linked to the Dermott Crips.  Both were accused of committing prior acts of violence, in addition to the capital crimes.  Brit had been accused of twice burglarizing and then robbing a family at gunpoint.  The second time, he fired a warning shot in the presence of four young children when the frantic wife failed to produce some money.  (Volume 24, Reporter's Transcript from *United States v. L. J. Britt*, Case No. 4:00-CR-00260-15, at pp. 9-18 (hereinafter "BRT").)  Robinson had received deferred adjudication for shooting at the truck of one of his drug customers.  Robinson was also implicated, albeit falsely, in the Williams assault.[12] Nevertheless, Britt's life was spared, Robinson was sentenced to die. Notwithstanding some minor differences, the most dramatic distinction by far was the amount and quality of mitigating evidence presented during their respective

---

[12]  Each were known by a menacing nickname, Robinson was called "Scar Face" while Britt was called "Capone."

penalty phases.[13]

Unlike Robinson's trial counsel, the defense attorneys for Britt presented a multitude of character and background witnesses on his behalf.  The evidence offered at Britt's trial consisted of introducing residual doubt and highlighting Britt's good character.  (24 BRT 73-174.)  To further elucidate Britt's positive attributes, the defense called two jailers who guarded Britt following his arrest and confinement. (24 BRT 6.)  Apart from character witnesses, Britt's stepfather and mother testified on his behalf.  Larry Robinson[14] discussed the privation that Britt suffered in his life.  (24 BRT 155-57.)  Britt's mother related her struggle to raise Britt as a single mother when he was only two years old.  (24 BRT 182-214.)

While Britt's evidence was strong, his presentation paled in comparison to the wealth of available mitigating evidence in Robinson's background.  Britt came from a very loving close-knit family and was raised by his father and stepmother.  (*Id.* at ¶ 6.)  A psychologist evaluated Britt as well as examined his records but determined that Britt did not have any mental health issues.  (*Id.* at ¶ 5.)  Moreover, Britt did average or better than average in school and had no

---

[13]  Robinson had been implicated in an additional drug-related murder although there was no allegation that he was involved personally in the shooting. On the other hand, Britt had an extensive record of felony convictions, while Robinson did not.

[14]  Larry Robinson is unrelated to Robinson.

apparent neurological or cognitive impairments.  (*Id*.)

In stark contrast to Britt, Robinson's background exhibited many of the traditional areas of mitigation.  While Britt came from a loving and supportive home, Robinson "had been deprived of the care, concern, and paternal attention that children deserve."  *Eddings v. Oklahoma*, 455 U.S. 104, 116, 102 S. Ct. 869, 877, 71 L. Ed. 2d 1 (1982).  While Britt had no mental problems and did well in school,  Robinson suffered from brain damage and did poorly in school.  Finally, evidence of Robinson's good character was at least on par with the examples of babysitting and moral support introduced on Britt's behalf.  If Britt's penalty phase case was enough to convince the jury to spare his life, it follows *a fortiori* that a presentation reflecting all available mitigating evidence from Robinson's background would have also succeeded.

Of course, it is impossible to divine precisely what the jury relied upon in deciding Robinson's fate.  The ultimate penalty in a capital case is not simply the answer to a technical equation but instead "reflects a reasoned *moral* response to the defendant's background, character, and crime."  *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005) (quoting *California v. Brown*, 479 U.S. 538, 545, 107 S. Ct. 837, 93 L. Ed. 2d 934 (1987) (O'Connor, J., concurring) (emphasis in original).  In determining whether a defendant deserves death, a jury must weigh considerations "which are often unquantifiable and

31

elusive." *Deck v. Missouri*, 544 U.S. 622, 633, 125 S. Ct. 2007, 161 L. Ed. 2d 953 (2005).  That said, given the gross disparity between the available mitigating evidence and what evidence was actually presented, Robinson was no doubt harmed by counsel's deficient performance.  Even if it cannot be conclusively proven that the entire jury would have been dissuaded from imposing a sentence of death, there is a reasonable probability that at least one juror would have held out for life.  Consequently, because reasonable jurists could debate whether Robinson has satisfied the prejudice standard, a COA should issue.

> **2.    The Court Misapplied the Standard for Evaluating Deficient Performance**

Reasonable jurists could also debate the Court's finding that trial counsel did not provide deficient performance.  The Court rejected the contention that trial counsel's failure to hire a mitigation expert to conduct Mr. Robinson's penalty phase investigation constituted ineffective assistance in part, because the "Constitution does not provide Robinson with an absolute right to the services of a mitigation specialist,"  and that trial counsel's decision not to use a mitigation specialist was reasonable given what they knew about their client.  Memorandum and Order, p. 22.

As to the use of a mitigation specialist, other courts simply disagree, addressing the failure to retain such a specialist in the context of a general claim

of inadequate investigation.  *Morales v. Mitchell*, 507 F.3d 916, 932 (6th Cir.

2007) ("Moreover, defense counsel did not hire a mitigation specialist or

investigator and did not himself contact any of Morales's family members other

than Morales's father, Richard, even though numerous other family members were

willing to testify."); *see, e.g., Scheanette v. Quarterman*, 482 F.3d 815 (5th Cir.

2007) (mitigation specialist retained for 1996 trial); *United States v. Hall*,

455 F.3d 508, 517 (5th Cir. 2006), *cert. denied*, 2007 U.S. LEXIS 4024 (Apr. 16,

2007) (mitigation specialist retained in 1995); *United States v. Webster*, 392 F.3d

787, 795 (5th Cir. 2004) (mitigation specialist retained for 1996 trial); *Rosales v.

Cockrell*, 220 F. Supp. 2d 593, 611 (N. D. Tex. 2001); *Shields v. Dretke*, 122 Fed.

Appx. 133, 136 (5th Cir. 2005) (use of a mitigation specialist in a 1995 trial).

In *Haliym v. Mitchell*, 492 F.3d 680, 717 (6th Cir. 2007) the court criticized

defense counsel's use of a presentence investigation report in lieu of a more

thorough mitigation investigation, including the failure to hire a mitigation

specialist:

> At trial, this report, along with the inadequate testimony of
>
> Dr. Bertschinger, took the place of an expert report and investigation
>
> conducted by an expert of Petitioner's choosing.  Had Petitioner's
>
> counsel taken an active role in procuring an expert to investigate
>
> Petitioner and author a report for mitigation, evidence of Petitioner's

33

social history and brain injury would likely have come before the trial court. We can fathom no strategic reason for Petitioner's counsel's failure in this regard.

*Haliym*, 492 F.3d at 717; *see also Walbey v Quarterman*, *supra*, at p. 11, ("[T]here is little room for debate that the district court was correct to agree . . . that [trial counsel'] investigation of a potential mitigation defense was deficient," in part for the failure to hire a mitigation expert); *Gray v. Branker*, 529 F.3d at 229 ("The Guidelines also advised that '[t]he assistance of one or more experts (e.g., social worker, psychologist, psychiatrist, investigator, etc)' in the investigation, development, and presentation of relevant mitigating evidence 'may be determinative as to [the] outcome' at sentencing.").[15]

As to the court's conclusion that the decision not to hire such a person based on what defense already knew, a decision to limit the scope of an investigation is reasonable only to the extent that the investigation to that point was itself reasonable. *Walbey* supra at. P. 9, (quoting from *Wiggins,* 539 U.S. at 521). Reasonableness of counsel's performance is assessed by looking to "[p]revailing

---

[15]  The role of a mitigation specialist is an essential part of the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (rev'd 2003), 31 Hofstra L.Rev. 913, 959 (2003) ("A mitigation specialist is also an indispensable member of the defense team throughout all capital proceedings.")

norms of practice as reflected in [the] American Bar Association standards."

*Strickland*, 466 U.S. at 688; *Rompilla v. Beard*, 545 U.S. 374, 375, 125 S. Ct.

2456, 162 L. Ed. 2d 360 (2005) ("we have long referred [to the ABA Standards

for Criminal Justice] as guides to determining what is reasonable"); *Sonnier v.*

*Quarterman,* 476 F.3d 349, 358 n.3 (5th Cir. 2007), *reh'g denied*, 2007 U.S. App.

LEXIS 5683 (5th Cir., Mar. 9, 2007); *Walbey, id*.  The "mere possession of some

information with respect to petitioner's background . . . [did not put him] in a

position to make a tactical choice not to present a mitigation defense."  *Walby, id*.

(quoting *Wiggins* supra at 527).

Beyond the Court's refusal to consider any of trial counsel's gross

omissions as constituting deficient performance, the Court ultimately absolved

trial counsel of any responsibility because they presented some evidence.

Memorandum and Order, p. 13.  The court's reliance on *Kitchens v Johnson*, 190

F.3d 698, 703 (5th Cir. 1999) is misplaced.  ("Trial counsel's decisions 'are even

less susceptible to judicial second guessing" in cases such as Robinson's, where

a defendant is not alleging a complete failure to present mitigating evidence, but

rather a failure to present sufficient mitigating evidence."  Memorandum and

Order ,p. 23.  In the wake of *Williams* and its progeny, *Kitchens* heightened

deferential review to trial counsel's decision is clearly diminished if not

effectively overruled.  In *Lewis v Dretke*, 355 F.3d 364, (5th Cir. 2003), the Fifth

35

Circuit departed from *Kitchens*, finding counsel's trial investigation inadequate despite the presentation of some evidence:

> The district court observed that counsel adduced evidence of child abuse through the testimony of Lewis's grandmother, Lula. Yet, her conclusional testimony contained none of the details provided by Lewis's siblings at the habeas hearing, which could have been truly beneficial. Lula's skeletal testimony concerning the abuse of her grandson was wholly inadequate to present to the jury a true picture of the tortured childhood experienced by Lewis.

*Lewis*, 355 F.3d at 367-68. More recently, in *Walbey*, the Fifth Circuit found counsel to be ineffective without regard to a heightened deferential review and despite trial counsel's presentation of psychological evidence. [16]

---

[16] The other cases cited from other circuits are similar, in that in each case the court found that trial counsel provided deficient performance in failing to thoroughly investigate the defendant's background, notwithstanding a cursory presentation of mitigating evidence at trial. In *Gray, supra* at 226, trial counsel presented six witnesses who testified to his client's positive character. In *Williams, supra*, 542 F. 3d at 1329, defense counsel called his client's mother who testified to her child's victimization at the hands of his father's violent temper. In *Stevens*, *supra*, 489 F.3d at 889, the Court recited trial counsel's efforts, which included numerous members of his client's family, and expert testimony of the client's suffering of abuse. Nevertheless, the Court concluded that *Strickland* had been violated because of counsel's failure to investigate other mitigating circumstances. 489 F.3d at 896-97. In *Poindexter*, *supra*, 454 F.,3d at 575-76, trial counsel called five character witnesses. *See also Outten,*.464 F.3d at 405-06. Nothing in these cases prevented the application of *Strickland* from mandating

36

The Court excused counsel's failure to investigate the effect of pesticide exposure on Robinson because petitioner's expert did "not opine on the likelihood that these subtle cognitive defects would affect Robinson's ability to plan and implement the murder of three individuals." Memorandum and Order p. 26. Reasonable jurists could disagree with this conclusion because of its imposition of a nexus between the mitigating evidence and the offense. *Tennard*, 542 U.S. at 274 (precluding a "nexus" test).

Regarding trial counsel's failure to investigate two of the aggravating circumstances, the Tucker shooting incident and the "One Love" robbery, the Court erroneously conflates its prejudice and deficient performance analyses. Relying exclusively on the persuasiveness of rebuttal aggravating evidence, the Court finds that trial counsel's failure to investigate was reasonable.[17] *See* Memo Denying Relief, p. 20 ("The Court concludes that Robinson has failed to establish that his trial counsel's performance was insufficient for failing to uncover and present the proffered evidence to the jury."); Memo Denying Relief, p. 22 (Tucker) ("the Court concludes that Robinson has failed to establish that his trial

_____

relief, even under the AEDPA's highly deferential standard of review of state capital trials.  As discussed below, that standard does not apply to Robinson's case.

[17]  The Court no where addresses trial counsel's failure to refute or move to exclude the gang evidence presented by the prosecution.

counsel's performance was insufficient for failing to uncover and present the proffered evidence to the jury."). The Court completely glosses over the fact that trial counsel never deny failing to investigate either incident prior to trial. In any event, even if the evidence is less than ideal, such consideration is wholly irrelevant to the Court's assessment of trial counsel's total failure to investigate:

> Although a lack of credibility might support a strategic decision not to call a witness to testify at trial, . . . a witness's character flaws cannot support a failure to investigate. Without so much as contacting a witness, much less speaking with him, counsel is 'ill-equipped to assess his credibility or persuasiveness as a witness.'

*Anderson v. Johnson*, 338 F.3d 382, 392 (5th Cir. 2003) (quoting *Bryant v. Scott*, 28 F.3d 1411, 1418 (5th Cir. 1994)). Thus, irrespective of whether trial counsel would have ultimately presented the information, the fact remains that trial counsel had not investigated the prior incidents.

Concerning trial counsel's other omissions, the Court accepts as determinative trial counsel's bald assertions that the decisions not to investigate were strategic. Order, p. 23, (regarding the failure to hire a mitigation specialist, the court concludes that Robinson "has not demonstrated that his counsel's decision was anything but a reasonable strategy"); (regarding gang evidence, the court assumes that trial counsel were already aware of [the evidence] but

38

strategically chose not to emphasize at trial"); p. 26 ("Thus, his attorneys' strategic

decision not to attempt to portray him as a person with mental deficiencies

sufficient to mitigate the murderous behavior he engaged in was a reasonable

one."). But Robinson vigorously disputed trial counsel's "tactical" justification.

Instead, Robinson has maintained that trial counsel have attempted to excuse their

dereliction with "post hoc-rationalizations." Petitioner's Reply at 75 (citing

*Wiggins v. Smith*, 539 U.S. 510, 527, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003)

("the 'strategic decision' . . . invoke[d] to justify counsel's limited pursuit

of mitigating evidence resembles more a post-hoc rationalization of counsel's

conduct than an accurate description of their deliberations prior to sentencing.").

Given the parties fundamental disagreement about the reason for trial counsel's

failure to investigate and present evidence at the penalty phase, the Court was

obligated to conduct an evidentiary hearing.

As an initial matter, it is telling that the Court does not find (nor could it

find) that trial counsel's investigation comports with the "reasonably thorough

pretrial inquiry" expected of competent counsel in a capital case. *Lockett v.

Anderson*, 230 F.3d 695, 715 (5th Cir. 2000) (quoting *Baldwin v. Maggio*,

704 F.2d 1325, 1332-33 (5th Cir. 1983); *Neal v. Puckett*, 286 F.3d 230, 236

(5th Cir. 2002) (en banc) ("In the context of a capital sentencing proceeding,

defense counsel has the obligation to conduct a 'reasonably substantial,

39

independent investigation' into potential mitigating circumstances.").  As the

Fifth Circuit recently noted, "case law firmly establishes a duty to investigate the

background and character of a capital defendant, along with his family and social

circumstances and mental health history."  *Walbey v. Quarterman*, 2009 U.S. App.

LEXIS 942, 16-17 (5th Cir. Tex. Jan. 19, 2009).  Unless further investigation

would be "counterproductive or fruitless," trial counsel may not limit the scope of

their investigation.  *Lewis v. Dretke*, 355 F.3d 364, 367, (5th Cir. 2003); *Smith v.*

*Dretke*, 422 F.3d 269, 280 (5th Cir. 2005).  Trial counsel failed miserably in

satisfying this minimal standard.

Even if it could ever be permissible for a defense counsel to shirk his

responsibility to thoroughly investigate the client's background in a capital case,

reasonable jurists would certainly debate whether trial counsel's decision not to

investigate in this case was reasonable.  It is not enough for trial counsel attempt

to justify every alleged deficiency under the guise of "strategy."  Rather, that

decision must be fully informed:  "[C]ounsel can hardly be said to have made a

strategic choice against pursuing a certain line of investigation when [he] has not

yet obtained the facts on which such a decision could be made."  *Anderson*,

338 F.3d 382, 392 (5th Cir. 2003); *Lockett,* 230 F.3d at 715 ("Sixth Amendment

'requires defense counsel to undertake a reasonably thorough pretrial inquiry into

the defenses which might possibly be offered in mitigation of punishment, and to

40

ground the strategic selection among those potential defenses on an informed, professional evaluation of their relative prospects for success.'"); *Dobbs v. Turpin*, 142 F.3d 1383, 1388 (11th Cir. 1998) (rejecting "the notion that a 'strategic' decision can be reasonable when the attorney has failed to investigate his options and make a reasonable choice between them.").

Rather than require proof of trial counsel's strategic decision, the Court is content to rely on "post-hoc rationalizations." *Rompilla*, 125 S. Ct. at 2462 (quoting *Strickland*, 466 U.S. at 689). Other than self-serving affidavits provided in post-conviction proceedings, neither the Court nor trial counsel can point to anything in the trial record demonstrating that trial counsel's omissions were the result of informed trial strategy. *Rompilla*, 125 S. Ct. at 2462 (directing courts to look to "'counsel's perspective at the time' investigative decisions are made"). Therefore, because Robinson has presented substantial evidence that trial counsel were unaware of mitigating circumstances from his background, the Court's finding that the failure to investigate was supported by a strategic decision is open to debate. That the Court denied Robinson an opportunity to prove the unreliability of trial counsel's assertions without an evidentiary hearing is untenable.

In sum, Robinson has provided a colorable claim for relief based upon ineffective assistance of counsel. Reasonable jurists can certainly debate, if not

41

outright dispute, the Court's decision to not only deny the claim but to completely deny an evidentiary hearing to provide the factual basis of his claims.  Robinson's strong showing, coupled with the fact that he faces a death penalty, demands that a COA issue in his case.

## **CONCLUSION**

For all the foregoing reasons, the Court should grant Robinson's request for COA on his IAC claim.

Respectfully submitted,

Dated: April 17, 2009
//s//*Sean K. Kennedy*
SEAN K. KENNEDY
Federal Public Defender
MIKE CHARLTON
CRAIG A. HARBAUGH
Deputy Federal Public Defenders

42

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on April 17, 2009, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

SUSAN COWGER
Assistant United States Attorney
U.S. Attorney's Office
1100 Commerce Street, 3rd Fl.
Dallas, Texas 75242-1699


//s//*Sean K. Kennedy*
SEAN K. KENNEDY